Elizabeth Cabraser (State Bar No. 083151)
*ecabraser@lchb.com*
Michael W. Sobol (State Bar No. 194857)
*msobol@lchb.com*
Daniel M. Hutchinson (State Bar No. 239458)
*dhutchinson@lchb.com*
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

Chair of Plaintiffs' Executive Committee and Plaintiffs'
Liaison Counsel

*[Additional Plaintiffs' Executive Committee members
listed on the signature page]*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: BANK OF AMERICA CREDIT PROTECTION MARKETING AND SALES PRACTICES LITIGATION | MD No. 3:11-md-02269 TEH<br><br>MDL Docket No. 2269 |
| THIS DOCUMENT RELATES TO ALL ACTIONS | |

## PLAINTIFFS' FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

Plaintiffs Juan Arevalo, Mitchell Sandow, Jason Chan, Blanche Melendez, Dominick Mattiello, Jr., as Executor of the Estate of Dominick M. Mattiello, Rose Rowley, Mary Richmond, Wilfred Somers, and Cheryl Ross, individually and on behalf of all others similarly situated (the "Class"), bring Plaintiffs' First Amended Consolidated Class Action Complaint ("Complaint") against Defendants Bank of America Corporation and FIA Card Services, N.A. (collectively, "Defendants"), and, by and through their attorneys, allege upon personal knowledge as to their own acts and jurisdictional allegations, and upon information and belief based on investigation by Counsel as to other acts, as follows:

## NATURE OF THE ACTION

1.     This class action involves Defendants' fraudulent, unfair, and unlawful course of conduct in imposing, marketing, selling, and/or administering products associated with their

credit cards known as "Credit Protection," "Credit Protection Plus," or other similar monikers that all offer similar coverage (collectively referred to as "Credit Protection"). On August 16, 2011, the Judicial Panel on Multidistrict Litigation issued a Transfer Order. The common fact pattern that informed the JPML's Transfer Order included allegations that Defendants impose, market, sell, and/or administer Credit Protection for which consumers pay monthly payments, but get nothing meaningful in return. Defendants have engaged in two related fraudulent, unfair, and unlawful practices: (1) charging customers for Credit Protection without the customers' permission ("slamming") and (2) enrolling customers in Credit Protection through deceptive marketing based on misrepresentations and material omissions, including marketing that does not disclose that Defendants administer Credit Protection in a way that is designed to and does deny benefits to even those Credit Protection customers who attempt to use the benefits.

2.      Slamming:  Defendants impose Credit Protection on customers who did not authorize the charges. Because these customers do not know this "coverage" has been imposed on them and that they were charged without their consent, they do not know they can avail themselves of it. These customers do not have the necessary information to determine what Credit Protection covers and whether it would be financially sound to continue paying for the plan.

3.      Defendants have exacerbated their fraudulent and deceptive slamming practices by claiming that Plaintiffs and Class Members voluntarily enrolled in Credit Protection and, additionally, by attempting to convince slamming victims through deceptive marketing that they should stay "enrolled" in Credit Protection instead of canceling the plan, and refusing to refund the money of customers who were involuntarily charged.

4.      Defendants violated federal and various states' statutory and common law by engaging in the following unfair, deceptive, and misleading practices: (1) imposing charges for Credit Protection on customers who did not voluntarily enroll in the program; (2) charging consumers for Credit Protection without their consent or knowledge through the use of

misrepresentations and material omissions; and (3) subsequently refusing to refund money to customers who Defendants charged for Credit Protection without their consent or knowledge.

5.     <u>Uniform Deceptive Marketing</u>:  Defendants employ uniform, fraudulent, unfair, and unlawful marketing practices to enroll customers in Credit Protection who cannot use the product or for whom the product is virtually worthless.

6.     Defendants market Credit Protection through direct mail and solicit Credit Protection customers over the phone.  Through misrepresentations and material omissions, Defendants deceptively represent Credit Protection as a service that prevents accounts from becoming delinquent by paying the required minimum monthly payment due on the subscriber's credit card account and the Credit Protection plan fee if certain triggering situations occur, such as involuntary unemployment, illness, or changes in family status.

7.     However, Defendants fail to disclose the real nature of Credit Protection.  While, *inter alia*, representing to consumers that Credit Protection provides an "important safety net" that makes "future[s] more secure," Defendants know that consumers are not eligible for Credit Protection benefits that Defendants claim to exist.  Additionally, Defendants' Credit Protection is a maze of limitations, exclusions, and restrictions that make it impossible for consumers who voluntarily enroll to determine what Credit Protection covers and whether purchasing it would be a sound financial choice.  Defendants' maze of limitations, exclusions, restrictions and deceptive trade practices makes it difficult or impossible for consumers to get benefits--even if they are eligible for them.

8.     Defendants have violated federal and various states' statutory and common law through the deceptive, unfair, misleading, harassing, and bait-and-switch manner in which they marketed Credit Protection, enrolled consumers, and administered claims for Credit Protection benefits.

9.     As a result of Defendants' fraudulent, unfair, and unlawful practice of imposing Credit Protection on some consumers without their authorization and consent and using deceptive marketing to enroll other consumers who are not eligible for benefits or whom Defendants

PLAINTIFFS' FIRST AMENDED CONSOLIDATED
CLASS ACTION COMPLAINT
CASE NO. MD NO. 3:11-MD-02269 TEH

prevent from receiving benefits with their ever-increasing restrictions and qualifications, Defendants have increased their profits from a product that provides virtually no benefits to consumers charged for the product month after month.

10.     Defendants' unfair, unlawful, and fraudulent practices have significantly and substantially harmed Plaintiffs and Class Members, who have paid hundreds of millions or billions in fees for little or no benefit.

### JURISDICTION AND VENUE

11.     This First Amended Consolidated Class Action Complaint is filed pursuant to this Court's Orders of November 23, 2011 and April 3, 2012, and is an amendment to an action (*Arevalo v. Bank of America Corp.*, Case No.  3:10-cv-04959-TEH) previously filed in this district.  This Court has jurisdiction over this matter for all purposes, including trial.

12.     This action asserts claims under the Truth-in-Lending Act, 15 U.S.C. §§ 1601, *et seq.*  This Court has jurisdiction over the federal claim asserted herein under the Truth-in-Lending Act, 15 U.S.C. § 1640(e), and has supplemental jurisdiction over the state law claims asserted herein under 28 U.S.C. § 1367.

13.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the declaratory relief claim arises under federal law, 47 U.S.C. § 201.

14.     This Court has subject matter jurisdiction over this matter pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) and (6), in that:

    (a)     the matter in controversy exceeds $5,000,000.00, exclusive of interest and costs;

    (b)     this is a class action involving 100 or more class members; and

    (c)     this is a class action in which at least one member of the Plaintiff class is a citizen of a State different from at least one Defendant.

15.     The Court has personal jurisdiction over Defendants, which have at least minimum contacts with the State of California because they have conducted business there and have availed themselves of California's markets through their marketing, enrollment, and administration of Credit Protection.

974172.2

16. Venue is proper before this Court pursuant to 28 U.S.C. § 1407 as this Court is the transferee court for all actions consolidated into MDL 2269 by the Judicial Panel on Multidistrict Litigation's Order creating this multidistrict litigation on September 14, 2011.  Venue is also proper under 28 U.S.C. § 1391 inasmuch as Defendants do business in this District and Plaintiff Juan Arevalo and a portion of the proposed class reside in it.

17. To the extent that Defendants claim that there is any contractual or other impediment to pursuit of these claims on a class action basis, Plaintiffs specifically allege, and will prove, if necessary, that any bar to class action proceedings is, *inter alia*, unconscionable, unfair, and against public policy.

## CHOICE OF LAW

18. Delaware law applies to the state-law claims asserted in this action because, *inter alia*, a choice of law provision Defendants uniformly and unilaterally imposed on Plaintiffs and Class members governs the conduct that forms the bases of Plaintiffs' claims.  That provision states, in relevant part:  "This Agreement is made in Delaware and we extend credit to you from Delaware.  This Agreement is governed by the laws of the State of Delaware (without regard to its conflict of laws principles) and by any applicable federal laws."

19. Delaware law also applies to the state-law claims asserted in this action because, on information and belief, Defendants' unlawful practices occurred in Delaware.  To the extent that Defendants engaged in unlawful conduct in other jurisdictions, on information and belief, that conduct was conceived in Delaware, emanated from Delaware, and was orchestrated from Delaware.

20. Delaware law also applies to the state-law claims asserted in this action because Delaware has the most significant relationship to them.  On information and belief, all of Defendants' conduct relevant to Plaintiffs' Delaware claims arise from a common scheme conceived in Delaware, emanated from Delaware, and orchestrated from Delaware.  Additionally, all misrepresentations and omissions were made from Delaware, Defendants are incorporated in Delaware, Defendant FIA Card Services, N.A.'s principal place of business is in Delaware.  As

- 5 -

such, all parties would expect Delaware law to apply to Defendants' alleged misconduct and application of Delaware law is necessary to ensure certainty, predictability, and uniformity.

21.     Application of Delaware law to Defendants and the claims of Plaintiffs and all Proposed Class members comports with Due Process because Delaware has significant contact or aggregation of contacts with the claims of all Proposed Class members such that application of Delaware law is neither arbitrary nor unfair.

## PARTIES

22.     Plaintiff Juan Arevalo ("Arevalo") is a citizen of the State of California, residing in the city of San Bruno.  Defendants charged Plaintiff Arevalo for Credit Protection on one of his Bank of America cards without his permission.

23.     Plaintiff Mitchell Sandow ("Sandow") is a citizen of the State of California, residing in the city of San Diego.  Defendants charged Plaintiff Sandow for Credit Protection on one of his Bank of America cards without his permission.

24.     Plaintiff Jason Chan ("Chan") is a citizen of the State of California, residing in the city of San Francisco.  Defendants charged Plaintiff Chan for Credit Protection on one of his Bank of America cards without his permission.

25.     Plaintiff Blanche Melendez ("Melendez") is a citizen of the State of New York, residing in the city of Westbrookville.  Defendants deceptively marketed Credit Protection to Plaintiff Melendez through misrepresentations and material omissions, enrolled her in Credit Protection on one of her Bank of America cards, and improperly denied her benefits under the plan.

26.     Plaintiff Dominick Mattiello, Jr., as Executor of the Estate of Dominick M. Mattiello, ("Mattiello") is a citizen of the state of New Jersey, residing in Secaucas.  Defendants deceptively marketed Credit Protection to Dominick M. Mattiello through misrepresentations and material omissions, enrolled him in Credit Protection on one of his Bank of America cards and improperly denied him benefits under the plan.  Dominick M. Mattiello, a veteran of the Korean

- 6 -

War, died as a result of lung cancer while a citizen of the state of New Jersey, residing in the city of Belleville.

27.     Plaintiff Rose Rowley ("Rowley") is a citizen of the State of Wisconsin, residing in the city of Niagra.  Defendants deceptively marketed Credit Protection to Plaintiff Rowley through misrepresentations and material omissions, enrolled her in Credit Protection on two of her Bank of America credit cards, and improperly denied her benefits under the plan.

28.     Plaintiff Wilfred Somers ("Somers") is a citizen of the state of Washington, residing in the city of Port Angeles.  Defendants deceptively marketed Credit Protection to Plaintiff Somers through misrepresentations and material omissions, and enrolled her in Credit Protection even though, at the time of enrollment through the current date, Credit Protection precluded him from obtaining certain benefits under the plan because he was retired and not working.

29.     Plaintiff Cheryl Ross ("Ross") is a citizen of the state of Washington, residing in the city of Port Angeles.  Defendants deceptively marketed Credit Protection to Plaintiff Ross through misrepresentations and material omissions, and enrolled her in Credit Protection even though, from the date of enrollment through the date on which Credit Protection was cancelled, Credit Protection precluded him from obtaining certain benefits under the plan because Plaintiff Ross never held a full time job and experienced periods of complete unemployment.

30.     Plaintiffs Maryellen Richmond ("Richmond") is a citizen of the state of Florida, residing in the city of Inverness.  Defendants deceptively marketed Credit Protection to Plaintiff Richmond through misrepresentations and material omissions, and enrolled her in Credit Protection even though, from the date of enrollment through the current date,  Credit Protection precluded her from obtaining certain benefits under the plan because Plaintiff Richmond was retired and not working.

31.     Defendant Bank of America Corporation is a Delaware corporation with its principal place of business in Charlotte, North Carolina.

PLAINTIFFS' FIRST AMENDED CONSOLIDATED
CLASS ACTION COMPLAINT
CASE NO. MD NO. 3:11-MD-02269 TEH

32.     Defendant FIA Card Services, N.A. is a Delaware corporation with a principal place of business in Wilmington, Delaware, and is a wholly-owned subsidiary of Defendant Bank of America Corporation.

## FACTUAL ALLEGATIONS

33.     Bank of America is one of the three largest general purpose credit card issuers in the United States and in 2010 was second in the country in outstanding balances for general purchase credit cards.  In 2010, Bank of America had 17% of the market share by credit card issuer.  FIA Card Services is a wholly-owned subsidiary of Bank of America Corporation and upon information and belief is the issuer of Bank of America's credit cards.  Upon information and belief, Credit Protection is a profit center for Defendants.

34.     Through misrepresentations and material omissions, Defendants advertise their Credit Protection program as "an important safety net" to protect consumers' Bank of America credit card accounts "when times get tough, or when you go through a major life event." Defendants advertise that Credit Protection provides for some form of benefit upon the occurrence of "protected events," including involuntary unemployment, hospitalization, disability, family leave of absence, and loss of life.  Defendants also advertise that Credit Protection provides payment for a limited period of time upon the occurrence of a "life event," defined as marriage, childbirth, adoption, college, a home move, and other life-changing events.

35.     Defendants impose Credit Protection on some consumers, through direct mail marketing or through phone calls, by asking them to sign up when they activate their credit cards and then enrolling them in Credit Protection even if they do not consent to enroll or ask to see more information before deciding to enroll.

36.     Slamming:  Defendants do not require any affirmative act by customers to enroll, and charge customers without their consent.  Defendants attempt to cover up their failure to obtain consent by sending materials after the fact, if at all; however, this practice in no way excuses Defendants' failure to secure initial authorization to enroll consumers.  Even if

974172.2

Defendants send written materials to consumers who did not voluntarily enroll, they would have no reason to look for or review such materials to affirmatively opt out.

37.     As a result of Defendants' actions, many consumers are unaware they are "enrolled" in Credit Protection.  When Credit Protection is imposed without consumers' consent, the only way consumers could ever know they have been enrolled in Credit Protection--and are being charged for this product--is by noticing a line-item fee listed on their monthly credit card statements.  Rather than provide a separate invoice for these monthly fees, Defendants charge the fee directly to consumers' credit cards.

38.     Defendants provide misleading and false information to customers by involuntarily enrolling them in Credit Protection and then claiming that they consented to enrollment in those instances when consumers challenge or question the unauthorized fees.  Defendants also encourage slammed customers to keep paying for Credit Protection through deceptive marketing about the program, and make it difficult for customers to cancel Credit Protection or obtain a refund if they do not want the service.  In fact, if subscribers complain that they did not authorize charges for Credit Protection, Defendants do not affirmatively remove those subscribers from Credit Protection enrollment going forward, and instead attempt to convince the subscribers to remain enrolled in the program when they try to cancel.

39.     <u>Uniform Deceptive Marketing</u>:  Even for consumers who enroll voluntarily in Credit Protection, the uniform and deceptive terms of Defendants' Credit Protection is replete with misrepresentations and material omissions.  Defendants' marketing materials not adequately explain to consumers Credit Protection's restrictions, limitations, and exclusions associated with "protected events" and the proof required to establish them.

40.     Through high pressure sales tactics, promises to help in times of need, and misrepresentations and material omissions, Defendants uniformly solicit consumers to purchase Credit Protection.

41.     Days or weeks after their enrollment in Credit Protection, Defendants may, in some instances, mail written material to the consumers.  Consumers cannot understand the

PLAINTIFFS' FIRST AMENDED CONSOLIDATED
CLASS ACTION COMPLAINT
CASE NO. MD NO. 3:11-MD-02269 TEH

confusing way the written materials present the terms and conditions of Credit Protection. According to the written materials, which are only provided (if at all) after subscribers have already been enrolled in the plan, there are numerous restrictions and qualifications on Credit Protection coverage. These restrictions appear in small print in incomplete, indecipherable, misleading, and obfuscatory language, and are therefore not readily comprehensible to subscribers. Based on the deceptive, limited, and incomplete materials provided by Defendants, consumers cannot determine all of the exclusions and limitations of Credit Protection, the proof required for claims, or the value of the product.

42. After Defendants enroll a consumer, the consumer may affirmatively cancel the plan only through what Defendants market as a "30-day review period." Defendants deceptively characterize this sales scheme as a review period during which consumers can cancel their enrollment within 30 days of the effective date and "all Plan fees billed to your account will be refunded as a credit to the protected card." [*See* https://www8.bankofamerica.com/insurance/protection/credit-protection/overview.go?state=CA, last visited on December 13, 2011.]

43. Defendants do not adequately describe or explain the exclusions to prospective subscribers so they can determine whether they have certain characteristics or meet certain factors that would bar them from being eligible for benefits under Credit Protection, even though Defendants have a common practice of limitations on full coverage based on exclusions.

44. Through these misrepresentations and material omissions, Defendants deceptively market Credit Protection as a viable option for consumers who are not eligible for the product. For example, Defendants charge numerous senior citizens and retired persons for Credit Protection although they are excluded from receiving benefits because they are not employed.

45. <u>Harm from Defendants' Practices</u>: Defendants further increase the harm caused by their slamming and deceptive marketing practices by manipulating the administration process and misleading consumers who call to inquire about submitting claims. Defendants inform consumers that submitting a claim would be futile because they are ineligible to receive benefits.

974172.2

Defendants provide consumers with incorrect information about submitting a claim, including the type of information necessary to substantiate a claim, and the timing in which that information must be submitted.

46.     Defendants provide themselves with unfettered and unchallengeable discretion in the claims administration process.  Defendants exercise their discretion in bad faith in order to maximize the number of claims denied by, *inter alia*, blocking and stonewalling the filing of claims, harassing claimants or potential claimants with abusive phone calls to deny and impede Credit Protection claims that deny knowledge of the program, setting up arbitrary impediments to filing a claim, and denying claims for arbitrary reasons or no reason at all.

47.     Defendants impose a monthly charge of approximately $0.95 per $100 of each customer's month-ending credit card balance for Credit Protection.  Defendants have collected hundreds of millions or billions of dollars from class members while paying out little in the way of benefits.

48.     Defendants' practices have caused substantial and significant harm to consumers.

49.     <u>Unenforceable Arbitration Clauses</u>:  Defendants have imposed take-it-or-leave-it arbitration clauses in the underlying credit card contracts with Plaintiffs and the Class Members. These clauses are not enforceable or applicable to the claims here because Defendants have agreed, pursuant to a separate settlement agreement, not to enforce consumer arbitration clauses. In addition, there are no arbitration clauses in the Credit Protection agreements themselves. Therefore, the arbitration clause found in the credit card agreement is separate and independent of the Credit Protection plans at issue here such that Plaintiffs did not agree to arbitrate their claims with respect to Credit Protection.  Likewise, the Slamming Plaintiffs could not have agreed to arbitrate claims about Credit Protection because they did not even agree to enroll in Credit Protection.  Further, the arbitration clause in the underlying credit card agreements is void inasmuch as they are illusory contracts.  Any arbitration clauses are unenforceable for other reasons as well, among them that: (a) Defendants had selected an arbitration forum, National

- 11 -

Arbitration Forum ("NAF"), that is no longer accepting consumer arbitrations and was effectively shut down for corruption, and (b) Defendants have waived their right to seek arbitration.

## PLAINTIFF JUAN AREVALO

50.     Plaintiff Juan Arevalo ("Arevalo") is a citizen of the State of California, residing in San Bruno.

51.     Plaintiff Arevalo called Bank of America on or around January 2010 to activate cash advance checks received through his credit card.  During the call, Bank of America tried to sell him the Credit Protection plan, telling him that it would give him peace of mind in the event of losing his job or some other life event.  Plaintiff Arevalo declined to enroll.

52.     Although Bank of America nevertheless said it would send materials about Credit Protection, Plaintiff Arevalo does not recall receiving any.  Moreover, he never voluntarily enrolled in the Credit Protection program, either on the telephone or thereafter, and did not believe that he was enrolled in the program.

53.     On or around April 2010, Plaintiff Arevalo discovered unauthorized charges for "Credit Protection Plus" on his credit card statements.  He then reviewed his previous statements and discovered two other charges for Credit Protection Plus on his February and March 2010 statements.

54.     Because Plaintiff Arevalo had never enrolled in the Credit Protection program, he called the customer service line listed on his credit card statement next to the Credit Protection charge to complain about the charges and seek reversal of the charges.

55.     The Credit Protection customer service representative made it difficult for Plaintiff Arevalo to cancel the plan and tried to pressure Plaintiff Arevalo to keep the Credit Protection plan.  Finally, after Plaintiff Arevalo repeatedly told the representative he did not want the plan, wanted his money back, and refused to speak to anyone else, the representative told Plaintiff Arevalo he could cancel the plan but they could not refund his money.  Plaintiff Arevalo then called the Bank of America customer service line to complain, but the representative also refused to refund his money and told him to call Credit Protection.

- 12 -

56.     Plaintiff Arevalo has paid a total of $712.50 (three charges of $237.50) for Credit Protection, plus interest.

57.     Defendants have not refunded the money Plaintiff Arevalo paid towards the Credit Protection premiums, even though he did not voluntarily enroll in the program and requested a refund for the unauthorized charges.

## PLAINTIFF MITCHELL SANDOW

58.     Plaintiff Mitchell Sandow ("Sandow") is a citizen of the State of California, residing in San Diego.

59.     Plaintiff Sandow accepted a direct mail pre-approved Bank of America credit card solicitation sometime on or around September 2008, but never voluntarily enrolled in the Credit Protection program.

60.     On or around August 2010, Plaintiff Sandow discovered charges for "Credit Protection Plus" on his credit card statements.

61.     Because Plaintiff Sandow had never enrolled in the Credit Protection program, he called the Credit Protection customer service line, but the representative was not able to provide him with useful or material information.

62.     Plaintiff Sandow then filed a complaint with the Office of the Comptroller of the Currency ("OCC").

63.     After filing a complaint with the OCC, Plaintiff Sandow received a letter from a Customer Advocate in the Office of the CEO and President of Bank of America on August 2010 concerning his alleged enrollment in the Credit Protection program.  The letter stated that Plaintiff Sandow had supposedly enrolled in the program on January 6, 2009 "during an inbound telephone call in which a fraud status was removed from your account."  The letter went on to state:

> "Because this was an inbound telephone call, the conversation was not recorded.  However, during the telephone call, you provided your city of birth as Falanagan.  During the telephone call you were also offered the Credit Protection Deluxe Plan, which you did not accept.  Our records show that information regarding the product was mailed to you within three days of the enrollment,

- 13 -

which allowed you time to review the product and cancel for any
reason within 30 days without being billed for the premiums."

64.     Bank of America itself acknowledged that Plaintiff Sandow declined to enroll in
the Credit Protection program through Defendants.

65.     Plaintiff Sandow has no recollection of receiving any written materials from
Defendants to inform him of how to opt out of the Credit Protection program in which he did not
enroll in the first place.

66.     Plaintiff Sandow's city of birth is not "Falanagan" and he has no memory of
providing (or reason to provide) Flanagan as a city of birth to Defendants.

67.     Although Defendants have stopped charging Plaintiff Sandow for Credit
Protection, they have not refunded him any money, even though he did not authorize the charges
and requested a refund.

68.     Plaintiff Sandow has paid premiums of $0.95 to the $100 monthly for his card.  In
total, Mr. Sandow estimates he has paid more than $700.00 in premiums for a service he never
enrolled in, plus Defendants have charged him an interest rate of 19.99% on his balances that
include the premiums paid to Defendants.

## PLAINTIFF JASON CHAN

69.     Plaintiff Jason Chan ("Chan") is a citizen of the State of California, residing in San
Francisco.

70.     Plaintiff Chan held a Bank of America Platinum Plus Visa.

71.     Plaintiff Chan never voluntarily enrolled in the Credit Protection program and did
not believe that he was enrolled in the program.

72.     In or around August 2008, Plaintiff Chan discovered unauthorized charges for
Credit Protection on his credit card statements.

73.     Because Plaintiff Chan had never enrolled in the Credit Protection program, he
called the customer service line to complain about, and seek reversal of, the charges.

74.     The Credit Protection customer service representative told Plaintiff Chan he could
cancel the plan only if Plaintiff Chan agreed not to file a formal complaint.  However, even if

974172.2

Plaintiff Chan agreed to those conditions, the customer service representative stated that they could only provide a partial refund of Plaintiff's Chan's money.

75.     In or around September 2008, Plaintiff Chan submitted a formal complaint to Defendants.

76.     On or around October 20, 2008, Defendants responded with a letter stating that Plaintiff Chan's enrollment in Credit Protection was valid and refusing to provide him with a full refund of the unauthorized charges.

77.     Plaintiff Chan has paid hundreds or thousands of dollars for Credit Protection, plus interest.

78.     Defendants have not refunded the money Plaintiff Chan paid towards the Credit Protection premiums, even though he did not voluntarily enroll in the program and requested a refund for the unauthorized charges.

## PLAINTIFF BLANCHE MELENDEZ

79.     Plaintiff Blanche Melendez ("Melendez") is a citizen of the State of New York, residing in Westbrookville.

80.     In or around 2005, Plaintiff Melendez received phone solicitations from Bank of America which employed high pressure scare tactics and promised help in times of need.  Based on Defendants' sales presentation through representations and material omissions that she would be protected to the extent she ever needed the program benefits after suffering a qualifying event, she enrolled.

81.     Plaintiff Melendez made payments to her credit card account including the Credit Protection Plus fees applied to her balance.

82.     In December 2008, Plaintiff Melendez left her employment on account of a disability related to hypertension, deep vein thrombosis, angina, and diabetes mellitus.  On account of her condition, Plaintiff Melendez applied for state disability benefits, for which she was approved and later was also approved for Social Security benefits.

974172.2

83.     Plaintiff Melendez contacted Bank of America following her disability and was told that it was too early for her to file a claim and receive benefits. Instead, Defendants told her that she first had to be out of work on disability for three to five months before she could make a claim and be considered for benefits. Despite being disabled and out of work, Plaintiff Melendez continued to make payments as Defendants billed her for Credit Protection on her Bank of America credit card.

84.     In or around March 2009, Plaintiff Melendez submitted a claim for Credit Protection benefits. Bank of America responded that Plaintiff Melendez did not qualify for benefits under the Credit Protection program, even though Plaintiff Melendez provided Bank of America with sufficient information to support her claim, and in fact was approved for benefits both by New York State and the Social Security Administration. In contrast to the state and federal agencies that approved her claims, and despite the fact that Plaintiff Melendez had paid hundreds or thousands in premiums to be protected in case of disability and unemployment, Bank of America refused to honor her claim and took numerous steps to stonewall and block her claim.

85.     Instead of honoring her claim, Defendants began harassing Plaintiff Melendez, making upwards of 50 harassing phone calls to her about her account. Defendants ignored Plaintiff Melendez's pleas that her payments should be covered by Credit Protection and responded that Credit Protection was handled by another department.

86.     During Defendants' harassing phone calls, Plaintiff Melendez explained that the Defendants should make payments for her account under the Credit Protection plan, but the Defendants' representatives consistently and consciously ignored her. Instead of using their resources to administer and pay claims fairly, Defendants continued to harass Plaintiff Melendez regarding her credit account, including continuing to bill Plaintiff Melendez for Credit Protection.

87.     Plaintiff Melendez has paid hundreds or thousands of dollars for Credit Protection, plus interest, but received no benefits from the program. Defendants refused to honor the Credit Protection program and refused to pay Plaintiff's claim.

- 16 -

88.     Plaintiff Melendez would not have voluntarily enrolled in Credit Protection and paid the amount in fees that she did had she known the true nature of Defendants' claims process and that Defendants' would refuse to pay her benefits for which she was eligible.

### PLAINTIFF DOMINICK MATTIELLO, JR., AS EXECUTOR OF THE ESTATE OF DOMINICK M. MATTIELLO

89.     Plaintiff Dominick Mattiello, Jr., as executor of the estate of decedent Dominick M. Mattiello, ("Mattiello") is a citizen of the state of New Jersey, residing in the city of Secaucus, New Jersey.

90.     At all relevant times, decedent Dominick M. Mattiello  was a citizen of the State of New Jersey, residing in the city of Belleville, New Jersey.  Dominick M. Mattiello, a Korean War Veteran, died on November 29, 2009 from lung cancer while a citizen of the state of New Jersey, residing in Belleville.

91.     At all relevant times, Dominick M. Mattiello was a Bank of America Card Member.  Defendants enrolled Dominick M. Mattiello in Credit Protection through his date of death and charged him fees associated with the plan.

92.     Defendants fraudulently conveyed through representations and material omissions that Mattiello would be covered by Credit Protection in the event of triggering conditions, like death.

93.     Following Dominick M. Mattiello's death, Dominick Mattiello, Jr. was appointed as the executor of the Estate of Dominick M. Mattiello.

94.     In December, 2009, Dominick Mattiello, Jr., as Executor of the Estate of Dominick M. Mattiello, contacted Bank of America to cancel the decedent's Bank of America credit cards and to obtain the "Loss of Life" death benefit under the Credit Protection plan.

95.     In accordance with the directives from Bank of America, Dominick Mattiello, Jr. duly submitted the decedent's proof of enrollment in the Credit Protection plan and the Death Certificate.

96.     Thereafter, Bank of America acknowledged receipt of the documents.

- 17 -

97.     Despite its receipt of the requisite documentation, Bank of America sent Dominick Mattiello, Jr. a letter declining the death benefit.

98.     Specifically, on December 24, 2009, Bank of America declined the death benefit coverage on the grounds that Dominick M. Mattiello did not die as a result of an "Accidental Death."

99.     Plaintiff Mattiello would not have voluntarily enrolled in Credit Protection and paid the amount in fees that he did had he known the true nature of Defendants' claims process and that Defendants' would refuse to pay him benefits for which he was eligible.

### PLAINTIFF ROSE ROWLEY

100.    Plaintiff Rose Rowley ("Rowley") is a citizen of the State of Wisconsin, residing in Niagara.

101.    For the last several years, Plaintiff Rowley has had several credit cards issued by Defendants. After receiving the credit cards in the mail, Plaintiff Rowley called to activate the cards. At that time, Defendants enrolled Plaintiff Rowley in the Credit Protection plans. Defendants used scare tactics to convince Plaintiff Rowley to enroll in Credit Protection, exhorting that she could have trouble paying her bills in the event of job loss or another major life event. When Plaintiff Rowley initially declined to purchase the Credit Protection, Defendants pressured her through later mailings and calls by Defendants' representatives.

102.    Based on Defendants' representations and material omissions that she would be eligible for the benefits touted by Defendants in the event of triggering conditions, Plaintiff Rowley purchased Credit Protection from Defendants.

103.    At the time Plaintiff Rowley enrolled in Credit Protection, Defendants failed to provide her with material information, including the terms and conditions surrounding Credit Protection.

104.    Plaintiff Rowley did not receive written materials explaining the terms and conditions of Credit Protection before being enrolled in the program.

105.     After becoming enrolled in Credit Protection, Plaintiff Rowley received the welcome package from Defendants with written materials outlining the plan.  These materials were confusing, unclear, and in small print.

106.     Plaintiff Rowley continued to pay for Credit Protection from Defendants only because Defendants' representations and material omissions indicated that she would be eligible for the benefits touted by Defendants.

107.     In summer 2010, Plaintiff Rowley was let go from her position as a medical transcriptionist after approximately three years at the company. She thereafter applied to Defendants' Credit Protection to activate the benefits.  In August 2010, Defendants denied her requests because they determined that she was self-employed and her "unemployment was not caused exclusively by business bankruptcy, failure or loss of required equipment to conduct business, or damage to the business premises caused by fire, theft or natural disaster."

108.     At the time Defendants enrolled Plaintiff Rowley in Credit Protection, Defendants' representatives did not ask if she was self-employed or determine that she was self-employed. Defendants never told Plaintiff Rowley that being self-employed could prevent her from being eligible for Credit Protection coverage or benefits.

109.     Plaintiff Rowley did not consider herself to be self-employed and did not believe she would be considered self-employed by the State of Wisconsin or Defendants.

110.     Defendants did not disclose to Plaintiff Rowley that being self-employed by their definition would bar her from receiving benefits under the Credit Protection plan. If Plaintiff Rowley had known that Defendants considered her to be self-employed and ineligible for benefits under Credit Protection, she would not have enrolled.

111.     Plaintiff Rowley and her husband have paid premiums of approximately $0.95 for every $100 monthly for each of their cards, and, upon information and belief, have paid approximately $20-30/month for all of their credit cards issued by Defendants for the last several years.  The exact amount of Credit Protection charges made by Defendants, and paid by Plaintiff Rowley, can be readily compiled and calculated by Defendants.

- 19 -

112.    Defendants have not refunded the money Plaintiff Rowley paid towards her Credit Protection premiums after deeming her ineligible for benefits due to loss of employment, nor have Defendants affirmatively disenrolled Plaintiff Rowley from their Credit Protection plan due to her ineligibility to receive benefits.

113.    Plaintiff Rowley would not have voluntarily enrolled in Credit Protection and paid the amount in fees that she did had she known the true nature of Defendants' claims process and that Defendants' would refuse to pay her benefits for which she was eligible.

## PLAINTIFFS MARYELLEN RICHMOND

114.    Maryellen Richmond ("Richmond") is a citizen of the state of Florida, residing in the city of Inverness and is, and at all relevant times was, over the age of 65.

115.    Plaintiff Richmond was a Bank of America card holder who became enrolled in Credit Protection over four years ago.

116.    Defendants' representations and material omissions indicated that Plaintiff Richmond would be eligible for the benefits touted by Defendants in the event of triggering conditions.

117.    From the time they enrolled in Credit Protection, up to and through the date on which this Complaint was filed, Plaintiff Richmond was retired.  At all material times, Plaintiff Richmond was ineligible for Credit Protection benefits.

118.    Plaintiff Richmond paid thousands of dollars for Credit Protection.

119.    When Plaintiff Richmond became disabled, Plaintiff Richmond submitted a claim for disability benefits.  Defendants denied those benefits, citing the fact that Plaintiff Richmond was retired and therefore ineligible for those benefits.

120.    Defendants concealed, omitted, or failed to disclose existing material facts to Plaintiff Richmond, such as the fact that certain benefits were subject to so many exclusions that it was unlikely that Plaintiff Richmond could or would ever receive those benefits, and represented to Plaintiff Richmond existing, material facts, such as the fact that Credit Protection provided Plaintiff  Richmond with certain benefits that were not, in fact, available to Plaintiff

PLAINTIFFS' FIRST AMENDED CONSOLIDATED
CLASS ACTION COMPLAINT
CASE NO. MD NO. 3:11-MD-02269 TEH

Richmond, when those facts were material to Plaintiff  Richmond's decision to purchase Credit

Protection, and when: (1) those facts were false; (2) Defendants knew the facts were false or was

ignorant of their truth; (3) Defendants intended Plaintiff Richmond to act on the facts; (4) Plaintiff

Richmond did not know the facts were false; (5) Plaintiff Richmond relied on the truth of the

facts; (6) Plaintiff Richmond had the right to rely on the truth of the facts; and, (7) Plaintiff

Richmond suffered damages.

121.    Had the Plaintiff Richmond known the true facts about Credit Protection, Plaintiff

Richmond would not have purchased Credit Protection.

### PLAINTIFF WILFRED SOMERS

122.    Plaintiff Wilfred Somers ("Somers") is a citizen of the State of Washington,

residing in Port Angeles, and is over the age of 65.  Plaintiff Somers retired in 1980 due to a

physical disability.

123.    Approximately nine years ago, Plaintiff Somers became a Bank of America credit

card holder.  Plaintiff Somers became enrolled in Defendants' plan several years ago.

124.    Defendants' representations and material omissions indicated that Plaintiff Somers

would be eligible for the benefits touted by Defendants in the event of triggering conditions.

125.    At all material times, Plaintiff Somers was ineligible for Credit Protection benefits.

From the time Defendants enrolled him in Credit Protection through the present, both Plaintiff

Somers and his wife were retired.

126.    Defendants concealed, omitted, or failed to disclose existing material facts to

Plaintiff Somers, such as the fact that certain benefits were subject to so many exclusions that it

was unlikely that Plaintiff Somers could or would ever receive those benefits.  Defendants made

material representations to Plaintiff Somers, including the representation that Credit Protection

provided Plaintiff Somers with certain benefits that were not, in fact, available to Plaintiff

Somers.  Such representations were material to Plaintiff Somers' decision to purchase Credit

Protection.  However, (1) those representations were false; (2) Defendants knew the

representations were false or were ignorant of their truth; (3) Defendants intended Plaintiff

PLAINTIFFS' FIRST AMENDED CONSOLIDATED
CLASS ACTION COMPLAINT
CASE NO. MD NO. 3:11-MD-02269 TEH

Somers to act on the representations; (4) Plaintiff Somers did not know the representations were false; (5) Plaintiff Somers relied on the truth of the representations; (6) Plaintiff Somers had the right to rely on the truth of the representations; and, (7) Plaintiff Somers suffered damages.

127.     Had Plaintiff Somers known the true facts about Credit Protection, he would not have purchased Credit Protection from Defendants.

### PLAINTIFF CHERYL ROSS

128.     Plaintiff Cheryl Ross ("Ross") is a citizen of the state of Washington, residing in Port Angeles.

129.     In approximately 1995, Plaintiff Ross became a Bank of America credit card holder.

130.     In approximately 2006, Plaintiff Ross became enrolled in Defendants' Credit Protection program.

131.     Defendants' representations and material omissions indicated that Plaintiff Ross would be eligible for the benefits touted by Defendants in the event of triggering conditions.

132.     At all material times, from the time Defendants enrolled her in Credit Protection up to and through the date on which Credit Protection was cancelled, Plaintiff Ross was ineligible for Credit Protection benefits because Plaintiff Ross never held a full time job and experienced periods of complete unemployment.

133.     Plaintiff Ross attempted to cancel Credit Protection, but Defendants prevented her from doing so.

134.     In June of 2010, Plaintiff Ross started a special repayment program with Defendants to pay off her credit card balance.  This program lasts for sixty billing cycles.  As a result of admission into this program, Plaintiff Ross's Credit Protection was cancelled; however, the debt that she is paying through the special repayment program includes the charges for Credit Protection, as well as the interest charged on those fees.

- 22 -

**TOLLING THE STATUTE OF LIMITATIONS**

135.     Any applicable statutes of limitation have been tolled by Defendants' knowing and active concealment of the facts as alleged herein.  Plaintiffs and Class Members have been kept ignorant of vital information essential to the pursuit of these claims, without any fault or lack of diligence on their part.  Plaintiffs and Class Members could not reasonably have discovered the true nature of the Credit Protection plan.

136.     Defendants are and have been under a continuing duty to disclose to the Plaintiffs and the Class Members the true character, quality, and nature of Credit Protection.  Because of their knowing, affirmative, and/or active concealment of the true character, quality and nature of the Credit Protection, Defendants are estopped from relying on any statutes of limitation in their defense of this action.

**CLASS ACTION ALLEGATIONS**

137.     Plaintiffs bring this action on their own behalf and on behalf of a Class of all other persons similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

138.     Plaintiffs bring this action as class representatives to recover damages and/or refunds from Defendants' violations of TILA, Delaware (and/or various states') consumer protection laws, Delaware breach of contract, Delaware breach of the covenant of good faith and fair dealing, Delaware unjust enrichment, and Delaware fraud, and for injunctive relief, declaratory judgment, and restitution.

139.     This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of the Federal Rules of Civil Procedure Rule 23(a) and (b).

140.     Plaintiffs seek certification of a Class of all persons in the United States who paid for Credit Protection at any time during the relevant time period (the "Nationwide Class").

141.     Plaintiffs Arevalo, Sandow, and Chan also seek certification on behalf of the following:  All persons in the United States included in the Class who did not enroll in Credit Protection" (the "Nationwide Involuntary Enrollment Subclass").

- 23 -

142. Plaintiffs Melendez, Mattiello, Rowley, Richmond, Somers, and Ross also seek certification on behalf of the following: All persons in the United States included in the Class who enrolled in Credit Protection (the "Nationwide Voluntary Enrollment Subclass").

143. In the alternative, Plaintiffs Arevalo and Sandow seek certification of a Subclass of all persons in California who paid for Credit Protection at any time during the relevant time period (the "California Subclass").

144. In the alternative, Plaintiff Melendez seeks certification of a Subclass of all persons in New York who paid for Credit Protection at any time during the relevant time period (the "New York Subclass").

145. In the alternative, Plaintiff Mattiello seeks certification of a Subclass of all persons in New Jersey who paid for Credit Protection at any time during the relevant time period (the "New Jersey Subclass").

146. In the alternative, Plaintiff Rowley seeks certification of a Subclass of all persons in Wisconsin who paid for Credit Protection at any time during the relevant time period (the "Wisconsin Subclass").

147. In the alternative, Plaintiffs Somers and Ross seek certification of a Subclass of all persons in Washington who paid for Credit Protection at any time during the relevant time period (the "Washington Subclass").

148. In the alternative, Plaintiff Richmond seeks certification of a Subclass of all persons in Florida who paid for Credit Protection at any time during the relevant time period (the "Florida Subclass").

149. Plaintiffs reserve the right to modify or amend the definition of the proposed Class and Subclasses before the Court determines whether certification is appropriate.

150. Excluded from the Class and Subclasses are:

    a. Defendants and any entities in which Defendants have a controlling interest;

b.      Any entities in which Defendants' officers, directors, or employees are employed and any of the legal representatives, heirs, successors, or assigns of Defendants;

c.      The Judge to whom this case is assigned and any member of the Judge's immediate family and any other judicial officer assigned to this case;

d.      All persons who received all Credit Protection benefits for which they applied and/or sought;

e.      Persons or entities with claims for personal injury, wrongful death, and/or emotional distress;

f.      All persons or entities that properly execute and timely file a request for exclusion from the Class and/or Subclasses;

g.      Any attorneys representing the Plaintiffs or the Class and/or Subclasses; and

h.      All governmental entities.

151.    Numerosity—Fed. R. Civ. P. 23(a)(1).  The Class is comprised of millions of consumers.  Each Subclass is comprised of many thousands of individuals who were Defendants' customers, the joinder of whom in one action would be impracticable.  The exact number or identification of the Class and Subclass members is presently unknown.  The identity of the Class and Subclass members is ascertainable and can be easily determined based on Defendants' records.

152.    Predominance of Common Questions—Fed. R. Civ. P. 23(a)(2), 23(b)(3). Common questions of fact and law that are capable of classwide resolution exist as to all Class and Subclass members and predominate over questions affecting only individual Class and Subclass members.  The answers to these common questions will advance this litigation significantly.  Common questions capable of generating common answers apt to drive the resolution of the litigation include, but are not limited to, the following:

- 25 -

a.       Whether Defendants' enrollment, billing, and marketing scheme as alleged in this Complaint is fraudulent, deceptive, unlawful, and/or unfair in violation of common law and the law of the various states deceptive trade practices acts;

b.       Whether Defendants' imposition of Credit Protection on individuals who did not sign up for it is unlawful, fraudulent, deceptive, unfair, and/or misleading; constitutes a breach of contract; and/or has been in bad faith.

c.       Whether Defendants' marketing to and voluntary enrollment of customers who were not eligible for benefits is unlawful, fraudulent, deceptive, unfair, and/or misleading;

d.       Whether Defendants' administration of Credit Protection is fraudulent, deceptive, unfair, and/or unlawful; constitutes a breach of contract; and/or has been in bad faith.

e.       Whether Defendants' conduct constitutes unjust enrichment, and whether equity calls for disgorgement of unjustly obtained or retained funds, restitution to, or other remedies for the benefit of the Class;

f.       Whether Plaintiffs and the Class members are entitled to prospective injunctive relief enjoining Defendants from continuing to engage in the fraudulent, deceitful, unlawful, and unfair common scheme as alleged in this Complaint; and

g.       Whether Defendants' conduct rises to the level of reprehensibility under applicable law such that the imposition of punitive damages is necessary and appropriate to fulfill the societal interest in punishment and deterrence, and the amount of such damages and/or their ratio to the actual or potential harm to the Class.

153.    Typicality—Fed. R. Civ. P. 23(a)(3).  Plaintiffs assert claims that are typical of the entire Class, in that Plaintiffs paid for Credit Protection even though they were not eligible for benefits or were prevented from receiving benefits or they did not voluntarily enroll in Credit Protection and did not authorize the charges.

974172.2

154.   Adequacy—Fed. R. Civ. P. 23(a)(4); 23(g)(1).  Plaintiffs are adequate representatives of the Class because they fit within the class definition and their interests do not conflict with the interests of the Members of the Class they seek to represent.  Plaintiffs are represented by experienced Class Counsel.  Class Counsel have litigated numerous class actions, and Plaintiffs' counsel intends to prosecute this action vigorously for the benefit of the entire Class.  Plaintiffs and Class Counsel can fairly and adequately protect the interests of all of the Members of the Class.

155.   Superiority—Fed. R. Civ. P. 23(b)(3).  The class action is the best available method for the efficient adjudication of this litigation because individual litigation of Class Members' claims would be impracticable and individual litigation would be unduly burdensome to the courts.  Plaintiffs and members of the Class have suffered irreparable harm as a result of Defendants' bad faith, fraudulent, deceitful, unlawful, and unfair conduct.  Because of the size of the individual Class members' claims, no Class members could afford to seek legal redress for the wrongs identified in this Complaint.  Without the class action vehicle, the Class would have no reasonable remedy and would continue to suffer losses, as Defendants continue to engage in the bad faith, unlawful, unfair, and deceptive conduct that is the subject of this Complaint, and Defendants would be permitted to retain the proceeds of their violations of law.  Further, individual litigation has the potential to result in inconsistent or contradictory judgments.  A class action in this case presents fewer management problems and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

156.   Issue Certification and/or Subclasses—Fed. R. Civ. P. 23(b)(1),(b)(2), (c)(4), & (c)(5).  If and as appropriate, on the motion of a party and/or in the discretion of the Court, one or more of the issues or claims set forth in this Complaint may be certified under the provisions of Fed. R. Civ. P. 23 (b)(1),(b)(2), and/or (c)(4), and subclasses designated under Fed. R. Civ. P. 23(c)(5).

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Violations of the Truth in Lending Act - 15 U.S.C. §1601 et seq.**

**(On Behalf of All Plaintiffs, Nationwide Class, and Subclass Members)**

157.    Plaintiffs restate and reallege the preceding paragraphs of this Complaint as though set out here word for word.

158.    During the relevant time period, Defendants sold the credit services at issue in this lawsuit to the members of the proposed class, engaging in significant interstate commerce.

159.    The purpose of the Truth in Lending Act of 1968, as amended, 15 U.S.C. §1601, 1666j and Regulation Z, 12 C.F.R. part 226 ("TILA" and "Regulation Z") is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices. 15 U.S.C. §1601(a); 12 C.F.R. 226.1(b).

160.    TILA requires all solicitations for the extension of credit to clearly, conspicuously and in readily understood language disclose the terms of the commitment that the offeror is extending to the consumer.

161.    Congress delegated authority for the implementation of the Truth-in-Lending Act to the Federal Reserve Board ("Board"). 15 U.S.C. §1604. The Board promulgated Regulation Z, which is the Truth In Lending Act's implementing regulation. 12 C.F.R. §§226 *et seq.*

162.    Defendants' failure to disclose in their applications, solicitations, billing statement or otherwise, *inter alia*, that the premium charged for Credit Protection is a finance charge, that the minimum payment does not include all fees imposed, and that the interest is charged on penalty fees and costs in connection with Credit Protection violates sections 1605 and 1637(a)(3), (a)(4) and (b)(4) of the Truth in Lending Act.

163.    As a result of Defendants' violations of TILA and Regulation Z, Defendants are liable to Plaintiffs and members of the proposed class, who seek damages, pursuant to 15 U.S.C. §1640, including actual damages resulting from Defendants' improper and illegal practices, "the lesser of $500,000 or 1 per[cent]" of the net worth of Defendants, and costs and reasonable attorney fees.

**SECOND CLAIM FOR RELIEF**
**Violation of the Delaware's Consumer Fraud Act,**
**6 Del. C. §§ 2511-27, 2580-84**

**(On Behalf of All Plaintiffs, Nationwide Class, and Subclass Members)**

164.    Plaintiffs restate and reallege the preceding paragraphs of this Complaint as though set out here word for word.

165.    Each Defendants is a "person" as defined by 6 Del. C. §§ 2511(7).

166.    Credit Protection is "merchandise" within the meaning of 6 Del. C. §§ 2511(6).

167.    Credit Protection advertising and marketing materials are "advertisements" within the meaning of 6 Del. C. §§ 2511(1).

168.    Delaware's Consumer Fraud Act provides in relevant part that:

> The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby, is an unlawful practice.
> 6 Del. C. § 2513.

169.    Defendants violated the Delaware Consumer Fraud Act's proscription against the act, use, or employment of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact by, *inter alia*, (a) concealing from Plaintiffs and all Class Members that Defendants enrolled them in Credit Protection, (b) affirmatively misrepresenting at all times to Plaintiffs and Class Members that Credit Protection has characteristics and benefits that they do not have, and (c) concealing from Plaintiffs and all Class Members that Defendants would not honor Credit Protection.

170.    Defendants intended that Plaintiffs and the Class Members would rely upon their deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, and/or omission in connection with Credit Protection.

- 29 -

171.   Defendants' Credit Protection occurred "in the conduct of any trade or commerce in part or wholly within this State" under the Delaware Consumer Fraud Act as: (1) at least some of the deceiving conduct that violates 6 Del. C. § 2513 originated, arose, was directed, and emanated from Delaware, and/or (2) the presence of Defendants in Delaware is sufficient grounds for the Delaware Consumer Fraud Act to apply.

172.   Plaintiffs and Class members may seek injunctive relief in the form of "temporary restraining orders, preliminary or permanent injunctions, and such other relief as may be necessary" to prevent Defendants from engaging in activities declared by the Delaware Consumer Fraud Act to be unlawful.  6 Del. C. § 2523.

173.   As a direct and proximate result of Defendants' misconduct, Plaintiffs and Class members have been damaged in an amount to be proven at trial.

174.   In addition to compensatory damages, Plaintiffs and the Class are entitled to punitive damages because Defendants' conduct was fraudulent, gross, oppressive, and/or reckless, in an amount to be proven at trial.

175.   Elderly or disabled Class members are entitled to a civil penalty of $10,000, court costs, attorneys' fees, and treble damages for each violation of the Delaware Consumer Fraud Act. 6 Del. C. §§ 2581, 2583.

## CLAIMS FOR RELIEF UNDER OTHER STATES' LAWS

176.   Plaintiffs allege, based upon the discovery to date, that Delaware law will apply to Plaintiffs' nationwide state law claims for the reasons listed in paragraphs 18-21, namely that:  (1) Defendants imposed a uniform choice-of-law provision on Plaintiffs and Class Members that governs the conduct that forms the bases of Plaintiffs' claims; (2) Defendants' unlawful practices occurred and were conceived in, and emanated and were orchestrated from, Delaware; (3) Delaware has the most significant relationship to Plaintiffs' claims; and (4) application of Delaware law to Defendants and the claims of Plaintiffs and all Proposed Class members comports with Due Process.

177.    It is well-settled that a court may apply the substantive law of many states to the claims of a nationwide class without violating the federal due process clause or full faith and credit clause so long as each state has a "significant contact or significant aggregation of contacts" to the claims of each class member such that application of the state's law is "not arbitrary or unfair." *See, e.g.*, *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821-22 (1985).  To the extent that discovery reveals that Delaware law does not govern the conduct of Defendants in this controversy, Plaintiffs allege that application of other states' law (including the states of California, New York, New Jersey, Wisconsin, Washington, and Florida where Plaintiffs reside) would be constitutionally permissible.

178.    The state deceptive trade practices acts were enacted by the various states following the passage of the Federal Trade Commission Act ("FTC Act"), which prohibits deceptive acts and practices in the sale of products to consumers.  The state laws in this area are modeled on the FTC Act and are therefore highly similar in content.

179.    Defendants' actions violate the Deceptive Trade Practices Acts of the various states, as set out above.  With respect to Credit Protection, Defendants have engaged in deceptive practices by representing that services have characteristics and benefits that they do not have; representing that services are of a particular standard, quality, or grade when they are of another; advertising services with intent not to sell them as advertised; making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions; and engaging in other conduct which similarly creates a likelihood of confusion or of misunderstanding.

180.    The conduct described in the statement of facts constitutes unfair and deceptive trade practices predominantly and substantially affecting the conduct of trade or commerce throughout the United States in violation of the state deceptive trade practices acts and other similar state statutes prohibiting unfair and deceptive acts and practices.  The deceptive trade practices acts violated by Defendants are set forth in the next paragraph.

PLAINTIFFS' FIRST AMENDED CONSOLIDATED
CLASS ACTION COMPLAINT
CASE NO. MD NO. 3:11-MD-02269 TEH

181.    The violations of the various state consumer protection acts (Alabama: the Alabama Deceptive Trade Practices Act (Ala. Code §8-19-1 et seq.); Alaska: Alaska Unfair Trade Practices and Consumer Protection Act (Alaska Stat. §45.50.471 et seq.); Arizona: the Arizona Consumer Fraud Statute (Ariz. Rev. Stat. Ann. §44-1521 et seq.); Arkansas: the Arkansas Deceptive Trade Practices Act (Ark. Code Ann. §4-88-101 et seq.); California: the California Consumers Legal Remedies Act (Cal. Civ. Code § 1750, et seq.), the California Unfair Business Practices Act (California Business & Professions Code §17200, et seq.), and the California False Advertizing Law (Cal. Bus. & Prof. Code § 17500, et seq.); Colorado: the Colorado Consumer Protection Act (Colo. Rev. Stat. §6-1-101 et seq.); Connecticut: the Connecticut Unfair Trade Practices Act (Conn. Gen. Stat. §42-110a et seq.);  Washington, D.C. the Consumer Protection Procedures Act (D.C. Code Ann. §28-3901 et seq.); Florida: the Florida Deceptive and Unfair Trade Practices Act (Fla. Stat. Ann. §501.201 et seq. (West)) and the Florida False Advertising Statutes (Fla. Stat. Ann. §817.40 et seq. (West)); Georgia: Uniform Deceptive Trade Practices Act (Ga. Code Ann. §10-1-370 et seq.); the Fair Business Practices Act (Ga. Code Ann. §10-1-390 et seq.); and the False Advertising Statute (Ga. Code Ann. §10-1-420 et seq.); Hawaii: The Hawaii Federal Trade Commission Act (Hawaii Rev. Stat. §480 et seq.) and the Uniform Deceptive Trade Practice Act (Hawaii Rev. Stat. §481A et seq.); Idaho: the Idaho Consumer Protection Act (Idaho Code §48-601 et seq.); Illinois: the Illinois Consumer Fraud and Deceptive Business Practices Act (815 Ill. Comp. Stat. Ann. §505/1 et seq. (Smith Hurd)) and the Uniform Deceptive Trade Practices Act (815 Ill. Comp. Stat. Ann. 510/1 et seq. (Smith Hurd)); Indiana: the Deceptive Consumer Sales Act (Ind. Code Ann. §24-5-0.5-1 et seq. (Burns)); Iowa: the Iowa Consumer Fraud Act (Iowa Code Ann. §714.16 (West)); Kansas:  the Kansas Consumer Protection Act (Kan. Stat. Ann. §50-623 et seq.); Kentucky: the Consumer Protection Act (Ky. Rev. Stat. §367.110 et seq.); Louisiana: the Unfair Trade Practices and Consumer Protection Law (La. Rev. Stat. Ann. §51:1401 (West)); Maine: the Maine Unfair Trade Practices Act (Me. Rev. Stat. Ann. Tit. 5 §206 et seq.) and the Uniform Deceptive Trade Practices Act (Me. Rev. Stat. Ann. Tit. 10 §1211 et seq.); Maryland: the Maryland Consumer Protection Act (Md. Com. Law

- 32 -

Code Ann. §§13-101 et seq., 14-101 et seq.); Massachusetts: the Consumer Protection Act (Mass. Gen. Laws Ann. Ch. 93A); Michigan: the Michigan Consumer Protection Act (Mich. Comp. Laws Ann. §445.901 et seq.) and the Michigan Pricing and Advertising Act (Mich. Comp. Laws Ann. §445.351 et seq.); Minnesota: the Consumer Fraud Act (Minn. Stat. Ann. §325 F. 69); the False Statement in Advertisement Statute (Minn. Stat. Ann. §325 F. 67); the Uniform Deceptive Trade Practices Act (Minn. Stat. Ann. §325D.44); and the Unlawful Trade Practices Act (Minn. Stat. Ann. §325D.13); Mississippi: the Consumer Protection Act (Miss. Code Ann. §75-24-1 et seq.) and the False Advertising Statutes (Miss. Code Ann. §97-23-3); Missouri: the Missouri Merchandising Practices Act (Mo. Rev. Stat. §407.010 et seq.); Montana: the Montana Unfair Trade Practices and Consumer Protection Act (Mont. Code Ann. §30-14-101 et seq.); and the Statutory Deceit Statute (Mont. Code Ann. §27-1-712); Nebraska: the Nebraska Consumer Protection Act (Neb. Rev. Stat. §59-1601 et seq.) and the Nebraska Uniform Deceptive Trade Practices Act (Neb. Rev. Stat. §87-301 et seq.); Nevada: the Deceptive Trade Statutes (Nev. Rev. Stat. §§598.0903 et seq., 41.600 et seq.); New Hampshire: the Regulation of Business Practices for Consumer Protection Act (N.H. Rev. Stat. Ann. §358-A:1 et seq.); New Jersey: the New Jersey Consumer Fraud Act (N.J. Stat. Ann. §56:8-1 et seq. (West)); New Mexico: New Mexico Unfair Practices Act (N.M. Stat. Ann. §57-12-1 et seq.); New York: New York Consumer Protection Act (N.Y. Gen. Bus. Law §§349, 350 (Consol.)); North Carolina: North Carolina Unfair and Deceptive Trade Practices Act (N.C. Gen. Stat. §75-1.1 et seq.); North Dakota: Deceptive Act or Practice Statutes (N.D. Gen. Stat. §51-15-01 et. seq.); Ohio: Ohio Consumer Sales Practices Act (Ohio Rev. Code Ann. §1345.01 et seq. (Baldwin)); Oklahoma: Oklahoma Consumer Protection Act (Okla. Stat. Ann. Tit. 15, §751 et seq. (West)) and the Oklahoma Deceptive Trade Practices Act (Okla. Stat. Ann. Tit. 78, §51 et seq. (West)); Oregon: the Unlawful Trade Practices Act (Or. Rev. Stat. §646.605 et seq.) and the Oregon Food and Other Commodities Act (Or. Rev. Stat. §616.005 et seq.); Pennsylvania: Unfair Trade Practices Act and Consumer Protection Law (Pa. Stat. Ann. Tit. 73 §201-1 et seq. (Purdon); Rhode Island: Consumer Protection Act (R.I. Gen. Law §6-13.1-1 et seq.); South Carolina: South Carolina

- 33 -

Unfair Trade Practices Act (S.C. Code Ann. §39-5-10 et seq.); South Dakota: South Dakota Deceptive Trade Practices and Consumer Protection Law (S.D. Codified Laws Ann. §37-24-1 et seq.); Tennessee: Tennessee Consumer Protection Act (Tenn. Code Ann. §47-18-101 et seq.); Texas: Texas Deceptive Trade Practices Act (Tex. Bus. & Com. Code Ann. §17.41 et seq. (Vernon)); Utah:  Utah Consumer Sales Practices Act (Utah Code Ann. §13-11-1 et seq.) and the Utah Truth in Advertising Act (Utah Code Ann. §13-11a-1 *et seq.*); Vermont: Vermont Consumer Fraud Statute (Vt. Stat. Ann. Tit. 9, §2451 et seq.); Virginia: Virginia Consumer Protection Act (Va. Code 59.1-196 et seq.); Washington: Washington Consumer Protection Act (Wash. Rev. Code Ann. §19.86 et seq.); West Virginia: West Virginia Consumer Credit and Protection Act (W. Va. Code §46A-6-101 et seq.); Wisconsin: Wisconsin Fraudulent Representations Act (Wis. Stat. Ann. §100.18 et seq. (West); Wyoming: Consumer Protection Act (Wyo. Stat. §40-12-101 et seq.) have directly, foreseeably, and proximately caused damages to Plaintiffs and the proposed class in amounts yet to be determined.

182.    As a result of Defendants' violations of the Deceptive Trade Practices Acts of the various states prohibiting unfair and deceptive acts and practices, Plaintiffs and members of the proposed class have suffered actual damages for which Defendants are liable.

### THIRD CLAIM FOR RELIEF
### Delaware Breach of Contract

**(On Behalf of Plaintiffs Melendez, Mattiello, Rowley, Richmond, Somers, and Ross, and the Nationwide Voluntary Enrollment Class, and Subclass Members)**

183.    Plaintiffs restate and reallege the preceding paragraphs of this Complaint as though set out here word for word.

184.    Plaintiffs Melendez, Mattiello, Rowley, Richmond, Somers, and Ross and Members of the Voluntary Enrollment Subclass purchased Credit Protection from Defendants with the justified expectation that they were eligible for the benefits spelled out in Defendants' advertising and marketing.

185.    Plaintiffs and Voluntary Enrollment Subclass Members paid monthly Credit Protection premiums to obtain the purported benefits of Credit Protection.

186. Plaintiffs and Voluntary Enrollment Subclass Members have fulfilled their obligation under the sales contract by paying the Credit Protection premiums.

187. Despite the full performance by Plaintiffs and Voluntary Enrollment Subclass Members, Defendants did not, in fact, provide Plaintiffs or Voluntary Enrollment Subclass Members with the benefits for which they had paid.

188. When Plaintiffs Melendez, Mattiello, Rowley, Richmond, Somers, Ross, and Voluntary Enrollment Subclass Members attempted to apply for benefits, Defendants impeded their efforts by delaying their responses and/or asking for further qualifications or proof not specified in the Terms and Conditions for Credit Protection, and then denying their claims.

189. Accordingly, Defendants materially breached their contract with Plaintiffs Melendez, Mattiello, Rowley, Richmond, Somers, Ross, and Voluntary Enrollment Subclass Members, which has resulted in harm to Plaintiffs Melendez, Mattiello, Rowley, Richmond, Somers, Ross, and Voluntary Enrollment Subclass Members, who did not receive the benefit of their bargain. By reason of the foregoing, Defendants have breached the parties' contracts and are liable to Plaintiffs Melendez, Mattiello, Rowley, Richmond, Somers, Ross, and Voluntary Enrollment Subclass Members.

190. As a direct and proximate result of Defendants' misconduct, Plaintiffs Melendez, Mattiello, Rowley, Richmond, Somers, Ross, and Voluntary Enrollment Subclass Members have been damaged in an amount to be proven at trial.

## FOURTH CLAIM FOR RELIEF
### Delaware Breach of the Covenant of Good Faith and Fair Dealing

### (On Behalf of All Plaintiffs, Nationwide Class, and Subclass Members)

191. Plaintiffs restate and reallege the preceding paragraphs of this Complaint as though set out here word for word.

192. As a direct and proximate result of Defendants' actions as described herein, Plaintiffs Arevalo, Sandow, and Chan and Members of the Involuntary Enrollment Subclass have suffered, and continue to suffer, injury in fact and have lost money as a result of Defendants' breach.

974172.2

193.     Plaintiffs and the Involuntary Enrollment Subclass Members entered into credit card agreements with Defendants with the expectation that they not be charged for services not specifically set forth in their credit card agreements.  To the extent that the credit card agreements specify allowable fees and charges, Credit Protection is not among the allowable fees and charges.  Defendants therefore implicitly promised not to charge anything beyond what was specified in the contract.

194.     Defendants charged Plaintiffs and the Involuntary Enrollment Subclass for Credit Protection without their consent or authorization and despite the absence of any provision in Plaintiffs and Members of the Involuntary Enrollment Subclass's credit card agreements allowing Defendants to do so.

195.     Good faith is an element of Defendants' credit card contract.  Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing.  Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain.  Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.  Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

196.     Under the Defendants' credit card contract, Defendants impliedly promise to administer these contract obligations in accordance with principles of good faith and fair dealing.

197.     By reason of the foregoing, Defendants have frustrated the purpose of the contract by going beyond the explicitly allowed charges.  Defendants therefore breached the covenant of good faith and fair dealing through their policies and practices as alleged herein and are liable to Plaintiffs and the Involuntary Enrollment Subclass.

198.     Plaintiffs and the Involuntary Enrollment Subclass have sustained damages as a result of Defendants' breach of the covenant of good faith and fair dealing.

199.     As a direct and proximate result of Defendants' actions as described herein, Plaintiffs Melendez, Mattiello, Rowley, Richmond, Somers, and Ross and the Voluntary

Enrollment Subclass have suffered, and continue to suffer, injury in fact and have lost money as a result of Defendants' breach.

200. Defendants' uniform advertising and marketing to Plaintiffs and the Voluntary Enrollment Subclass Members described that consumers would receive Credit Protection benefits after a qualifying or "life changing" event.

201. Defendants enrolled Plaintiffs and the Voluntary Enrollment Subclass Members in Credit Protection when they were not eligible for certain benefits because of Credit Protection's restrictions and exclusions.

202. Defendants' processing of claims for benefits by Plaintiffs and the Voluntary Enrollment Subclass involved delay tactics and ever-increasing restrictions, qualifications, and proof in order to receive benefits, and even after Plaintiffs and the Voluntary Enrollment Subclass Members submitted such proof or demonstrated their qualifications, they were denied Credit Protection benefits.

203. As such, Plaintiffs and the Voluntary Enrollment Subclass Members have not obtained the benefit of their bargain from Defendants, and the essential purpose of the Credit Protection sales contract has been frustrated.

204. Good faith is an element of the contract pertaining to the Credit Protection plan. Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

205. Under the Credit Protection Agreement, Defendants impliedly promise to administer these contract obligations in accordance with principles of good faith and fair dealing.

974172.2

206.     By reason of the foregoing, Defendants have breached the covenant of good faith and fair dealing through their policies and practices as alleged herein and are liable to Plaintiffs and the Voluntary Enrollment Subclass.

207.     Plaintiffs and the Voluntary Enrollment Subclass have performed all, or substantially all, of the obligations imposed on them under the Credit Protection Addendum Agreement.

208.     Plaintiffs and the Voluntary Enrollment Subclass have sustained damages as a result of Defendants' breach of the covenant of good faith and fair dealing.

### FIFTH CLAIM FOR RELIEF
**Delaware Unjust Enrichment**

**(On Behalf of All Plaintiffs, Nationwide Class, and Subclass Members)**

209.     In the alternative and in the event that the Court finds no remedy at law for the claims asserted herein in the Third and Fourth Claims for Relief due to the non-existence, inapplicability, or non-enforceability of any contract, Plaintiffs allege this Claim for Relief as follows:

210.     Plaintiffs restate and reallege the preceding paragraphs of this Complaint as though set out here word for word.

211.     In seeking to increase their fee revenue, Defendants unjustifiably charged Plaintiffs Arevalo, Sandow, and Chan and the Involuntary Enrollment Subclass for Credit Protection without their consent or authorization.

212.     By unknowingly paying unauthorized or otherwise fraudulent charges to Defendants for Credit Protection, Plaintiffs Arevalo, Sandow, and Chan and the Involuntary Enrollment Subclass conferred a benefit on Defendants, which Defendants knowingly accepted despite the fact that they were not entitled to such benefit.

213.     Defendants were unjustly enriched by charging Plaintiffs Arevalo, Sandow, and Chan and the Involuntary Enrollment Subclass for illusory benefits, which Plaintiffs Arevalo,

974172.2

Sandow, and Chan and the Involuntary Enrollment Subclass members never requested or authorized.

214. Defendants were unjustly enriched by charging Plaintiffs Arevalo, Sandow, and Chan and the Involuntary Enrollment Subclass members multiple Credit Protection charges if the cardholder had multiple Bank of America credit cards.

215. Defendants were unjustly enriched by forcibly enrolling and charging Plaintiffs Arevalo, Sandow, and Chan and the Involuntary Enrollment Subclass Members who were retired or who were senior citizens for Credit Protection even though they were ineligible to receive benefits by the terms of the Credit Protection documents.

216. As a result of Defendants' unjustified actions which constitute unjust enrichment, Plaintiffs Arevalo, Sandow, and Chan and the Involuntary Enrollment Subclass members suffered actual damages for which Defendants are liable. Defendants' liability for such damages should be measured by the extent of Defendants' unjust enrichment.

217. In seeking to increase their fee revenue, Defendants also unjustifiably enrolled Plaintiffs Melendez, Mattiello, Rowley, Richmond, Somers, and Ross and the Voluntary Enrollment Subclass.

218. By paying charges to Defendants for Credit Protection, Plaintiffs and the Voluntary Enrollment Subclass conferred a benefit on Defendants, which Defendants knowingly accepted.

219. Defendants were unjustly enriched by charging Plaintiffs and the Voluntary Enrollment Subclass for illusory benefits.

220. Defendants were unjustly enriched by charging Plaintiffs and the Voluntary Enrollment Subclass multiple Credit Protection charges if the cardholder had multiple Bank of America credit cards.

221. Defendants were unjustly enriched by enrolling and charging Plaintiffs and the Voluntary Enrollment Subclass members who were retired or who were senior citizens for Credit

974172.2

Protection even though they were ineligible to receive benefits by the terms of the Credit Protection documents.

222.   As a result of Defendants' unjustified actions which constitute unjust enrichment, Plaintiffs and the Voluntary Enrollment Subclass members suffered actual damages for which Defendants are liable.  Defendants' liability for such damages should be measured by the extent of Defendants' unjust enrichment.

**SIXTH CLAIM FOR RELIEF**
**Delaware Fraud**

**(On Behalf of All Plaintiffs, Nationwide Class, and Subclass Members)**

223.   Plaintiffs restate and reallege the preceding paragraphs of this Complaint as though set out here word for word.

224.   Defendants charged Plaintiffs Arevalo, Sandow, and Chan and Members of the Involuntary Enrollment Subclass for Credit Protection without their affirmative consent or knowledge that they would be charged.

225.   Defendants knew that Plaintiffs Arevalo, Sandow, and Chan and Involuntary Enrollment Subclass Members had not affirmatively or voluntarily authorized their enrollment in the Credit Protection plan.

226.   Defendants intended to induce their customers, including Plaintiffs Arevalo, Sandow, and Chan and the Involuntary Subclass Members, into paying for Credit Protection services that they never requested or authorized by involuntarily enrolling them in Credit Protection and charging them fees on their credit card statements.

227.   Defendants' fraudulent conduct of involuntarily enrolling Plaintiffs Arevalo, Sandow, and Chan and the Involuntary Enrollment Subclass Members in Credit Protection was objectively material in that a reasonable consumer would attach importance to such information as knowing they were enrolled in and charged for Credit Protection without their consent.

228.   Plaintiffs Arevalo, Sandow, and Chan and the Involuntary Enrollment Subclass Members reasonably and justifiably relied to their detriment on Defendants' fraudulent

nondisclosure of the fact that they had been involuntarily enrolled in Credit Protection.  Plaintiffs Arevalo, Sandow, and Chan and the Involuntary Enrollment Subclass Members acted as reasonably prudent consumers by relying on Defendants' fraudulent omissions and failure to disclose that they had been enrolled and paying the Credit Protection fees.

229.     Defendants also intentionally omitted material information, such as distributing materials about Credit Protection, if at all, without making it clear to them that customers had to affirmatively decline enrollment in order to avoid incurring ongoing charges.

230.     Defendants intentionally perpetuated their fraud by refusing to refund consumers' money after they discovered the charges for Credit Protection on their credit card statements and realized they had been involuntarily enrolled in the plan.

231.     Plaintiffs Arevalo, Sandow, and Chan and the Involuntary Enrollment Subclass Members would not have paid for the unauthorized charges for Credit Protection but for Defendants' knowing fraudulent conduct in enrolling them in Credit Protection without their consent.

232.     Plaintiffs Arevalo, Sandow, and the Involuntary Enrollment Subclass Members have been damaged in that they paid Defendants for unauthorized charges for Credit Protection, and by the subsequent time and expense of attempting to dispute such charges that appeared on their Bank of America credit card statements.

233.     Through advertisements and marketing representations, Defendants intended to and did misrepresent to Plaintiffs Melendez, Mattiello, Rowley, Richmond, Somers, Ross, and Members of the Voluntary Enrollment Subclass, at the time of purchase and at all relevant times, the eligibility, terms, and conditions of their Credit Protection coverage and the qualifications and proof that would be needed to obtain such coverage.

234.     Specifically, Defendants' advertisements stated that Plaintiffs Melendez, Mattiello, Rowley, Richmond, Somers, Ross, and Voluntary Enrollment Subclass members were eligible, would remain eligible, and would receive benefits under Defendants' Credit Protection plan, when these material misrepresentations and omissions were false and misleading.

- 41 -

235.     After and due to seeing and hearing Defendants' advertisements and marketing representations, Plaintiffs Melendez, Mattiello, Rowley, Richmond, Somers, Ross, and the Voluntary Enrollment Subclass Members reasonably believed, and were reasonably likely to believe, that they were eligible, would remain eligible, and would receive benefits under Defendants' Credit Protection plan.

236.     Defendants intended that Plaintiffs Melendez, Mattiello, Rowley, Richmond, Somers, Ross, and the Subclass rely upon Defendants' unfair, false, deceptive, and misleading representations regarding the nature and character of their Credit Protection plan and the exclusions, restrictions, and limitations.

237.     Plaintiffs Melendez, Mattiello, Rowley, Richmond, Somers, Ross, and the Voluntary Enrollment Subclass Members were in reality not eligible for benefits under Defendants' Credit Protection plan due to exclusions or limitations not previously disclosed to them by Defendants, or were eligible but were denied benefits by Defendants after being faced with increasing levels of qualifications and proof not previously revealed to them before purchasing Credit Protection, and even after meeting such qualifications and proof as set forth by Defendants.

238.     Defendants' representations regarding the benefits and exclusions and limitations of the Credit Protection plan were material to Plaintiffs Melendez, Mattiello, Rowley, Richmond, Somers, Ross, and the Voluntary Enrollment Subclass members in deciding to purchase Credit Protection.

239.     Plaintiffs Melendez, Mattiello, Rowley, Richmond, Somers, Ross, and the Voluntary Enrollment Subclass members would not have purchased Defendants' Credit Protection altogether, or would have paid less for the product, had they known, or had reason to have known, the terms and conditions pertaining to Defendants' Credit Protection coverage and the qualifications and proof that would be required to make any claims for coverage.

240.     Defendants' advertisements and marketing concerning their Credit Protection plan and coverage were false, deceptive, and/or fraudulent, and induced Plaintiffs Melendez, Mattiello,

Rowley, Richmond, Somers, Ross, and the Voluntary Enrollment Subclass Members to make purchases that they would not have made otherwise if they had been in possession of all of the material facts.

241.    Plaintiffs Melendez, Mattiello, Rowley, Richmond, Somers, Ross, and the Voluntary Enrollment Subclass Members have been damaged in that they paid Defendants for Credit Protection, but did not receive benefits from Defendants, and by the subsequent time and expense of attempting to apply for benefits after meeting Defendants' previously undisclosed higher levels of proof to qualify for the benefits.

242.    As a result of Defendants' fraudulent conduct and practices, Plaintiffs, the Class, and the Subclasses suffered pecuniary loss in an amount not less than the monthly premiums paid for Defendants' Credit Protection plan, plus interest.

## SEVENTH CLAIM FOR RELIEF
### Injunctive Relief

### (On Behalf of All Plaintiffs, Nationwide Class, and Subclass Members)

243.    Plaintiffs restate and reallege the preceding paragraphs of this Complaint as though set out here word for word.

244.    Plaintiffs ask the Court to grant the remedy of restitution to themselves and to all members of the class who made payments to Defendants for Credit Protection.  The Plaintiffs ask the Court to grant the following relief:

    a.    a refund of all Credit Protection payments made to Defendants;

    b.    a refund to any consumer who was retired at the time they were sold Credit Protection by Defendants;

    c.    a refund to any consumer who was a senior citizen at the time they were sold Credit Protection by Defendants;

    d.    a full refund to any consumer who was otherwise not eligible for Credit Protection due to the restrictions in the coverage at the time the product was sold to the consumer and who paid for the product; and

    e.    a full refund to any consumer who did not consent to enrollment in Credit Protection and who paid for the product.

974172.2

PLAINTIFFS' FIRST AMENDED CONSOLIDATED
CLASS ACTION COMPLAINT
CASE NO. MD NO. 3:11-MD-02269 TEH

245.   Plaintiffs seek injunctive relief enjoining Defendants from continuing to engage in the fraudulent, deceitful, unlawful and unfair common scheme as alleged herein.

### EIGHTH CLAIM FOR RELIEF
### Declaratory Relief Under 28 U.S.C. § 2201 & Fed. R. Civ. P. 57

### (On Behalf of All Plaintiffs, Nationwide Class, and Subclass Members)

246.   Plaintiffs restate and reallege the preceding paragraphs of this Complaint as though set out here word for word.

247.   There exists an actual controversy under applicable law governing Defendants' conduct, as to whether Defendants can engage in the practices described herein.

248.   This question is common to Plaintiffs and Class members who seek a declaration of their rights and legal obligations in addition to such other relief which might be granted by this Court.

249.   Pursuant to 28 U.S.C. § 2201, this Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

250.   Plaintiffs and Class members are interested parties who seek a declaration of their rights and legal relations vis-à-vis Defendants under the Credit Protection plan, including a finding that the conduct of Defendants alleged herein is in violation of federal and various states' statutory and common law, and enjoining Defendants from continuing in such conduct.

### NINTH CLAIM FOR RELIEF
### Violation of Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*

### (On Behalf of Plaintiffs Arevalo and Sandow and  the California Subclass)

251.   In the event that the Court determines not to certify the Nationwide Class on the basis of its consumer protection claim (Second Claim for Relief), Plaintiffs Arevalo and Sandow and the California Subclass hereby allege a state claim for relief under Cal. Civ. Code §§ 1750, *et seq.*

252.   Plaintiffs Arevalo and Sandow restate and reallege the preceding paragraphs of this Complaint as though set out here word for word.

253.    Defendants are "persons" as defined in Cal. Civil Code § 1761(c).

254.    Plaintiffs and the California Subclass members are "consumers" as defined in Cal. Civil Code § 1761(d).

255.    The Credit Protection program of Defendants in which Plaintiffs and the California Subclass were enrolled is a "service" within the meaning of Cal. Civil Code § 1761(b).

256.    The premiums paid by Plaintiffs and the California Subclass for the services sold by Defendants, alleged herein, constitute "transactions" within the meaning of Cal. Civ. Code §§ 1761(e) and 1770.

257.    By unilaterally imposing Credit Protection charges on Plaintiffs and California Subclass Members who did not voluntarily enroll or by voluntarily enrolling Plaintiffs and California Subclass Members who were ineligible for benefits or who were eligible but denied benefits after Defendants imposed increasing levels of proof on their claims, Defendants violated the Consumer Legal Remedies Act ("CLRA") in at least the following ways:

a.      Misrepresenting to Plaintiffs and the California Subclass that Defendants' services under the Credit Protection program had benefits they did not have because Plaintiffs and California Subclass Members did not know the program had been imposed upon them and did not know they could avail themselves of it or if they were even eligible, did not know they were ineligible for benefits because of exclusions of Credit Protection, or were denied benefits after having to jump through hoops when they were eligible for the benefits, in violation of Cal. Civ. Code § 1770(a)(5);

b.      Misrepresenting to Plaintiffs and the California Subclass that the subject of a transaction has been supplied in accordance with a previous representation when it has not by imposing Credit Protection charges on credit card statements when they did not previously appear on the statements and were not authorized and by stating that Plaintiffs and California Subclass Members were eligible, would remain eligible, and would receive benefits under Defendants' Credit Protection plan, in violation of Cal. Civ. Code § 1770(a)(16);

c. Misrepresenting that Plaintiffs and California Subclass Members voluntarily signed up for Credit Protection through a salesperson, representative, or agent who was not authorized by Plaintiffs and California Subclass Members to negotiate the final terms of the transaction with them because, upon information and belief, the salesperson, representative, or agent enrolled Plaintiffs and California Subclass Members in Credit Protection without their consent or enrolled Plaintiffs and California Subclass Members when they were not eligible for benefits or represented that they could receive benefits when Defendants have prevented them from doing so, in violation of Cal. Civ. Code § 1770(a)(18);

d. Misrepresenting that their transactions with Plaintiffs and the California Subclass conferred benefits and rights on Plaintiffs and the California Subclass, and obligations on Defendants, which were not, in fact, conferred, in violation of Cal. Civ. Code § 1770(a)(14); and

e. Advertising services under the Credit Protection program to Plaintiffs and the California Subclass with the intent not to sell them as advertised by not obtaining authorization to charge Plaintiffs and California Subclass Members for Credit Protection or by telling Plaintiffs and California Subclass Members that they were eligible, would remain eligible, and would receive benefits under Defendants' Credit Protection plan, in violation of Cal. Civ. Code § 1770(a)(9).

258. In addition, under California law, a duty to disclose arises in four circumstances: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts.

259. Defendants had a duty to disclose to Plaintiffs and the California Subclass the true nature of the Credit Protection program and its terms, conditions, and limitations on benefits because: (a) Defendants are in a fiduciary relationship with Plaintiffs and the California Subclass; (b) Defendants had exclusive knowledge at the time Plaintiffs and California Subclass members

were enrolled in the program with or without their permission; (c) Defendants actively concealed from Plaintiffs and the California Subclass the true nature of the terms, conditions, benefits, exclusions, and proof required for claims or that they were being enrolled in the Credit Protection program without their authorization, which was material information to customers; and (d) Defendants made partial representations regarding the nature and benefits and exclusions of Credit Protection that were misleading to Plaintiffs and the California Subclass, such as telling them they would be eligible for benefits if they met the terms and conditions and by sending materials about Credit Protection to customers without telling them they had to affirmatively decline enrollment in order to avoid being enrolled involuntarily.

260.   Defendants violated the CLRA by concealing material information from Plaintiffs and the California Subclass regarding their enrollment in the Credit Protection program when they had a duty to disclose that information.

261.   Defendants' fraudulent representations and omissions in violation of the CLRA were likely to mislead consumers, who reasonably interpreted their misrepresentations and omissions to mean that they would not be enrolled in Defendants' Credit Protection plan if they had not voluntarily enrolled in the plan or that they were eligible, would remain eligible, and would receive benefits from Credit Protection.

262.   Defendants' conduct alleged herein was intentional and was specifically designed to enroll them in Credit Protection and impose charges on their credit card statements without their permission or to enroll consumers in Credit Protection when they were not eligible for benefits or could not get benefits from Credit Protection.

263.   Defendants' misrepresentations and omissions alleged herein were material in that a reasonable person would attach importance to such information in deciding to enroll in Credit Protection or being enrolled in and charged for Credit Protection without their permission.

264.   Plaintiffs and the California Subclass relied to their detriment on Defendants' misrepresentations and omissions in enrolling in the Credit Protection plan.  Additionally,

Plaintiffs and the California Subclass were harmed by Defendants' failure to disclose that they were being enrolled without their consent in Credit Protection.

265.    Plaintiffs, on behalf of themselves and the California Subclass, demand judgment against Defendants under the CLRA for injunctive relief and restitution to Plaintiffs and the California Subclass in an amount to be proven at trial.

266.    Plaintiffs, on behalf of themselves and the California Subclass, further seek compensatory damages and, in light of Defendants' intentional and fraudulent conduct, an award of punitive damages.

267.    Pursuant to Cal. Civ. Code § 1782(a), on November 2, 2010, Plaintiffs' counsel, on behalf of Plaintiffs Arevalo and Sandow, served Bank of America by United States certified mail, return receipt requested, with notice of Bank of America's violations of the CLRA.  A true and accurate copy of the CLRA demand notice is attached hereto as Exhibit A.

268.    Bank of America acknowledged receipt of the CLRA demand notice on November 4, 2010, as evidenced by the Domestic Return Receipt signed by its agent, a true and accurate copy of which is attached hereto as Exhibit B.

269.    Bank of America has refused or failed to timely respond to the CLRA demand notice.

270.    Bank of America has failed to provide appropriate relief for its violations of the CLRA within 30 days of its receipt of Plaintiffs' demand notice.  Accordingly, pursuant to §§ 1780 and 1782(b) of the CLRA, Plaintiffs Arevalo and Sandow are entitled to recover actual damages, punitive damages, attorneys' fees and costs, and any other relief the Court deems proper.

271.    Pursuant to Cal. Civ. Code sec. 1782(a), on April 29, 2011, Plaintiffs' counsel, on behalf of Plaintiffs Arevalo and Sandow, served FIA, by and through their attorneys, with notice of FIA's violations of the CLRA.  A true and accurate copy of the CLRA demand notice is attached hereto as Exhibit C.

272.     FIA has failed to provide appropriate relief for its violations of the CLRA within 30 days of its receipt of Plaintiffs' demand notice. Accordingly, pursuant to §§ 1780 and 1782(b) of the CLRA, Plaintiffs Arevalo and Sandow are entitled to recover actual damages, punitive damages, attorneys' fees and costs, and any other relief the Court deems proper.

## TENTH CLAIM FOR RELIEF
### Violation of Cal. Bus. & Prof. Code Section 17200, *et seq.*—Unlawful, Fraudulent, and Unfair Business Acts and Practices

### (On Behalf of Plaintiffs Arevalo and Sandow and the California Subclass)

273.     In the event that the Court determines not to certify the Nationwide Class on the basis of its consumer protection claim (Second Claim for Relief), Plaintiffs Arevalo and Sandow and the California Subclass hereby allege a state claim for relief under Cal. Bus. & Prof. Code Section 17200, *et seq.*

274.     Plaintiffs Arevalo and Sandow restate and reallege the preceding paragraphs of this Complaint as though set out here word for word.

275.     Defendants' conduct alleged herein constitutes unfair, unlawful, and deceptive business acts and practices in violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.* Such conduct includes, but is not limited to, (a) unilaterally imposing upon Plaintiffs Arevalo and Sandow and the Involuntary Enrollment Subclass Members the Credit Protection plan without their permission; (b) failing to disclose to Plaintiffs Arevalo and Sandow and the Involuntary Enrollment Subclass Members that they were being enrolled and could only affirmatively opt out if they did not wish to be enrolled; (c) refusing to refund the money that Plaintiffs Arevalo and Sandow and the Involuntary Enrollment Subclass Members paid for Credit Protection when they were involuntarily enrolled; (d) misrepresenting to Plaintiffs and the Voluntary Enrollment Subclass that they were eligible, would remain eligible, and would receive benefits under Credit Protection; (e) concealing the true nature of the benefits and exclusions of Credit Protection and the proof required for claims from Plaintiffs and the Voluntary Enrollment Subclass; and (f) denying Plaintiffs and the Voluntary Enrollment Class the promised benefits of the Credit Protection program.

276.     In addition, the conduct alleged herein constitutes fraud and violations of the CLRA and FAL, thus providing the basis for a finding of liability under the "unlawful" prong of Cal. Bus. & Prof. Code §§ 17200, *et seq*.

277.     Defendants' conduct of involuntarily enrolling customers in Credit Protection and then refusing to refund their money, and voluntarily enrolling customers who were ineligible for benefits or who were eligible but could not get benefits from Credit Protection, is "unfair" because it offends established public policy protecting consumers from deceptive practices and/or is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to customers.

278.     Defendants' conduct herein of involuntarily enrolling customers in Credit Protection and then refusing to refund their money and voluntarily enrolling customers who were ineligible for benefits or who were eligible for benefits but could not get them is "fraudulent" because it has deceived and/or is likely to deceive Plaintiffs and other reasonable consumers.

279.     Defendants' unfair, unlawful, and deceptive acts and practices alleged herein were specifically designed to enroll Plaintiffs and California Subclass Members in Credit Protection.

280.     Defendants' unfair, unlawful, and deceptive acts and practices alleged herein have deceived and/or are likely to deceive Plaintiffs and other reasonable consumers.

281.     Defendants' misrepresentations and omissions alleged herein were material in that a reasonable person would attach importance to such information and would be induced to act upon such information in paying for Credit Protection, whether voluntarily or involuntarily.

282.     Defendants' misrepresentations and omissions alleged herein are objectively material to the reasonable consumer, and therefore reliance upon such misrepresentations and omissions may be presumed as a matter of law.

283.     Plaintiffs and the California Subclass relied to their detriment on Defendants' misrepresentations and omissions by not affirmatively opting out or declining to enroll in the program and by unknowingly and unwillingly paying for Credit Protection, or by voluntarily enrolling in Credit Protection with the reasonably justified expectation that they were eligible, would remain eligible, and would receive benefits.

284.     Plaintiffs and each member of the California Subclass have been damaged as a result of Defendants' unfair, unlawful, and deceptive conduct alleged herein.  Plaintiffs have lost money or property as a result of Defendants' conduct, and they have each paid hundreds of dollars in Credit Protection fees.  This monetary loss is an economic injury to Plaintiffs caused by their enrollment – whether voluntary or involuntary – in Credit Protection.  They are entitled to injunctive relief and restitution, in an amount to be proven at trial.

**ELEVENTH CLAIM FOR RELIEF**
**Violation of Cal. Bus. & Prof. Code Section 17500, *et seq*.—False Advertising**

**(On Behalf of Plaintiffs Arevalo and Sandow and the California Subclass)**

285.     In the event that the Court determines not to certify the Nationwide Class on the basis of its consumer protection claim (Second Claim for Relief), Plaintiffs Arevalo and Sandow and the California Subclass hereby allege a state claim for relief under Cal. Bus. & Prof. Code Section 17500, *et seq.*

286.     Plaintiffs Arevalo and Sandow restate and reallege the preceding paragraphs of this Complaint as though set out here word for word.

287.     Defendants have committed acts of untrue and misleading advertising, as defined by Cal. Bus. & Prof Code §§ 17500*, et. seq*., by, *inter alia*: (a) falsely advertising, on their respective websites and elsewhere, that customers would receive benefits under Defendants' Credit Protection plan; (b) concealing material information about the benefits and limits and proof required for claims under Credit Protection; (c) concealing the manner in which customers were enrolled in Credit Protection without their permission and concealing their cancellation options for the plan; and (d) deceptively marketing Credit Protection to slamming customers by encouraging them to continue paying for the plan even after they were involuntarily enrolled.

288.     Defendants' misrepresentations and omissions alleged herein deceive or have the tendency to deceive the general public regarding the benefits and exclusions and level of proof required for Credit Protection and consumers' ability to voluntarily enroll and get benefits or cancel the plan and get a refund if they did not choose to enroll.

289. Defendants' misrepresentations and omissions alleged herein were the type of misrepresentations and omission that are material—*i.e.*, a reasonable person would attach importance to them and would be induced to act on the information in paying for Credit Protection.

290. Defendants' misrepresentations and omissions alleged herein are objectively material to the reasonable consumer, and therefore reliance upon such misrepresentations may be presumed as a matter of law.

291. Defendants' false advertising is ongoing. Unless restrained by this Court, Defendants could continue to engage in untrue and misleading advertising, as alleged above, in violation of Cal. Bus. & Prof Code §§ 17500, *et. seq*.

292. As a result of the foregoing, Plaintiffs and each member of the California Subclass have been injured and have lost money or property, and are entitled to restitution and injunctive relief.

## TWELFTH CLAIM FOR RELIEF
### Violation of New York Deceptive Practices Act, Gen. Bus. Law § 349
### (On Behalf of Plaintiff Melendez and the New York Subclass)

293. In the event that the Court determines not to certify the Nationwide Class on the basis of its consumer protection claim (Second Claim for Relief), Plaintiff Melendez and the New York Subclass hereby allege a state claim for relief under New York Deceptive Practices Act, Gen. Bus. Law § 349.

294. Plaintiff Melendez restates and realleges the preceding paragraphs of this Complaint as though set out here word for word.

295. Defendants' sale of Products and the Service to Plaintiff and the New York Subclass as described herein constitute the "conduct of any trade or commerce" in New York within the meaning of Gen. Bus. Law § 349.

296. Defendant's conduct has a broad impact on consumers at large.

297. Defendants' deceptive scheme related to Credit Protection Plus product constitutes deceptive and unfair practices.

- 52 -

298.    All New York residents of the New York Subclass were injured as a result of Defendants' scheme because they paid for a product that had no value to them.

299.    In addition, all New York residents who paid for Credit Protection were injured as a result of Defendants' scheme because they paid an inflated price for the product.  The fee charged for the Credit Protection Plus bears no rational relation to the value of the product given Defendants' low pay-out rate resulting from manipulation of the claims process.

### THIRTEENTH CLAIM FOR RELIEF
**Violation of New Jersey Consumer Fraud Act, N.J. Stat. Am. §§ 56:8 1, *et seq.***

**(On Behalf of Plaintiff Mattiello and the New Jersey Subclass)**

300.    In the event that the Court determines not to certify the Nationwide Class on the basis of its consumer protection claim (Second Claim for Relief), Plaintiff Mattiello and the New Jersey Subclass hereby allege a state claim for relief under New Jersey Consumer Fraud Act, N.J. Stat. Am. §§ 56:8 1, *et seq.*

301.    Plaintiff Mattiello restates and realleges the preceding paragraphs of this Complaint as though set out here word for word.

302.    Plaintiff is a "person," within the New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1, et seq. (hereinafter referred to as NJCFA), who has purchased Credit Protection.

303.    Defendants are "Persons" as contemplated by the NJCFA.

304.    Credit Protection constitutes "merchandise" for purposes of NJCFA (declaring unlawful the use of deceptive or fraudulent practices in connection with the sale of "merchandise.").

305.    The solicitations and sales pitches employed by Defendants' agents, to offer and sell the Credit Protection to Plaintiffs and the New Jersey Subclass are "Advertisements" as defined under the NJCFA.

306.    As alleged with specificity herein, Defendants employed deception, fraud, false pretense, false promise, misrepresentation, and the concealment, suppression, and/or omission of material fact with intent that Plaintiff and the New Jersey Subclass rely upon such concealment, suppression or omission in their relationship with Plaintiff and the New Jersey Subclass.

307.    As alleged with specificity herein, Defendants, through their sales pitches and solicitations, have employed deception, fraud, false pretenses, false promises, and misrepresentations in connection with the offer for sale of the Credit Protection Plan.

308.    As alleged with specificity herein, by enrolling members of the New Jersey Subclass into the Plan without their express consent and authorization, Defendants have employed deception, fraud, false pretenses, false promises, and misrepresentations in connection with the offer for sale of the Credit Protection Plan.

309.    As alleged with specificity herein, Defendants engaged in the concealment, suppression and omission of material facts, with the intent that Plaintiff and the New Jersey Subclass would rely upon such concealment, suppression or omission, regarding the Credit Protection Plan.

310.    As alleged with specificity herein, Defendants fraudulently and deceptively caused members of the New Jersey Subclass to enroll in the Credit Protection Plan without obtaining consent or authorization to do so.

311.    As a result of Defendants' deceptive and fraudulent business practices complained of herein, members of the New Jersey Subclass were unknowingly enrolled in the Plan and caused to pay the attendant monthly fees for the same.

312.    As alleged with specificity herein, Defendants knowingly received and appreciated benefits at the expense and to the detriment of members of the New Jersey Subclass who were enrolled but did not meet the eligibility criteria in the Plan.

313.    Based on the foregoing, Plaintiff, on behalf of himself and the New Jersey Subclass, demands judgment against Defendants under the NJCFA.

314.    As a result of Defendants' activities which offend the NJCFA, Plaintiff has suffered an ascertainable loss of money and property.  Specifically, Plaintiff has become responsible for payments attributable to Credit Protection coverage, even though the product is virtually worthless.

315.    Plaintiff seeks judicial orders of an equitable nature against Defendants, including, but not limited to, orders declaring Defendant's practices to be unlawful, unfair, and/or deceptive, and enjoining Defendants from undertaking any further unlawful, unfair, and/or deceptive acts or omissions.

316.    Plaintiff and the Class Members seek disgorgement and restitution plus interest on damages at the legal rate, as well as three times the amount of their damages caused by Defendants' violations of the NJCFA.

317.    Because Plaintiff seeks to enforce an important right affecting the public interest, Plaintiff requests an award of attorneys' fees and costs individually and on behalf of the New Jersey Subclass.

318.    Due to Defendants' violations of the NJCFA, Plaintiff and members of the New Jersey Subclass have suffered monetary damages for which Defendants are liable

### FOURTEENTH CLAIM FOR RELIEF
### Violation of Washington Consumer Protection Act, RCW 19.86.090

### (On Behalf of Plaintiffs Somers and Ross and the Washington Subclass)

319.    In the event that the Court determines not to certify the Nationwide Class on the basis of its consumer protection claim (Second Claim for Relief), Plaintiffs Somers and Ross and the Washington Subclass hereby allege a state claim for relief under Washington Consumer Protection Act, RCW 19.86.090.

320.    Plaintiffs Somers and Ross restate and reallege the preceding paragraphs of this Complaint as though set out here word for word.

321.    Defendants' Payment Protection plan constitutes "an unfair or deceptive act or practice" for purposes of Washington's Consumer Protection Act.  *See* RCW 19.86.090.

322.    Defendants' unfair or deceptive acts occur in trade or commerce.  *See* RCW 19.86.090.

323.    Defendants' conduct is so harmful and wide ranging that it has a public interest impact.  *See* RCW 19.86.090.

324.   Plaintiffs and the Washington Subclass have suffered an injury to their business or property.  *See* RCW 19.86.090.

325.   Plaintiffs and the Washington Subclass's injuries were caused by Defendants' conduct.  *See* RCW 19.86.090.

326.   Through their conduct, as described in preceding paragraphs of this Complaint, Defendants have committed deception, fraud, false pretenses, false promises, misrepresentations, and the knowing concealment, suppression, and omission of material facts with intent that others rely upon such concealment, suppression, and omission, all in connection with the sale of Payment Protection coverage.  This conduct is expressly declared unlawful by the Consumer Protection Act.

327.   As a result of Defendants' activities, Plaintiffs and the Washington Subclass have suffered an ascertainable loss of money and property.  Specifically, Plaintiffs and the Washington Subclass have become responsible for the payments attributable to Payment Protection coverage, even though that service is virtually worthless to Plaintiffs and the Washington Subclass.

328.   Plaintiffs and the Washington Subclass seek judicial orders of an equitable nature against Defendants, including, but not limited to, orders declaring Defendants' practices to be unlawful, unfair, and/or deceptive, and enjoining Defendants from undertaking any further unlawful, unfair, and/or deceptive acts or omissions.

329.   Plaintiffs and the Washington Subclass seek disgorgement and restitution plus interest on damages at the legal rate, as well as three times the amount of their damages caused by Defendants' violations of the Consumer Protection Act.

330.   Because Plaintiffs and the Washington Subclass seek to enforce an important right affecting the public interest, Plaintiffs request an award of attorneys' fees and costs on behalf of themselves and the Washington Subclass.

331.   Due to Defendants' violations of the Consumer Protection Act prohibiting unfair and deceptive acts and practices, Plaintiffs and members of the Washington Subclass have suffered monetary damages for which Defendants are liable.

974172.2

### FIFTEENTH CLAIM FOR RELIEF
#### Violation of Wisconsin Statute § 100.18(1)

#### (On Behalf of Plaintiff Rowley and the Wisconsin Subclass)

332.    In the event that the Court determines not to certify the Nationwide Class on the basis of its consumer protection claim (Second Claim for Relief), Plaintiff Rowley and the Wisconsin Subclass hereby allege a state claim for relief under Wisconsin Statute § 100.18(1)

333.    Plaintiff Rowley restates and realleges the preceding paragraphs of this Complaint as though set out here word for word.

334.    Through advertisements and marketing representations, Defendants intended to and did misrepresent to Plaintiffs and the Wisconsin Subclass, at the time of purchase and at all relevant times, the eligibility, terms, and conditions of their Credit Protection coverage.

335.    Specifically, Defendants' advertisements stated that Plaintiffs and Wisconsin Subclass members were eligible, would remain eligible, and would receive benefits under Defendants' Credit Protection plan, when these representations were false and misleading.

336.    After seeing and hearing Defendants' advertisements and marketing representations, Plaintiff reasonably believed, and Plaintiff and the Wisconsin Subclass were reasonably likely to believe, that they were eligible, would remain eligible, and would receive benefits under Defendant's Credit Protection plan.

337.    Defendants intended that Plaintiff and the Wisconsin Subclass rely upon Defendants' false, deceptive, and misleading representations regarding the quality and character of their Credit Protection plan.

338.    Defendants' representations regarding the benefits and exclusions and limitations of their Credit Protection plan were material to Plaintiff and the Wisconsin Subclass in deciding to purchase the Credit Protection.

339.    Plaintiff and the Class would not have purchased Defendants' Credit Protection altogether, or would have paid less for these products, had they known, or had reason to have known, the terms and conditions pertaining to Defendants' Credit Protection coverage.

340. Defendants' advertisements and marketing concerning their Credit Protection plan and coverage were false, deceptive and/or fraudulent, and induced Plaintiff and the other members of the Class to make purchases that they would not have made otherwise if they had been in possession of all of the material facts.

341. Defendants also deceptively enrolled some Class members in Credit Protection without their affirmative consent and made it difficult for Class members to cancel the Credit Protection or obtain a refund for the premiums they unknowingly paid for a product they did not want.

342. As a result of Defendants' deceptive conduct and practices, Plaintiff and the Class suffered pecuniary loss in an amount not less than the purchase price of Defendants' Credit Protection plan, or a portion thereof, plus interest.

## SIXTEENTH CLAIM FOR RELIEF
**Violation of Florida Deceptive and Unfair Trade Practices Act, Bus. & Commerce Code § 501.201, *et seq.***

### (On Behalf of Plaintiff Richmond and the Florida Subclass)

343. In the event that the Court determines not to certify the Nationwide Class on the basis of its consumer protection claim (Second Claim for Relief), Plaintiff Richmond and the Florida Subclass hereby allege a state claim for relief under Florida Deceptive and Unfair Trade Practices Act, Bus. & Commerce Code § 501.201, *et seq.*

344. Plaintiff Richmond restates and realleges the preceding paragraphs of this Complaint as though set out here word for word.

345. Plaintiff Richmond asserts this claim for relief on behalf of herself and those similarly situated residing within the State of Florida.

346. The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") prescribes unfair methods of competition, and unfair or deceptive acts or practices in the conduct of any trade or commerce. FDUTPA also provides for injunctive relief and restitution for violations.

347. Defendants' misleading marketing scheme related to Credit Protection violated the Act and is therefore unlawful pursuant to Fla. Stat. § 501.201, *et seq.*

348.     Defendants' deceptive marketing scheme related to the Credit Protection product constitutes unfair practices within the meaning of FDUTPA.

349.     By engaging in the above described acts and practices, Defendants have committed one or more acts of unfair competition within the meaning of FDUTPA.

350.     Defendants' acts and practices as described herein have deceived and/or are likely to deceive members of the consuming public.

351.     Plaintiff relied on Defendants' misleading and incomplete information detailed herein regarding Credit Protection in deciding to "enroll" in Credit Protection.

352.     As a result of the conduct described above, Defendants have been and will be unjustly enriched at the expense of Plaintiff and members of the proposed Florida Subclass. Specifically, Defendants have been unjustly enriched by the profits from Florida consumers who pay for the Credit Protection.

353.     Pursuant to FDUTPA, Plaintiff seeks an order of this Court for Defendants to fully disclose the true nature of their misrepresentations.  Plaintiff additionally requests an order requiring Defendants to disgorge their ill-gotten gains and award Plaintiff full restitution of all monies wrongfully acquired by Defendants by means of such acts of unfair competition, plus interest and attorneys' fees so as to restore any and all monies to Plaintiff and members of the proposed Florida Subclass which were acquired and obtained by means of such unfair competition, misrepresentations and omissions, and which ill-gotten gains are still retained by Defendants.  Plaintiff and members of the proposed Florida Subclass may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

354.     Defendants, through their acts of unlawful and unfair competition, have acquired money from Plaintiff and the members of the proposed Florida Subclass.  Thus, Plaintiff and the members of the proposed Florida Subclass request that this Court restore this money to them and enjoin Defendants from continuing to violate FDUTPA, as discussed above.

355.     Such conduct is ongoing and continues to this date.  Plaintiff and the proposed Florida Subclass members are therefore entitled to the relief described below.

356.    Plaintiff seeks reasonable attorneys' fees pursuant to, inter alia, Code of Fla. Stat. § 501.2105.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray:

A.    That the Court determines that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, that the Plaintiffs are proper class representatives, and their counsel are adequate class counsel;

B.    That judgment be entered against Defendants and in favor of Plaintiffs and the Class and Subclasses on the Claims for Relief in this Complaint, for injunctive and equitable relief as requested above, and for actual, compensatory, punitive, and treble damages in an amount to be determined at trial;

C.    That Declaratory Judgment be entered against Defendants finding that Defendants' conduct is in violation of:  (1) TILA, (2) Delaware (and/or various states') consumer protection law, (3) Delaware breach of contract, (4) Delaware breach of the covenant of good faith and fair dealing, (5) Delaware unjust enrichment, and (6) Delaware fraud as described above, and enjoining Defendants from continuing in such conduct.

D.    That judgment be entered imposing interest on damages, litigation costs, and attorneys' fees against Defendants;

E.    For all other and further relief as this Court may deem necessary and appropriate.

### JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Dated: April 25, 2012 Respectfully submitted,

**LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP**

By: */s/ Daniel M. Hutchinson*

Elizabeth Cabraser (State Bar No. 083151)
Michael W. Sobol (State Bar No. 194857)
Daniel M. Hutchinson (State Bar No. 239458)

275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:      (415) 956-1000
Facsimile:      (415) 956-1008
ecabraser@lchb.com
msobol@lchb.com
dhutchinson@lchb.com

Wendy R. Fleishman
Rachel Geman (admitted pro hac vice)
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Telephone:      (212) 355-9500
Facsimile:      (212) 355-9592
wfleishman@lchb.com
rgeman@lchb.com

**GOLOMB & HONIK PC**

Richard Golomb
Ruben Honik
1515 Market Street, Suite 1100
Philadelphia, PA 19102
Telephone:  (215) 985-9177
Facsimile:  (215) 985-4169
rhonik@golombhonik.com
rgolomb@golombhonik.com

**CARNEY WILLIAMS BATES PULLIAM & BOWMAN PLLC**

J. Allen Carney
Randall K. Pulliam
11311 Arcade Drive, Ste 200
Little Rock, AK 72212
Telephone:  (501) 312-8500
Facsimile:  (501) 312-8505
acarney@carneywilliams.com
rpulliam@carneywilliams.com

**TAUS, CEBULASH & LANDAU, LLP**

Brett Cebulash
Kevin S. Landau
80 Maiden Lane, Suite 1204
New York, NY 10038
Telephone:  (212) 931-0704
bcebulash@tcllaw.com
klandau@tcllaw.com

**GLANCY BINKOW & GOLDBERG LLP**

Marc Godino
1801 Avenue of the Stars, Suite 311
Los Angeles, CA 90067

974172.2

- 61 -

PLAINTIFFS' FIRST AMENDED CONSOLIDATED
CLASS ACTION COMPLAINT
CASE NO. MD NO. 3:11-MD-02269 TEH

Telephone:  (310) 201-9150
Facsimile:  (310) 201-9160
mgodino@glancylaw.com

**OWINGS LAW FIRM**

Steve Owings
1400 Brookwood
Little Rock, AR 72202
Telephone:  (501) 661-9999
Facsimile:  (501) 661-8393
sowings@owingslawfirm.com

**CAREY DANIS & LOWE**

John J. Carey
Francis J. "Casey" Flynn, Jr.
Tiffany M. Yiatras
8235 Forsyth Blvd., Ste. 1100
St. Louis, MO 63105
Telephone:  (800) 721-2519
Facsimile:  (314) 721-0905
jcarey@careydanis.com
casey@jefflowepc.com
tyiatras@caseydanis.com

**PARIS ACKERMAN & SCHMIERER LLP**

David S. Paris
Ross Schmierer
101 Eisenhower Parkway
Roseland, NJ 07068
Telephone:  (973) 228-6667
Facsimile:  (973) 629-1246
david@paslawfirm.com
ross@paslawfirm.com

**NAGEL RICE, LLP**

Bruce Nagel
Jay Rice
Diane Sammons
103 Eisenhower Parkway
Roseland, NJ 07068
Telephone:  (973) 618-0400
Facsimile: (973) 618-9194
bnagel@nagelrice.com
jrice@nagelrice.com
dsammons@nagelrice.com

**ATTORNEYS FOR PLAINTIFFS AND THE PROPOSED CLASS AND SUBCLASSES**

974172.2

1

## CERTIFICATE OF SERVICE

2

      I hereby certify that, on April 25, 2012, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send notification of such filing to all

3

attorneys of record.

4

                                      */s/ Daniel M. Hutchinson*

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' FIRST AMENDED CONSOLIDATED
CLASS ACTION COMPLAINT
CASE NO. MD NO. 3:11-MD-02269 TEH