Michael W. Sobol (CA Bar No. 194857)
*msobol@lchb.com*
Daniel M. Hutchinson (CA Bar No. 239458)
*dhutchinson@lchb.com*
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:   (415) 956-1008

Wendy R. Fleishman
*wfleishman@lchb.com*
Rachel Geman (admitted *pro hac vice*)
*rgeman@lchb.com*
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Telephone:  (212) 355-9500
Facsimile:  (212) 355-9592

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: BANK OF AMERICA CREDIT PROTECTION MARKETING AND SALES PRACTICES LITIGATION<br><br>THIS DOCUMENT RELATES TO ALL ACTIONS | MD No. 3:11-md-02269 TEH<br><br>MDL Docket No. 2269<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND RELATED RELIEF; MEMORANDUM OF LAW IN SUPPORT**<br><br>Date:      July 17, 2012<br>Time:      10:00 a.m.<br>Location:   Courtroom 2, 17th Floor<br>The Honorable Thelton E. Henderson |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ......................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES .............................................. 1

I.    INTRODUCTION ......................................................................................... 1

II.    FACTUAL AND PROCEDURAL BACKGROUND .......................................... 2

    A.    The MDL Transfer And Subsequent Consolidation ................................ 2

    B.    The Parties Engaged In Substantial Motion Practice And Negotiation On The Pleadings ....................................................... 3

    C.    The Parties Were Engaged In Formal Discovery When They Commenced Mediation Efforts ...................................................... 4

    D.    The Parties Entered Into Settlement Negotiations And Reached An Agreement .................................................................... 5

III.    TERMS OF THE SETTLEMENT ................................................................ 6

    1.    The Settlement Class ............................................................. 7

    2.    Monetary Relief for the Class Members ................................... 7

    3.    Practice Changes and Other Benefits ...................................... 8

    4.    *Cy Pres* Relief for the Class Members ..................................... 8

    5.    Class Release ........................................................................ 9

    6.    Class Representative Service Awards ....................................... 9

    7.    Attorneys' Fees and Costs ....................................................... 9

    8.    Administration and Notice ..................................................... 10

IV.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED ......................................................................................... 11

    A.    Class Action Settlement Procedure ......................................... 11

    B.    The Settlement Satisfies The Criteria For Preliminary Approval ............ 13

    1.    The Strength of Plaintiffs' Claims Balanced Against the Risk, Expense, Complexity, and Likely Duration of Further Litigation Favors Approval of the Settlement ............................... 13

    2.    The Settlement Provides Substantial Relief for Class Members ..................................................................... 15

**TABLE OF CONTENTS**
**(continued)**

Page

3.   The Stage of Proceedings and Discovery Thus Far has Enabled  Sufficient Evaluation of the Merits of the Claims ......... 15

4.   Counsel are Experienced in Litigation of Class Cases and of Cases Involving Credit Card Protection Products......................... 16

5.   The Settlement is the Product of Serious, Informed, and Arm's-Length Negotiations .......................................................... 16

V.   CERTIFICATION OF THE CLASS IS APPROPRIATE.................................... 16

A.   Numerosity.................................................................................. 17

B.   Commonality............................................................................... 17

C.   Typicality .................................................................................... 18

D.   Adequacy .................................................................................... 18

E.   Predominance And Superiority ................................................... 20

VI.   PROPOSED PLAN OF NOTICE ....................................................................... 21

VII.   FINAL APPROVAL HEARING ........................................................................ 21

VIII.   CONCLUSION ................................................................................................... 22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page**

## CASES

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997) .......................................................................................................... 20

*Arevalo v. Bank of Am. Corp.*,
  2011 U.S. Dist. LEXIS 34151 (N.D. Cal. Mar. 29, 2011) .................................... 3, 14

*Browning v. Yahoo! Inc.*,
  No. 04-cv-1463, 2007 WL 4105971 (N.D. Cal. Nov. 16, 2007) ............................. 17

*Chun–Hoon v. McKee Foods Corp.*,
  No. 05-cv-620, 2009 WL 3349549 (N.D. Cal. Oct. 15, 2009) ........................... 12, 13

*Churchill Vill. LLC v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) ......................................................................... 11, 13

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ................................................................. 2, 11, 13

*Decohen v. Abbassi, LLC*,
  2011 WL 3438625 (D. Md. July 26, 2011) ............................................................ 14

*Denton v. Dep't Stores Nat'l Bank*,
  2011 WL 3298890 (W.D. Wash. Aug. 1, 2011). ................................................... 14

*Glass v. UBS Fin. Servs., Inc.*,
  No. 06-cv-4068, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007),
  *aff'd*, 331 Fed. Appx. 452 (9th Cir. 2009) ......................................................... 15

*Glass v. UBS Fin. Servs., Inc.*,
  No. C-06-4068 MMC, 2007 U.S. Dist. LEXIS 8476 (N.D. Cal. Jan. 26, 2007) ...................... 15

*Haley v. Medtronic, Inc.*,
  169 F.R.D. 643 (C.D.Cal.1996) ........................................................................... 18

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ........................................................................ 2, 13

*Hanon v. Dataprocess Corp.*,
  976 F.2d 497 (9th Cir. 1992) ............................................................................. 18

*In re Bank of America Credit Prot. Mktg. and Sales Practices Litig.*,
  MDL 2269 (J.P.M.L. Aug. 16, 2011) ..................................................................... 2

*In re Checking Account Overdraft Litig.*,
  2:10-00731, 2012 WL 1134483 (S.D. Fla. Apr. 3, 2012) ...................................... 20

*In re Critical Path, Inc.*,
  No. 01-cv-551, 2002 WL 32627559 (N.D. Cal. June 18, 2002) ............................. 15

**TABLE OF AUTHORITIES**
(continued)

Page

*In re First Alliance Mortg. Co.*,
471 F.3d 977 (9th Cir. 2006)............................................................. 18

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000)............................................................. 15

*In re Tableware Antitrust Litig.*,
484 F. Supp. 2d 1078 (N.D. Cal. 2007) ......................................... 2, 12

*In re TD Ameritrade Account Holder Litig.*,
Nos. 07-cv-2852, 07-cv-4903, 2011 WL 4079226 (N.D. Cal. Sept. 13, 2011) ........ 15

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234 (9th Cir. 1998)............................................................. 15

*Ortiz v. Fibreboard Corp.*,
527 U.S. 815 (1999)............................................................................ 17

*Pelletz v. Weyerhaeuser Co.*,
255 F.R.D. 537 (W.D. Wash. 2009) .................................................. 16

*Plascencia v. Lending 1st Mortg.*,
259 F.R.D. 437 (N.D. Cal. 2009)........................................................ 18

*Rodriguez v. West Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009)............................................................... 13

*Rose v. Bank of Am. Corp.*,
No. 2:10-CV-5067-VBF-JC, 2010 U.S. Dist. LEXIS 143516 (C.D. Cal. Nov. 5, 2010) ........ 14

*San Francisco NAACP v. San Francisco Unified Sch. Dist.*,
59 F. Supp. 2d 1021 (N.D. Cal. 1999) .............................................. 11

*Spark v. MBNA Corp,*
178 F.R.D. 431 (D. Del. 1998)............................................................ 18

*Spinelli v. Capital One Bank*,
265 F.R.D. 598 (M.D. Fla. 2009)................................................... 14, 20

*Thieriot v. Celtic Ins. Co.*,
No. 10-cv-4462, 2011 WL 1522385 (N.D. Cal. April 21, 2011)............. 17

*Thomas v. Bank of Am. Corp.*,
711 S.E.2d 371 (Ga. Ct. App. 2011) ................................................. 14

*Torrisi v. Tucson Elec. Power Co.*,
8 F.3d 1370 (9th Cir. 1993)................................................................. 11

*Wal–Mart Stores, Inc. v. Dukes*,
——U.S. ——,131 S.Ct. 2541, 180 L.Ed.2d 374 (2011) ....................... 17

**TABLE OF AUTHORITIES**
(continued)

Page

*Wren v. RGIS Inventory Specialists*,
  No. 06-cv-5778, 2011 WL 1230826 (N.D. Cal. April 1, 2011)................................................ 15

*Young v. Polo Retail, LLC*,
  No. 02-cv-4546, 2006 WL 3050861 (N.D. Cal. Oct. 25, 2006) ............................................. 12

**STATUTES**

15 U.S.C.
  §§ 1601 *et seq.* ...................................................................................................................... 3

28 U.S.C.
  § 1407 ...................................................................................................................................... 2

**RULES**

Fed. R. Civ. P.
  Rule 23 ............................................................................................................................ 17, 21
  Rule 23(a) ................................................................................................................................ 17
  Rule 23(a)(1) ........................................................................................................................... 17
  Rule 23(a)(2) ........................................................................................................................... 17
  Rule 23(a)(3) ........................................................................................................................... 18
  Rule 23(a)(4) ........................................................................................................................... 19
  Rule 23(b) ................................................................................................................................ 17
  Rule 23(b)(3) ..................................................................................................................... 20, 21
  Rule 23(c)(2)(B) ...................................................................................................................... 21
  Rule 23(e) ................................................................................................................................ 12
  Rule 23(e)(1) ........................................................................................................................... 21
  Rule 23(g) .......................................................................................................................... 19, 20
  Rule 23(g)(1)(c) ...................................................................................................................... 19
  Rule 30(b)(5) ............................................................................................................................. 5
  Rule 30(b)(6) ............................................................................................................................. 5
  Rule 42(a) ............................................................................................................................. 2, 12

**TREATISES**

4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg*")
  § 8.32 ...................................................................................................................................... 21
  § 11.41 (4th ed. 2002) ............................................................................................................. 11

7A Wright and Miller, Federal Practice and Procedure,
  § 1779 (2005) .......................................................................................................................... 20

Manual for Complex Litigation (Fourth)
  § 13.14 (2004) ......................................................................................................................... 12
  § 21.63 (2004) ......................................................................................................................... 11

1  **NOTICE OF MOTION AND MOTION**

2  **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

3      **PLEASE TAKE NOTICE** that on July 17, 2012, at 10:00 a.m., in the Courtroom of the

4  Honorable Thelton E. Henderson, United States District Judge for the Northern District of

5  California located at 450 Golden Gate Avenue, San Francisco, California, the Plaintiffs will and

6  hereby do move the Court, pursuant to Federal Rule of Civil Procedure 23(e), for entry of an

7  Order:

8      1.      Preliminarily approving the class action Settlement;

9      2.      Certifying for settlement purposes the proposed Class pursuant to

10  Rules 23(a), (b)(3), and (e) of the Federal Rules of Civil Procedure, appointing Plaintiffs Juan

11  Arevalo, Mitchell Sandow, Jason Chan, Blanche Melendez, Dominick Mattiello, Jr., as Executor

12  of the Estate of Dominick M. Mattiello, Rose Rowley, Wilfred Somers, Vivian Somers, Cheryl

13  Ross, Maryellen Richmond, Frederick Richmond, Maude Stewart, Marion Walton, and Angela

14  Zeleny as Class Representatives, and appointing as Class Counsel the firms Lieff Cabraser

15  Heimann & Bernstein, LLP; Glancy Binkow & Goldberg LLP; and Carey, Danis & Lowe

16      3.      Approving the form and procedure for notifying the Class of the Settlement

17  and their rights with respect to the Settlement;

18      4.      Directing distribution of Notice of the Settlement to the Class and

19  providing Class Members with the opportunity to opt-out of or object to the Settlement;

20      5.      Staying this action pending final approval of the Class Settlement; and

21      6.      Setting a schedule for the final Settlement approval process.

22      The basis for this motion is that the proposed Class Settlement is within the range of

23  reasonableness such that Notice to the Class of the terms and conditions of the Settlement, and the

24  scheduling of a formal fairness hearing, are appropriate.  This motion is based on this Notice of

25  Motion and Motion, the supporting Memorandum of Points and Authorities, the Settlement

26  Agreement and its Exhibits, any argument of counsel, and all papers and records on file in this

27  matter.

28

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    INTRODUCTION**

3         Plaintiffs respectfully move this Court for preliminary approval of the Settlement

4    Agreement reached with against Defendants Bank of America Corporation and FIA Card

5    Services, N.A. (collectively, "Defendants").[1]

6         Plaintiffs' Complaint alleges that Defendants impose, market, sell, and/or administer

7    products associated with their credit cards and certain lines of credit known as "Credit Protection

8    Plus" and other names (collectively "CPP") for which consumers pay monthly payments, but get

9    nothing meaningful in return.  During the class period, Defendants allegedly charged customers

10   for CPP without the customers' permission ("slamming"), enrolled customers in CPP through

11   deceptive marketing based on misrepresentations and material omissions, administered benefits

12   contrary to the expectations of the Class, and/or improperly denied benefits.  Plaintiffs allege

13   federal Truth-in-Lending Act and state law consumer protection, fraud, and contract-based

14   claims.  Following briefing and rulings on Defendants' motions to dismiss (before and after the

15   contested MDL petition coordinated proceedings in this Court), and formal and informal

16   discovery, the parties reached this proposed Settlement after two full-day mediation sessions with

17   the assistance of an experienced mediator, Jonathan Marks, and after many hours of hard-fought

18   negotiations.

19         The question at the preliminary approval stage is whether a settlement is within the range

20   of reasonableness such that notice to the class of the settlement's terms and conditions and the

21   scheduling of a final approval hearing are appropriate.  The proposed Settlement includes a

22   $20 million common fund; practice changes in Defendants' administration of CPP during their

23   wind-down of the product;[2] and multiple months of free service for CPP customers.  The

24   Settlement resolves all the claims in this case and marks a substantial recovery for the Class in

25   light of the risks of ongoing litigation.  The terms of the Settlement, negotiated at arm's-length,

26   _____

27   [1] All capitalized terms in this memorandum shall have the meaning as specified in the Settlement Agreement and its attachments, filed simultaneously herewith.

28   [2] Defendants are terminating their CPP program.

1   merit distribution of Notice to the Class and review at a fairness hearing.  *See, e.g.*, *In re*

2   *Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007); *see also Hanlon v.*

3   *Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *Class Plaintiffs v. City of Seattle*, 955 F.2d

4   1268, 1276 (9th Cir. 1992).

5   II.   **FACTUAL AND PROCEDURAL BACKGROUND**

6       A.   **The MDL Transfer And Subsequent Consolidation**

7       The following class actions were filed against the Defendants:  *Arevalo, et al. v. Bank of*

8   *America Corporation, et al.,* No. 3:10-cv-04959-TEH; *Ross, et al. v. Bank of America*

9   *Corporation, et al.,* No. 3:10-cv-05829-RBL; *Walton, et al. v. Bank of America Corporation, et*

10  *al.,* No. 2:11-cv-00277-PJG; *Patrick, et al. v. Bank of America Corp.,* No. 3:11-cv-03483-TEH;

11  *Wong, et al.  v. Bank of America Corp.*, *et al.*, No. 3:11-cv-00577-GPM-SCW; *Stuart, et al. v.*

12  *Bank of America, N.A.*, *et al.,* No. 8:11-cv-01678-EAK-MAP; *Melendez v. Bank of America, N.A.*,

13  *et al.*, No. 1:11-cv-05467-PKC, and *Mattiello, Jr. ex rel. Mattiello, Sr. v. Bank of America*

14  *Corporation, et al.,* No. 2:11-05957-FSH-PS.

15      On June 3, 2011, the Arevalo, Ross, and Walton Plaintiffs filed a Motion for Transfer and

16  Coordination and/or Consolidation of Actions to the Northern District of California Pursuant to

17  28 U.S.C. § 1407.  On August 16, 2011, the Judicial Panel on Multidistrict Litigation ("JPML")

18  issued a Transfer Order, finding that the related actions shared "common factual questions arising

19  from the marketing, enrollment, sale, operation and/or administration of Bank of America's credit

20  protection plan."  *In re Bank of America Credit Prot. Mktg. and Sales Practices Litig.*, MDL 2269

21  (J.P.M.L. Aug. 16, 2011) (Dkt. No. 32).

22      On August 18, 2011, the JPML issued a Conditional Transfer Order ("CTO") (Dkt.

23  No. 33) conditionally transferring the Wong, Stuart, and Melendez cases to this Court.  The Court

24  accepted transfer of the Ross, Walton, Stuart, Patrick, Melendez, Mattiello, and Wong cases for

25  consolidation and/or coordination with the Arevalo case.  The District Court consolidated the

26  Actions pursuant to Fed. R. Civ. P. 42(a) for all pretrial purposes.  Case No. 3:11-md-02269-

27  TEH.  (Dkt. Nos. 11, 30).

28

Plaintiffs filed a Consolidated Complaint on December 13, 2011 (Dkt. No. 33). Plaintiffs brought nationwide class claims to recover damages and/or refunds from Defendants for their violations of: (1) the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.*, (2) Delaware (and/or various states') consumer protection laws, (3) Delaware breach of contract, (4) Delaware breach of the covenant of good faith and fair dealing, (5) Delaware unjust enrichment, (6) the Delaware Fraud Act, for (7) injunctive relief and (8) a declaratory judgment.

**B.** **The Parties Engaged In Substantial Motion Practice And Negotiation On The Pleadings**

Prior to the consolidation of this case, on November 2, 2010, Plaintiffs Juan Arevalo and Mitchell Sandow filed the first of the consolidated Bank of America Credit Protection cases in the Northern District of California, alleging violations of California's consumer protection laws and consumer fraud. *Arevalo, et al. v. Bank of America Corp., et al.*, Case No. 3:10-cv-04959-TEH.

Bank of America brought a motion to dismiss on December 29, 2010. (Dkt. No. 9). Bank of America argued that it was not a proper party, that Plaintiffs' claims were preempted, and that Plaintiffs had failed to state a claim for various causes of action. The Court heard oral argument on March 7, 2011. On March 29, 2011, the Court granted in part and denied in part the motion, denying Defendants' motion to dismiss based on preemption and motion to dismiss all claims against Bank of America (among other rulings), but dismissing certain claims. *Arevalo v. Bank of Am. Corp.*, No. C10-4959 TEH, 2011 U.S. Dist. LEXIS 34151, *40-42 (N.D. Cal. Mar. 29, 2011).

The Arevalo Plaintiffs filed a Second Amended Complaint on April 29, 2011. (Dkt. No. 40). Defendants answered that Complaint on May 27, 2011. (Dkt. No. 44). While Bank of America filed motions to dismiss in the Ross, Walton, and Wong actions, and those motions were briefed prior to transfer, no transferor court ruled on the motion to dismiss prior to transfer.

On January 13, 2012, following the filing of the consolidated amended complaint that was filed in the wake of the MDL transfers, Defendants moved to dismiss in part Plaintiffs' unjust enrichment, breach of contract, and breach of covenant of good faith and fair dealing claims. (Dkt. No. 37). The parties briefed the motion extensively, including a second-round of

1  supplemental briefing ordered by the Court relating to choice of law.  (Dkt. Nos. 52, 54).  On

2  March 13, 2012, the Court held a hearing, focusing on particular questions the Court ordered the

3  parties to address in a prior order.  (Dkt. No. 57).

4          On April 3, 2012, the Court granted in part and denied in part Defendants' partial motion

5  to dismiss.  (Dkt. No. 58).  The Court dismissed without prejudice the Involuntary Enrollment

6  Plaintiffs' breach of contract claims and the unjust enrichment claim asserted by all Plaintiffs.  *Id.*

7  The Court upheld the breach of good faith and fair dealing claims.  *Id.*

8          At the same time Defendants filed their partial motion to dismiss, Defendants filed an

9  answer addressing all other claims.  (Dkt. No. 38).  Following several meet and confers and

10  pursuant to stipulation (Dkt. Nos. 47 & 48), Defendants filed an Amended Answer and

11  Affirmative Defenses on February 24, 2012 (Dkt. No. 51), which added additional factual

12  allegations to certain affirmative defenses.

13          Plaintiffs filed a First Consolidated and Amended Class Action Complaint ("Complaint")

14  on April 25, 2012, adding Plaintiff Jason Chan and additional allegations about Defendants'

15  choice-of-law provisions, and otherwise responding to the Court's April 3, 2012 Order.  (Dkt.

16  No. 62).  Defendants answered the operative complaint on May 23, 2012.  (Dkt. No. 63).

17      **C.**      **The Parties Were Engaged In Formal Discovery When They Commenced**
           **Mediation Efforts**
18

19          The Arevalo Plaintiffs had engaged in initial formal discovery at the time of the MDL

20  transfer.

21          On January 20, 2012, the MDL Plaintiffs served their First Set of Requests for Production

22  of Documents.  *See* Dkt. No. 56.  On February 27, 2012, Defendants served responses and

23  objections, and subsequently produced two productions totaling 3,091 pages containing

24  documents related to the named plaintiffs, relevant policies and procedures, disclosures, and

25  training documents.  *Id.*  Following Defendants' responses, the parties engaged in a series of meet

26  and confers about Defendants' responses relating to, among other topics, Electronically-Stored

27  Information ("ESI"), and areas of disputed discovery relating to internal complaints and

28  documents subject to alleged privileges.  The parties presented some of these contested issues,

- 4 -

1   including issues relating to ESI to the Court in the context of addressing case status issues.  *See,*

2   *e.g.*, Dkt. No. 59.

3         On February 1, 2012, Plaintiffs served a Notice of Deposition pursuant to Federal Rules of

4   Civil Procedure 30(b)(5) and 30(b)(6), seeking testimony regarding topics related to Defendants'

5   documents and electronically stored information ("ESI").  *See* Dkt. No. 56.

6         On March 1, 2012, Defendants served separate requests for production and interrogatories

7   on each of the MDL Plaintiffs.  *See* Dkt. No. 56.

8         On April 17, 2012, the parties informed the Court in a case management conference

9   statement that they had agreed to conduct mediation.  Dkt. No. 59.

10        **D.**    **The Parties Entered Into Settlement Negotiations And Reached An**

11           **Agreement**

12        The parties agreed to attempt to resolve their litigation through mediation.  In advance of

13  the mediation, Defendants provided Plaintiffs' Counsel with extensive and detailed non-public

14  data regarding Credit Protection enrollments and new enrollments, benefit approval/denial history

15  and revenues as well as enrollment channel information, tenure in the products, average waiting

16  times, and other product information.  Declaration of Rachel Geman in Support of Motion for

17  Preliminary Approval ("Geman Decl."), ¶ 18.  To adequately prepare for mediation, Plaintiffs

18  interviewed Defendants' designee to ensure they understood the data's meaning and scope prior

19  to the first mediation. Geman Decl., ¶ 19.  This exchange, coupled with the extensive

20  investigation and research already conducted by Plaintiffs' Counsel, as well as their experience

21  from litigating other payment protection cases against other banks, allowed Plaintiffs' Counsel to

22  fully assess the strengths and weaknesses of both Plaintiffs' claims and the potential defenses

23  available to Defendants prior to the mediation.  Geman Decl., ¶ 20.

24        On May 2, 2012 and May 24, 2012, following the submission of mediation statements, the

25  parties engaged in full day mediation sessions facilitated by a reputable and skilled mediator,

26  Jonathan B. Marks.  Geman Decl., ¶ 21.  Against this background, and with the aid of mediator

27  Marks, the parties were able to effectively engage in informed, arm's length negotiations.  Geman

28  Decl., ¶ 22.  The negotiations were hard-fought and adversarial.  The negotiations involved

1  experienced counsel on both sides who vigorously represented their respective parties' position.

2  Geman Decl., ¶ 22.  At the end of the mediation session on May 24, 2012, the parties reached an

3  agreement in principle to settle the case and began work on a proposed settlement term sheet

4  ("Settlement Term Sheet").  Geman Decl., ¶ 23.  Subsequently, the parties exchanged drafts of

5  the Settlement Term Sheet and later met in New York City on June 15, 2012 where the parties

6  continued to negotiate the Settlement Term Sheet and further discussed practice changes to be

7  adopted by the Defendants.  Geman Decl., ¶ 24.  On June 25, 2012, the parties executed a

8  Memorandum of Understanding outlining the terms of the Settlement Term Sheet.  Geman Decl.,

9  ¶ 25.  The Court was informed of the parties' resolution of the case by way of Stipulation on

10  July 5, 2012.  Dkt. No. 70.

11      To confirm the reasonableness of the settlement, Plaintiffs' engaged in confirmatory

12  discovery involving the review of data and interviews with three executives of Bank of America

13  who were personally involved with the Credit Protection products at issue in this class action

14  litigation.  Geman Decl., ¶ 26.  First, as discussed above, Plaintiffs conducted a pre-mediation

15  interview with Jody Morris, Senior Vice President of Technology Operations for Credit

16  Protection at Bank of America, about the settlement class data to ensure that Plaintiffs could

17  conduct an informed mediation.  Geman Decl., ¶ 27.  Second, Plaintiffs held a full-day, in-person

18  interview of three of Defendants' representatives:  (1) Sanjeev Arjungi, Senior Vice President and

19  Customer Analytics Executive at Bank of America, (2) Mr. Morris, and (3) Jim Baker, Privacy

20  Products Protection Executive for Bank of America, with responsibility for managing the

21  Outbound Telemarketing Channel.  Geman Decl., ¶ 28.  Third, Plaintiffs held a follow-up

22  telephonic interview with Mr. Arjungi on July 6, 2012, that addressed the specific value of the

23  practice changes to the administration of CPP negotiated as part of the settlement.  Geman Decl.,

24  ¶ 29.

25  **III.    TERMS OF THE SETTLEMENT**

26      The Settlement's details are contained in the Agreement signed by the parties, a copy of

27  which is attached as Exhibit 1 to this memorandum.  For purposes of preliminary approval, the

28  following summarizes the Agreement's terms.

1

### 1. The Settlement Class

2     The "Settlement Class" includes:

> [A]ll people in the United States who were enrolled in CPP between January 1, 2006, and the date the Court preliminarily approves the Settlement Agreement. Excluded from the Settlement Class are: (1) employees of Defendants and/or any entities in which Defendants have a controlling interest; (2) the Judge to whom this case is assigned and any member of the Judge's immediate family and any other judicial officer assigned to this case; (3) any attorneys representing the Settlement Class Representatives or the Settlement Class; and (4) all governmental entities. For clarification purposes only, the Settlement Class includes customers who originally enrolled in a Credit Protection program prior to January 1, 2006, but remained enrolled at any time on or after January 1, 2006.

Agreement § II.A.24.

### 2. Monetary Relief for the Class Members

The Settlement requires Defendants to create the $20 million Fund, out of which eligible Class Members who file a qualified claim will receive a Monetary Award. Agreement § IV.A.

Class Members will be eligible for monetary benefits depending upon the information they provide. First, Class Members who assert that they were enrolled in CPP without their consent or received a CPP product that was not as it was advertised may submit a claim for an estimated $50.00 Monetary Award. Agreement § IV.B.2. Second, Class Members who assert that they were improperly denied CPP benefits or that they were denied benefits contrary to their expectations are eligible for an estimated $100 Monetary Award. Agreement § IV.B.3. The amount of each Class Member's Monetary Award will be based on a *pro rata* distribution, depending on the number of valid and timely claims. Agreement § IV.B.4. Thus, the Monetary Awards actually received may be greater or less than the $50 and $100 estimates depending upon balance remaining in the Settlement Fund after deduction of claim notice and settlement administration costs and taxes, and any attorneys' fees and costs, and/or service award awarded by the Court.

In order to exercise the right to obtain the relief outlined above, Class Members need only complete a simple, one-page claim form and provide it to the Claims Administrator. Agreement § IV.B.1. & Exh. A. Class Members must submit a simple claim form, including their name, address, date of birth, claim identification number or last four digits of their social security

number, which Monetary Award they elect, and signature.  Agreement, Exh. A.  Unless the Court

orders otherwise, Class Members must submit their claim forms to the Settlement Administrator

by no later than February 26, 2013.  Agreement § IV.B.7.

### 3.   Practice Changes and Other Benefits

Pursuant to the Agreement and for the benefit of Class Members, Defendants must also

institute prospective practice changes in product administration and to provide additional benefits.

Agreement § IV.C.  Specifically, Defendants have also agreed to remove certain of the alleged

impediments to CPP benefits claims raised by Plaintiffs throughout this litigation.  During the

period Defendants are continuing to provide CPP (as stated above, they are terminating their

Credit Protection program), Defendants will waive or eliminate:  (1) any waiting period for

involuntary unemployment and disability benefit requests; (2) the employer verification

requirements for involuntary unemployment and disability benefit requests; (3) the requirement to

register with a job service for involuntary unemployment benefit requests; and (4) will allow

independent contractors to claim involuntary unemployment benefits upon furnishing evidence of

the termination of the business relationship with the company or entity that formed the basis of

their employment.  Agreement § IV.C.2.(b)-(e).

For Class Members currently enrolled CPP, the Settlement provides that Defendants will

provide two additional months of CPP at no cost.  Agreement § IV.C.2.(a).

Lastly, Defendants will enhance settlement communications to remind customers about

benefits and reporting period requirements for unemployment and disability benefits.  Agreement

§ IV.C.2.(f).

While Defendants have chosen to wind down and terminate CPP for independent business

reasons, these changes will remain in effect while customers remain eligible for benefit payments.

### 4.   *Cy Pres* Relief for the Class Members

If any amounts remain in the Settlement Fund following deductions of claim notice and

settlement administration costs and taxes; and any attorneys' fees and costs, and/or service award

awarded by the Court; and of *pro rata* distribution to all eligible Class Members with timely and

valid claims (*e.g.*, unclaimed Settlement checks or unanticipated tax refunds), the remaining

1   amounts shall be distributed to a *cy pres* recipient, the Center for Responsible Lending.

2   Agreement § IV.B.5.

3                    **5.      Class Release**

4           In exchange for the benefits allowed under the Settlement, Class Members who do not opt

5   out will provide a release tailored to the practices at issue in this case.  Specifically, they will

6   release any claim, right, demand, charge, complaint, action, cause of action, obligation, or

7   liability as of the date of Final Approval, that arises out of, relates to, or is in connection with:

8   "(i) any Settlement Class Member's enrollment in, (ii) Defendants' marketing and administration

9   of, and (iii) Defendants' termination of, CPP" or (iv) "the administration of the Settlement."

10  Agreement § V.A.1.

11                   **6.      Class Representative Service Awards**

12          The Agreement provides $3,000 service awards for Settlement Class Representatives in

13  recognition of their service to and efforts on behalf of the Class.  Agreement § IV.D.1.  These

14  service awards are in addition to the relief the Settlement Class Representatives will be entitled to

15  under the terms of the Settlement.  These awards will compensate the Representatives for their

16  time and effort and for the risk they undertook in prosecuting the cases against Defendants.  All

17  Representatives were kept informed of the litigation as it developed, all approved the proposed

18  Settlement.  Further, they committed to participating in the litigation in whatever capacity they

19  are needed should settlement not be reached.

20                   **7.      Attorneys' Fees and Costs**

21          The Settlement provides that Defendants will not contest Class Counsel's application to

22  this Court for payment of attorneys' fees and expenses so long as they seek no more than

23  $6,600,000, which is 33 percent (33%) of the Fund.  Agreement § IV.D.1.  As will be further

24  addressed at final approval, Class Counsel's application will comport with the Ninth Circuit's

25  standards for compensating plaintiffs' counsel in common fund class action settlements for the

26  work they have performed in procuring a settlement for the Class, as well as the work remaining

27  to be performed in documenting the settlement, securing Court approval of the settlement,

28  overseeing settlement implementation and administration, assisting class members, and obtaining

1  dismissal of the action.  The enforceability of the Settlement is not contingent on the amount of

2  attorneys' fees and costs awarded, subject to a cap of $6,600,000.  Agreement § IV.D.4.

3          **8.**     **Administration and Notice**

4  As set forth in the Agreement, the costs of notice and claims administration will be paid

5  from the Fund, except for notice to current customers.

6          **a.**     **Notice Duties and Process**

7  Subject to Court approval, the parties have agreed that Gilardi & Co, LLC ("Gilardi") will

8  administer the notice process to former customers by providing direct, short-form notice by U.S.

9  mail to all such Class Members starting October 3, 2012, and ending on or before October 29,

10  2012.  Agreement §§ III.C.1.  Defendants will administer the notice process to current customers

11  by providing direct, short-form notice by email or U.S. mail to all such Class Members in the

12  billing cycle starting October 3, 2012, and will complete such notice on or before October 29,

13  2012.  Agreement § III.C.2.  Gilardi will also publish notice of the Settlement in the national

14  edition of USA Today on or before October 29, 2012.  Agreement § III.C.3.  Prior to the Final

15  Approval hearing, the parties will submit file sworn statements confirming that Gilardi and

16  Defendants have disseminated Class Notice.  Agreement § III.C.5.

17  For the benefit of all Class Members, Gilardi will establish a website at

18  www.creditprotectionsettlement.com.  The settlement website shall provide generalized

19  information, including the Agreement, the Claim Form, all forms of Class Notice (Long-Form

20  Notice, Short-Form Notice, Statement Notice, and Publication Notice), and the Preliminary

21  Approval Order.  Agreement § III.C.4.  The website shall also provide for online submission of

22  claims.  Agreement § III.C.4.  The website shall be maintained by Gilardi from no later than the

23  date that Class Notice is first provided until the Settlement Fund has been exhausted.

24          **b.**     **Notice Timeline**

25  Plaintiffs propose that the Court enter a Preliminary Approval Order containing deadlines

26  for the relevant dates up to and including Final Approval.  Accordingly, if the Court does not set a

27  different date, the Agreement calls for the following deadlines:

28

Notice shall be disseminated to all Class Members starting October 3, 2012, and ending on or before October 29, 2012. Agreement §§ III.C.1 & III.C.2 . Class Members will have until February 26, 2013 to submit their claim forms. Agreement § IV.B.7. Any Class Member who submits an incomplete, inaccurate, and/or incorrect claim form shall be permitted within a reasonable time to cure any defects. Agreement § IV.B.6. The Settlement Administrator will calculate the proportionate recoveries of qualified claimants and issue checks to those individuals by no later than thirty (30) days after Final Approval or May 27, 2013, whichever comes later. Agreement § IV.B.4.

Class Members (who will have received notice between October 3 and 29) will have until December 13, 2012 to submit a written request to be excluded from or opt out of the Class. Agreement § III.C.6.b. *See Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993).

Plaintiffs respectfully submit that these deadlines will allow the Court to hold a final approval hearing in late December 2012.

## IV. PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED

### A. Class Action Settlement Procedure

As a matter of "express public policy," federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *City of Seattle*, 955 F.2d at 1276 (noting the "strong judicial policy that favors class action settlements"); *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004) (same); *San Francisco NAACP v. San Francisco Unified Sch. Dist.*, 59 F. Supp. 2d 1021, 1029 (N.D. Cal. 1999) (same); 4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg*") § 11.41 (4th ed. 2002) (citing cases). The proposed Settlement in this case is the best vehicle for Class Members to receive the relief to which they are entitled in a prompt and efficient manner.

The Manual for Complex Litigation, Fourth, § 21.63 (2004) ("*Manual for Compl. Lit.*") describes a three-step procedure for approval of class action settlements that has been adopted by courts within the Ninth Circuit:

(1)     Preliminary approval of the proposed settlement at an informal hearing;

(2)     Dissemination of mailed and/or published notice of the settlement to all affected class members; and

(3)     A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

This procedure safeguards class members' due process rights and enables the court to fulfill its role as the guardian of class interests. *Newberg* § 11.25.

Plaintiffs request that the Court take the first step in the settlement approval process by granting preliminary approval of the proposed Settlement.  The purpose of preliminary evaluation of proposed class action settlements is to determine whether the settlement is within the "range of reasonableness," and thus whether it is worthwhile to schedule notice to the class of the settlement's terms and a formal fairness hearing at which the court may assess the settlement pursuant to Rule 23(e) of the Federal Rules of Civil Procedure. *Id.*

"[I]f the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing." *In re Tableware*, 484 F. Supp. 2d at 1079 (N.D. Cal. 2007) (internal quotations and citations omitted).[3]  Neither formal notice nor a hearing is required at the preliminary approval stage; the Court may grant such relief upon an informal application by the settling parties, and may conduct any necessary hearing in court or in chambers, at the Court's discretion. *See Manual for Compl. Lit*. § 13.14.  At the final approval hearing, Class Members may be heard regarding the Settlement and the parties may present further evidence and argument concerning the fairness, adequacy, and reasonableness of the Settlement. *See id.* §§ 13.14, 21.632.

---

[3] *See also Young v. Polo Retail, LLC*, No. 02-cv-4546, 2006 WL 3050861, at *5 (N.D. Cal. Oct. 25, 2006) (same); *Chun–Hoon v. McKee Foods Corp*., No. C 05-0620 VRW, 2009 U.S. Dist LEXIS 100553, at *4 (N.D. Cal. Oct. 15, 2009) (discussing limited preliminary approval review).

**B.      The Settlement Satisfies The Criteria For Preliminary Approval**

A proposed settlement may be approved by the trial court if it is determined to be "fundamentally fair, adequate, and reasonable." *City of Seattle*, 955 F.2d at 1276 (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009). The issue is not whether the settlement could be "better," but whether it is "fair, adequate, and free from collusion." *Hanlon*, 150 F.3d at 1027. In evaluating the fairness of a settlement at the final approval stage, the district court may consider factors that include the following:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement.

*Churchill Vill.*, 361 F.3d at 575 (citing *Hanlon*, 150 F.3d at 1026). Courts also frequently consider the procedure by which the parties arrived at the settlement when assessing the settlement's fairness. *See, e.g.*, *Chun–Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (concluding that "arms-length negotiations, including a day-long mediation . . . indicate that the settlement was reached in a procedurally sound manner"). Plaintiffs will address each of the factors required for final settlement approval in detail in their Motion for Final Approval of the Settlement, to be filed at the close of the Notice period.

While thorough consideration of the requirements for final approval is unnecessary at this stage, an initial preview of the relevant factors indicates that the Settlement proposed here is within the range of reasonableness such that preliminary approval of the Settlement is appropriate.

**1.      The Strength of Plaintiffs' Claims Balanced Against the Risk, Expense, Complexity, and Likely Duration of Further Litigation Favors Approval of the Settlement**

Class Counsel have conducted an extensive investigation relating to the claims and the underlying events and transactions alleged in the Complaint. As described above in Section II, Class Counsel have analyzed evidence adduced during their investigation and in thorough

discovery, have briefed and obtained Court rulings in response to Defendants' motions to dismiss, and have researched the applicable law with respect to the claims and potential defenses in the case. Entering into mediation, Plaintiffs and Class Counsel were confident in the strength of their case, but also pragmatic in their awareness of the risks inherent to litigation.  For example, Plaintiffs have already faced the dismissal of certain of their claims.

At class certification, Plaintiffs would have additional hurdles.  As in most complex, muliti-district litigation, Defendants would likely argue that the potential application of multiple states' laws would preclude certification, and Defendants have also raised what they consider to be meaningful factual arguments against certification. Finally, it is by no means certain that Plaintiffs could expect a verdict in the favor on the claims remaining following the Court's orders on Defendants' motions to dismiss.  Plaintiffs would have faced Defendants' arguments that numerous courts have dismissed similar state law challenges based on the principles of express, field, and conflict preemption. *See, e.g.*, *Spinelli v. Capital One Bank*, 265 F.R.D. 598, 605 (M.D. Fla. Sept. 18, 2009); *Thomas v. Bank of Am. Corp.*, 711 S.E.2d 371 (Ga. Ct. App. 2011); *Rose v. Bank of Am. Corp.*, No. 2:10-CV-5067-VBF-JC, 2010 U.S. Dist. LEXIS 143516 (C.D. Cal. Nov. 5, 2010); *Decohen v. Abbassi, LLC*, Civil No. WDQ-10-3157, 2011 WL 3438625 (D. Md. July 26, 2011); *Denton v. Dep't Stores Nat'l Bank*, Case No. C10-5830 RBL, 2011 U.S. Dist. LEXIS 84024 (W.D. Wash. Aug. 1, 2011).

While this Court denied Defendants' preemption motion in the *Arevalo* case based solely on the pleadings, Defendants have argued that the Court's holding was limited to involuntary enrollment claims and that the Court would rule differently on a substantive motion based on the evidence – a position creating, at minimum, an element of risk.  *Arevalo*, 2011 U.S. Dist. LEXIS 34151, at *7-17.

And, Plaintiffs must undergo at great expense an effort to collect and process the ESI data necessary for class certification and the merits, and to generate expert reports regarding damages. Even if Plaintiffs did prevail through hard-fought motion practice and at trial, recovery could be delayed for years by an appeal.  The Settlement provides substantial relief to Class Members without further delay.

2.     **The Settlement Provides Substantial Relief for Class Members**

The Settlement's $20 million Fund and required practice changes provide substantial relief to the Class.  All Class Members who submit valid claims will be eligible for recovery.  This distribution is fair, adequate, and reasonable.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (noting that settlement amounting to only a fraction of potential recovery may still be fair); *Wren v. RGIS Inventory Specialists*, No. 06-cv-5778, 2011 WL 1230826, at * 8 (N.D. Cal. Apr. 1, 2011).

3.     **The Stage of Proceedings and Discovery Thus Far has Enabled Sufficient Evaluation of the Merits of the Claims**

In this case, Class Counsel is able to evaluate the strengths and weaknesses of Plaintiffs' claims, particularly given the motion practice, formal discovery, and data analysis that have occurred.  *Cf.  In re TD Ameritrade Account Holder Litig.*, Nos. 07-cv-2852, 07-cv-4903, 2011 WL 4079226, at *6 (N.D. Cal. Sept. 13, 2011) (approving settlement after the filing of a motion to dismiss and prior to significant discovery).  Courts regularly approve settlements reached relatively early in litigation.  *See, e.g., In re Mego*, 213 F.3d at 459 (finding that even absent extensive formal discovery, class counsel's significant investigation and research supported settlement approval); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)); *In re Critical Path, Inc. Sec. Litig.*, No. C 01-00551 WHA, No. C 01-03756 WHA, 2002 U.S. Dist. LEXIS 26399, at *20 (N.D. Cal. June 18, 2002) ("Through protracted litigation, the settlement class could conceivably extract more, but at a plausible risk of getting nothing."); *see also Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 U.S. Dist. LEXIS 8476, at *48 (N.D. Cal. Jan. 26, 2007) ("Class counsel achieved an excellent result for the class members by settling the instant action promptly."), *aff'd*, 331 F.App'x. 452, 457 (9th Cir. 2009).  Here, the record has been developed through formal and informal discovery and motion practice such that is more than sufficient for the parties to evaluate that merits of the claims.

1

**4.      Counsel are Experienced in Litigation of Class Cases and of Cases Involving Credit Card Protection Products**

2

3      Counsel for the parties are experienced in the litigation, certification, trial, and settlement

4   of nationwide and other consumer class action cases.  Geman Decl. ¶ 36.  For example, Lieff

5   Cabraser, one of Proposed Class Counsel, recently tried in this Court a consumer overdraft case

6   against a bank, resulting in a $203 million jury verdict.  Geman Decl. ¶ 37.  Class Counsel are

7   particularly well-positioned to evaluate the strengths and weaknesses of Plaintiffs' case, as well

8   as the appropriate basis upon which to settle it, given that they and other Plaintiffs' Counsel have

9   successfully litigated and resolved other cases involving banks' debt suspension and debt

10   cancellation products.  *See Spinelli, et al., v. Capital One Bank (USA) N.A., et al.,* No. 8:08-cv-

11   00132-VCM-EAJ, M.D. Fla., Dkt. # 147 and 231 (class certification followed by a settlement);

12   *Kardonick, et al., v. JP Morgan Chase & Co, et al.,* No. 1:10-cv-23235-WMH, S.D. Fla. (Miami),

13   Dkt. # 23, 24, 384 (final approval granted); *Walker, et al., v. Discover Financial Services, Inc., et*

14   *al.,* No. 1:10-cv-06994, N.D. Ill., Dkt. # 177 (final approval granted); *Esslinger v. HSBC Bank*

15   *Inc., et al*., No. 10-cv-3213 BMS, E.D. Pa., Dkt. # 67 (preliminary approval granted); Geman

16   Decl. ¶ 37.

17

**5.      The Settlement is the Product of Serious, Informed, and Arm's-Length Negotiations**

18

19      The Court's role is to ensure that "the agreement is not the product of fraud or

20   overreaching by, or collusion between, the negotiating parties."  *Hanlon*, 150 F.3d at 1027

21   (internal quotations and citations omitted); *see also Pelletz v. Weyerhaeuser Co*., 255 F.R.D. 537,

22   542 (W.D. Wash. 2009) (approving settlement "reached after good faith, arms-length

23   negotiations").

24      As detailed above, the proposed Settlement is the result of two full days of arm's-length

25   mediation and negotiations with experience mediator Jonathan B. Marks, preceded and followed

26   by extensive information exchange, and negotiations between experienced attorneys on both sides

27   who are familiar with class action litigation and with the legal and factual issues of this case.

28   **V.      CERTIFICATION OF THE CLASS IS APPROPRIATE**

A court may certify a settlement class if a plaintiff demonstrates that all of the prerequisites of Federal Rule of Civil Procedure 23(a) have been met, and that at least one of the requirements of Rule 23(b) have been met. *See* Fed. R. Civ. P. 23; *Hanlon*, 150 F.3d 1011; *see also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 848-49 (1999). "In assessing Rule 23 requirements in the settlement context, a court need not inquire whether the case, if tried, would present intractable management problems[,] for the proposal is that there be no trial." *Browning v. Yahoo! Inc.*, Case No. C 04-01463 HRL, 2007 U.S. Dist. LEXIS 86266, at *25-26 (N.D. Cal. Nov. 16, 2007) (internal quotations and alterations omitted); *see also, e.g.*, *Thieriot v. Celtic Ins. Co.*, No. C 10-04462 LB, 2011 U.S. Dist. LEXIS 44852 (N.D. Cal. Apr. 21, 2011) (certifying settlement class). Plaintiffs respectfully request that the Court certify the Class, as stipulated by the parties, for settlement purposes. Settlement Agreement ¶ VII.A.

### A.   Numerosity

The numerosity requirement of Rule 23(a)(1) is satisfied because the Class consists of millions of Class Members dispersed over a broad geographical area, and joinder of all such persons is impracticable. *See* Fed. R. Civ. P. 23(a)(1).

### B.   Commonality

Under Rule 23(a)(2), the requirement of commonality is satisfied if "there are questions of law or fact common to the class." A class may be certified based on a single common issue capable of a common answer. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011) (recognizing that commonality only requires a single significant question of law or fact). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019.

In this case, questions of law or fact common to the Settlement Class include, among others, whether Defendants imposed Credit Protection on consumers without their consent based on their common telemarketing and other practices, whether Defendants' marketing of the product (based on common written materials) was fraudulent, and whether Defendants' administration of the Credit Protection benefits was illegal or unfair. Complaint ¶ 137.

1    In sum, Plaintiffs allege that each member of the Settlement Class was subjected to the

2    same course of conduct by Defendants, involving similar marketing materials, sales agreements,

3    and billing statements, and, therefore, their claims arise from identical acts of Defendants.  Courts

4    have recognized commonality in similar circumstances.  *See, e.g.*, *In re First Alliance Mortg. Co.*,

5    471 F.3d 977, 990 (9th Cir. 2006) (finding commonality satisfied and certifying class where

6    defendants engaged in a "centrally-orchestrated scheme to mislead borrowers through a

7    standardized protocol [that] sales agents were carefully trained to perform, which resulted in a

8    large class of borrowers entering into loan agreements they would not have entered had they

9    known the true terms"); *Plascencia v. Lending 1st Mortg.,* 259 F.R.D. 437, 443 (N.D. Cal. 2009)

10   (finding commonality satisfied based on fact  that "all class members purchased an OARM from

11   Lending 1st, and their claims are based on a common theory of liability"); *Spark v. MBNA Corp,*

12   178 F.R.D. 431, 435 (D. Del. 1998) (commonality requirement was satisfied in an action against a

13   credit card company for unfair and deceptive practices where "[e]ach of the proposed plaintiffs'

14   claims stem[med] from the same general representative by [defendant], and the issues for each of

15   these plaintiffs [would] be identical").  Accordingly, the commonality requirement has been met.

### C.    Typicality

16

17         The typicality requirement requires the claims of representative plaintiffs to be "typical of

18   the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  Typicality does not require the

19   claims to be identical.  *Hanlon*, 150 F.3d at 1020.  Courts assess typicality by looking to

20   "'whether other members have the same or similar injury, whether the action is based on conduct

21   which is not unique to the named plaintiffs, and whether other class members have been injured

22   by the same course of conduct.'"  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.

23   1992) (citation omitted).  In other words, "the test is that the class representative 'must be part of

24   the class and possess the same interest and suffer the same injury as the class members.'"  *Haley*

25   *v. Medtronic, Inc.*, 169 F.R.D. 643, 649 (C.D. Cal.1996) (citation omitted).  Plaintiffs' claims are

26   typical because they are sufficiently parallel with those of absent Class Members and are based on

27   Defendants' alleged uniform misconduct that had a similar impact upon all Class Members.

### D.    Adequacy

28

Plaintiffs must also show that "the representative parties will fairly and adequately protect the interests of the class."  Rules 23(a)(4), 23(g).  To do so, Plaintiffs must show that (1) neither they nor their counsel have conflicts of interest with other class members, and (2) they will "prosecute the action vigorously on behalf of the class[.]"  *Hanlon*, 150 F.3d at 1020.  Plaintiffs satisfy both prongs of the adequacy requirement.

First, Plaintiffs' interests are coextensive with, not antagonistic to, the interests of the Class.  Plaintiffs and each Class Member have an identical interest in establishing Defendants' liability. There is no conflict between Plaintiffs' claims and those of the proposed Settlement Class.  Each Plaintiff has assumed the responsibility of representing the Settlement Class and has stood ready to represent the class at trial if necessary. Plaintiffs are prepared to continue diligently pursuing this action in cooperation with counsel. Plaintiffs have taken seriously their obligations to the Settlement Class.

Second, there also can be no dispute that Class Counsel is capable of prosecuting this Litigation.  *See* Firm Resumes of proposed Class Counsel at Exhibits A-C of the Geman Declaration; *see also* Geman Decl. Exs. D-I (firm resumes of other members of Plaintiffs' Executive Committee).  As reflected in the respective firm resumes, and discussed above, each firm is well-established, possesses extensive knowledge of and experience in prosecuting class actions in courts throughout the United States, and has recovered hundreds of millions of dollars for their clients.

Beyond the adequacy test of Rule 23(a)(4), the Court must consider the counsel's work performed, experience, knowledge and resources before appointing Class Counsel. Fed. R. Civ. Pro. 23(g)(1)(c).  Class Counsel satisfy these factors: it has performed substantial work, including reviewing thousands of pages of documents, interviewing witnesses, successfully briefing and arguing motions, and researching applicable law to be able to fully assess the strengths of Plaintiffs' claims and possible defenses available to Defendants.  Class Counsel also have served as lead counsel or co-lead counsel in numerous class actions involving complex litigation, as reflected in the respective firm resumes.  *See* Geman Decl. Exs A-C.  In fact, as discussed above, Class Counsel and other plaintiffs' counsel have negotiated settlements with other credit card

1  companies regarding similar plans, including class actions against Capital One, Chase, Discover

2  and HSBC.  Geman Decl. ¶ 37.  Finally, Class Counsel have already committed substantial

3  resources to litigate this case. Accordingly, for the purposes of Rule 23(g), the Court should

4  appoint as Co-Lead Class Counsel for the purposes of this Settlement Class: Lieff Cabraser

5  Heimann & Bernstein, LLP; Glancy Binkow & Goldberg LLP and Carey, Danis and Lowe.

6          **E.   Predominance And Superiority**

7       Under Rule 23(b)(3), common questions of law or fact must predominate over any

8  individual claims and the class action must be superior to other available methods of adjudication.

9  A "common nucleus of facts and potential legal remedies" satisfies the predominance

10  requirement.  *Hanlon*, 150 F.3d at 1022.

11       Here, the common liability questions constitute the central aspects of the case and can be

12  resolved for all Class members in a single adjudication.  The issue of Defendants' liability is

13  centered on its Credit Protection products, which were uniformly marketed, sold and administered

14  to customers.  *Spinelli*, 265 F.R.D. at 604 ("The Court agrees that the issue of whether the

15  Payment Protection program was worthless predominates over individual inquires."); *In re*

16  *Checking Account Overdraft Litig.*, 2:10-00731, 2012 WL 1134483, *7-*8 (S.D. Fla. Apr. 3,

17  2012) (when a common course of unfair conduct is alleged in consumer protection action,

18  predominance is readily met "irrespective of the individual issues that may arise").

19       Furthermore, a class action is the superior vehicle here because of the large size of the

20  class located throughout the country and the small amount of damages each Class Member

21  suffered.   Thus, as practicable matter, it would not be economically feasible for most putative

22  Class Members to retain a private attorney to pursue individual litigation against Defendants for

23  their individual compensatory recoveries.  *See Amchem Prods. v. Windsor*, 521 U.S. 591, 616

24  (1997) ("The interests of individuals in conducting separate lawsuits . . . may be theoretic rather

25  than practical [where] . . . the amounts at state for individuals [are] so small that separate suits

26  would be impractical." (citation and quotation omitted)); 7AA Wright, Miller, & Kane, Federal

27  Practice and Procedure: Civil § 1779, 161 (2005) ("[A] group composed of consumers . . .

28  typically will be unable to pursue their claims on an individual basis because the cost of doing so

1   exceeds any recovery they might secure.").  Most putative Class Members have no overriding

2   interest in conducting separate lawsuits against Defendants.  Moreover, resolution of hundreds of

3   claims in one action is far superior to individual lawsuits and promotes consistency and efficiency

4   of adjudication.

5   **VI.**   **PROPOSED PLAN OF NOTICE**

6           Before approving a class settlement, "[t]he court must direct notice in a reasonable

7   manner to all class members who would be bound" by the proposed settlement.  Fed. R. Civ.

8   P. 23(e)(1).  When a Rule 23(b)(3) class is certified, notice must be the best "that is practicable

9   under the circumstances," including through individual notice to all class members who can be

10   identified, clearly explaining, *inter alia*, the nature of the action, the definition of the class, the

11   implications of a class judgment and how class members may exclude themselves if they wish to

12   do so.  Fed. R. Civ. P. 23(c)(2)(B); *see also Newberg* § 8.32.

13          Direct mailed Notice to Class Members is the best practicable form of notice here because

14   Class Members' addresses are known and/or can be reliably ascertained based on Defendants'

15   records.  The content of the proposed Class Notice, attached to the Settlement as Exhibit B, fully

16   complies with due process and Rule 23.  It describes the nature of the action and the Settlement

17   terms; defines the Class; provides the date, time, and place of the Final Approval Hearing; advises

18   Class Members regarding the Release that will bind them in the event they do not exclude

19   themselves from the Settlement; describes how Class Members may exclude themselves from or

20   object to the Settlement; and informs the Class of the existence and timing of Class Counsel's

21   application for attorneys' fees and costs, the claims process, and service awards, and of how they

22   may access and object to that application.

23   **VII.**   **FINAL APPROVAL HEARING**

24          Plaintiffs propose the following schedule for final approval of the Settlement:

25

| Date | Action |
|------|--------|
| October 3, 2012 | Start of Mailing of Class Notice to Class Members |
| By October 29, 2012 | Mailing of Class Notice to Current Cardholders |

28

| Date | Action |
|------|--------|
| By November 28, 2012 | Deadline for filing of motion in support of final approval of Settlement and application for attorneys' fees, costs and service awards |
| By December 13, 2012 | Deadline for filing and receipt of objections and receipt of requests for exclusion |
| By December 21, 2012 | Deadline for filing reply papers in support of final approval of Settlement and application for attorneys' fees, costs and service awards |
| December 28, 2012 | [Proposed] Final Settlement Approval Hearing/Fairness Hearing |

## VIII.   <u>CONCLUSION</u>

Based on the foregoing, Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement and the related relief requested herein.

Dated: July 12, 2012          Respectfully submitted,

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

By: */s/ Rachel Geman*
          Rachel Geman

Elizabeth Cabraser (State Bar No. 083151)
Michael W. Sobol (State Bar No. 194857)
Daniel M. Hutchinson (State Bar No. 239458)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:     (415) 956-1000
Facsimile:     (415) 956-1008
ecabraser@lchb.com
msobol@lchb.com
dhutchinson@lchb.com

Wendy R. Fleishman
Rachel Geman (admitted pro hac vice)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Telephone:     (212) 355-9500
Facsimile:     (212) 355-9592
wfleishman@lchb.com
rgeman@lchb.com

Marc Godino
GLANCY BINKOW & GOLDBERG LLP
1801 Avenue of the Stars, Suite 311
Los Angeles, CA  90067
Telephone:      (310) 201-9150
Facsimile:      (310) 201-9160
mgodino@glancylaw.com

John J. Carey
Francis J. "Casey" Flynn, Jr.
Tiffany M. Yiatras
CAREY DANIS & LOWE
8235 Forsyth Blvd., Suite 1100
St. Louis, MO  63105
Telephone:      (800) 721-2519
Facsimile:      (314) 721-0905
jcarey@careydanis.com
casey@jefflowepc.com
tyiatras@caseydanis.com

*Proposed Class Counsel*

Richard Golomb
Ruben Honik
GOLOMB & HONIK PC
1515 Market Street, Suite 1100
Philadelphia, PA  19102
Telephone:      (215) 985-9177
Facsimile:      (215) 985-4169
rhonik@golombhonik.com
rgolomb@golombhonik.com

J. Allen Carney
Randall K. Pulliam
CARNEY WILLIAMS BATES PULLIAM &
BOWMAN PLLC
11311 Arcade Drive, Suite 200
Little Rock, AK  72212
Telephone:      (501) 312-8500
Facsimile:      (501) 312-8505
acarney@carneywilliams.com
rpulliam@carneywilliams.com

Brett Cebulash
Kevin S. Landau
TAUS, CEBULASH & LANDAU, LLP
80 Maiden Lane, Suite 1204
New York, NY  10038
Telephone:      (212) 931-0704
bcebulash@tcllaw.com
klandau@tcllaw.com

- 23 -

Steve Owings
OWINGS LAW FIRM
1400 Brookwood
Little Rock, AR  72202
Telephone:     (501) 661-9999
Facsimile:      (501) 661-8393
sowings@owingslawfirm.com

David S. Paris
Ross Schmierer
PARIS ACKERMAN & SCHMIERER LLP
101 Eisenhower Parkway
Roseland, NJ  07068
Telephone:     (973) 228-6667
Facsimile:      (973) 629-1246
david@paslawfirm.com
ross@paslawfirm.com

Bruce Nagel
Jay Rice
Diane Sammons
NAGEL RICE, LLP
103 Eisenhower Parkway
Roseland, NJ  07068
Telephone:     (973) 618-0400
Facsimile      (973) 618-9194
bnagel@nagelrice.com
jrice@nagelrice.com
dsammons@nagelrice.com

*Attorneys for Plaintiffs and Additional Counsel for the Class*