1   Rachel Geman (admitted *pro hac vice*)
    rgeman@lchb.com
2   LIEFF CABRASER HEIMANN
    & BERNSTEIN, LLP
3   250 Hudson Street, 8th Floor
    New York, NY  10013-1413
4   Telephone:  (212) 355-9500
    Facsimile:  (212) 355-9592
5
    Elizabeth Cabraser (State Bar No. 083151)
6   Michael W. Sobol (State Bar No. 194857)
    Daniel M. Hutchinson (State Bar No. 239458)
7   LIEFF CABRASER HEIMANN
    & BERNSTEIN, LLP
8   275 Battery Street, 29th Floor
    San Francisco, CA  94111-3339
9   Telephone:    (415) 956-1000
    Facsimile:    (415) 956-1008
10  ecabraser@lchb.com
    msobol@lchb.com
11  dhutchinson@lchb.com

12  *Class Counsel*

Marc Godino
GLANCY BINKOW &
GOLDBERG LLP
1801 Avenue of the Stars, Suite 311
Los Angeles, CA  90067
Telephone:    (310) 201-9150
Facsimile:    (310) 201-9160
mgodino@glancylaw.com

John J. Carey
Francis J. "Casey" Flynn, Jr.
Tiffany M. Yiatras
CAREY DANIS & LOWE
8235 Forsyth Blvd., Suite 1100
St. Louis, MO  63105
Telephone:    (800) 721-2519
Facsimile:    (314) 721-0905
jcarey@careydanis.com
casey@jefflowepc.com
tyiatras@caseydanis.com

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

16  IN RE: BANK OF AMERICA CREDIT
    PROTECTION MARKETING AND SALES
17  PRACTICES LITIGATION

18  THIS DOCUMENT RELATES TO ALL
19  ACTIONS

MD No. 3:11-md-02269 TEH

MDL Docket No. 2269

**NOTICE OF MOTION AND MOTION
FOR FINAL APPROVAL OF CLASS
SETTLEMENT AND RELATED RELIEF;
MEMORANDUM OF LAW IN SUPPORT**

Date:    January 14, 2013
Time:    10:00 a.m.
Crtm:    2, 17th Floor
The Honorable Thelton E. Henderson

1068542.1

FINAL APPROVAL OF CLASS SETTLEMENT
MD No. 3:11-md-02269 TEH

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on January 14, 2013, at 10:00 a.m., in the Courtroom of the Honorable Thelton E. Henderson, United States District Judge for the Northern District of California located at 450 Golden Gate Avenue, San Francisco, California, the Plaintiffs will and hereby do move the Court, pursuant to Federal Rule of Civil Procedure 23(e), for entry of an Order:

1.      Giving final approval to the class action Settlement;

2.      Certifying for settlement purposes the proposed Class pursuant to Rules 23(a), (b)(3), and (e) of the Federal Rules of Civil Procedure, appointing Plaintiffs Juan Arevalo, Mitchell Sandow, Jason Chan, Blanche Melendez, Dominick Mattiello, Jr., as Executor of the Estate of Dominick M. Mattiello, Rose Rowley, Wilfred Somers, Vivian Somers, Cheryl Ross, Maryellen Richmond, Frederick Richmond, Maude Stewart, Marion Walton, and Angela Zeleny as Class Representatives, and appointing as Class Counsel the firms Lieff Cabraser Heimann & Bernstein, LLP; Glancy Binkow & Goldberg LLP; and Carey, Danis & Lowe;

3.      Finding that form and procedure for notifying the Class of the Settlement and their rights with respect to the Settlement was adequate;

4.      Overruling any objections to the Settlement; and

5.      Recognizing all Class Members who filed timely exclusions to the Settlement.

This motion is based on this Notice of Motion and Motion; the supporting Memorandum of Points and Authorities, the Settlement Agreement and its Exhibits; the Joint Declaration of Class Counsel in Support of Plaintiffs' Motion for Final Approval of Settlement and Motion for Attorneys' Fees, Reimbursement of Expenses, and Service Awards; the Declaration of Mary Ellen Beck; the Declaration of Jonathan B. Marks; the Declaration of Markham Sherwood in Support of Motion for Final Approval of Settlement; the Court's Order preliminarily approving the Settlement, and any argument of counsel, and all papers and records on file in this matter.

# TABLE OF CONTENTS

Page

I.      PRELIMINARY STATEMENT ..................................................................... 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ............................................ 2

        A.      The MDL Transfer and Subsequent Consolidation ..................................... 2

        B.      The Parties Engaged in Substantial Motion Practice and
                Negotiation ...................................................................................... 3

        C.      The Parties Were Engaged in Formal Discovery When They
                Commenced Mediation Efforts ............................................................... 4

        D.      The Parties Entered into Settlement Negotiations and Reached an
                Agreement ........................................................................................ 5

        E.      The Settlement is Preliminarily Approved ................................................ 6

III.    TERMS OF THE SETTLEMENT .................................................................. 7

        A.      Monetary Relief for the Class Members .................................................. 7

        B.      Prospective Practice Changes and Other Benefits ...................................... 8

        C.      Cy Pres Relief for the Class Members .................................................... 8

        D.      Class Release .................................................................................... 8

        E.      Class Representative Service Awards ...................................................... 9

        F.      Attorneys' Fees and Costs .................................................................... 9

        G.      Administration and Notice .................................................................... 9

IV.     FINAL APPROVAL OF THE SETTLEMENT IS WARRANTED ..................... 10

        A.      Class Action Settlement Procedure ....................................................... 10

        B.      The Settlement Satisfies the Criteria for Final Approval ............................ 11

                1.      The Strength of Plaintiffs' Claims Balanced Against the
                        Risk, Expense, Complexity, and Likely Duration of Further
                        Litigation Favors Approval of the Settlement ............................... 12

                2.      The Risk of Maintaining Class Action ........................................ 14

                3.      The Settlement Provides Substantial Relief for Class
                        Members ............................................................................. 14

                4.      The Stage of Proceedings and Discovery Thus Far Has
                        Enabled Sufficient Evaluation of the Merits of the Claims .......... 15

                5.      Counsel Are Experienced in Litigation of Class Cases and
                        of Cases Involving Credit Card Protection Products ..................... 16

                6.      The Presence of a Governmental Participant ................................ 17

                7.      The Reaction of the Class to the Proposed Settlement ................. 17

V.      THE NOTICE TO THE CLASS SATISFIES DUE PROCESS .......................... 17

VI.     THE PLAN OF ADMINISTRATION AND DISTRIBUTION IS FAIR
        AND REASONABLE AND SHOULD BE APPROVED .................................... 18

VII.    THE CY PRES DISTRIBUTION OF UNCLAIMED FUNDS IS
        APPROPRIATE ........................................................................................ 19

1

**TABLE OF CONTENTS**
(continued)

2

**Page**

3

VIII.    CERTIFICATION OF THE CLASS IS APPROPRIATE....................................20

IX.      CONCLUSION ...................................................................................................21

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- ii -

# TABLE OF AUTHORITIES

**Page**

### CASES

*Anixter v. Home-Stake Prod. Co.*,
    77 F.3d 1215 (10th Cir. 1996)................................................................................. 14

*Arevalo v. Bank of Am. Corp.*,
    850 F. Supp. 2d 1008 (N.D. Cal. 2011) ............................................................. 3, 13

*Arevalo, et al. v. Bank of America Corporation, et al.*,
    No. 3:10-cv-04959-TEH ...................................................................................... 2, 3

*Backman v. Polaroid Corp.*,
    910 F.2d 10 (1st Cir. 1990) ................................................................................... 14

*Browning v. Yahoo! Inc.*,
    No. C04-01463 HRL, 2007 WL 4105971  (N.D. Cal. Nov. 16, 2007).................... 20

*Carter v. Anderson Merch., L.P.*,
    No. EDCV 08-0025-VAP (OPx), 2010 WL 1946784 (C.D. Cal. May 11, 2010) .................... 16

*Chun–Hoon v. McKee Foods Corp.*,
    716 F. Supp. 2d 848 (N.D. Cal. 2010) ............................................................ 12, 17

*Churchill Village, LLC v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004)........................................................................... 11, 17

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ........................................................................ 11, 18

*Decohen v. Abbasi, LLC*,
    Civil No. WDQ-10-3157, 2011 WL 3438625 (D. Md. July 26, 2011).................... 14

*Dennis v. Kellogg Co.*,
    697 F.3d 858 (9th Cir. 2012)................................................................................ 20

*Denton v. Dep't Stores Nat'l Bank*,
    No. C10-5830RBL, 2011 WL 3298890 (W.D. Wash. Aug. 1, 2011) ...................... 14

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974)............................................................................................. 18

*Esslinger v. HSBC Bank Inc., et al.*,
    No. 10-cv-3213 BMS, E.D. Pa....................................................................... 15, 16, 19

*Glass v. UBS Fin. Servs., Inc.*,
    No. C-06-4068 MMC, 2007 WL 221862  (N.D. Cal. Jan. 26, 2007), *aff'd*, 331 F. App'x. 452
    (9th Cir. 2009)...................................................................................................... 16

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998)........................................................... 11, 12, 17, 20

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Bank of America Credit Prot. Mktg. and Sales Practices Litig.*,
   MDL 2269 (J.P.M.L. Aug. 16, 2011) ................................................................. 2

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000)........................................................................ 15

*In re Nissan Motor Corp. Antitrust Litig.*,
   552 F.2d 1088 (5th Cir. 1977)...................................................................... 18

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...................................................... 17

*In re Oracle Sec. Litig.*,
   No. C-90-0931-VRW, 1994 WL 502054  (N.D. Cal. Jun. 18, 1994)........................ 18

*In re TD Ameritrade Account Holder Litig.*,
   Nos. C07-2852 SBA, C074903 SBA, 2011 WL 4079226 (N.D. Cal. Sept. 13, 2011)............. 15

*Kardonick, et al., v. JP Morgan Chase & Co, et al.*,
   No. 1:10-cv-23235-WMH, S.D. Fla. (Miami) ............................................. 15, 16, 19

*Kurz v. Philadelphia Elec. Co.*,
   96 F.3d 1544 (3d Cir. 1996)........................................................................ 14

*Mangone v. First USA Bank*,
   206 F.R.D. 222 (S.D. Ill. 2001).................................................................... 18

*Mattiello, Jr. ex rel. Mattiello, Sr. v. Bank of America Corporation, et al.*,
   No. 2:11-05957-FSH-PS ............................................................................. 2

*Melendez v. Bank of America, N.A., et al.*,
   No. 1:11-cv-05467-PKC ............................................................................. 2

*Nachshin v. AOL, LLC*,
   663 F.3d 1034 (9th Cir. 2011)..................................................................... 20

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982)....................................................................... 11

*Ortiz v. Fibreboard Corp.*,
   527 U.S. 815 (1999).................................................................................. 20

*Patrick, et al. v. Bank of America Corp.*,
   No. 3:11-cv-03483-TEH ............................................................................. 2

*Pelletz v. Weyerhaeuser Co.*,
   255 F.R.D. 537 (W.D. Wash. 2009) ........................................................... 12

*Riker v. Gibbons*,
   No. 3:08-cv-00115-LRH-VPC, 2010 WL 4366012 (D. Nev. Oct. 28, 2010)..................... 16

*Robbins v. Koger Properties, Inc.*,

**TABLE OF AUTHORITIES**
(continued)

Page

116 F.3d 1441 (11th Cir. 1997)............................................................................... 14

*Rodriguez v. West Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009)................................................................................... 11

*Rose v. Bank of Am. Corp.*,
No. CV 10-5067-VBF (JC), 2010 WL 8435397 (C.D. Cal. Nov. 5, 2010) .............................. 14

*Ross, et al. v. Bank of America Corporation, et al.*,
No. 3:10-cv-05829-RBL ................................................................................... 2, 3

*San Francisco NAACP v. San Francisco Unified Sch. Dist.*,
59 F. Supp. 2d 1021 (N.D. Cal. 1999) ....................................................................... 11

*Scottish Heritable Trust, PLC v. Peat Marwick Main & Co.*,
81 F.3d 606 (5th Cir. 1996), *cert. denied* 519 U.S. 869 (1996)................................. 14

*Six (6) Mexican Workers v. Arizona Citrus Growers*,
904 F.2d 1301 (9th Cir. 1990).............................................................................. 20

*Spinelli v. Capital One Bank*,
265 F.R.D. 598 (M.D. Fla. 2009)............................................................................. 14

*Spinelli, et al., v. Capital One Bank (USA) N.A., et al.*,
No. 8:08-cv-00132-VCM-EAJ, M.D. Fla. ............................................................. 16, 19

*Stuart, et al. v. Bank of America, N.A., et al.*,
No. 8:11-cv-01678-EAK-MAP ............................................................................... 2

*Thieriot v. Celtic Ins. Co.*,
No. C 10-04462 LB, 2011 WL 1522385 (N.D. Cal. Apr. 21, 2011) ........................... 21

*Thomas v. Bank of Am. Corp.*,
711 S.E.2d 371 (Ga. Ct. App. 2011) ....................................................................... 14

*Walker, et al., v. Discover Financial Services, Inc., et al.*,
No. 1:10-cv-06994, N.D. Ill.......................................................................... 15, 16, 19

*Walton, et al. v. Bank of America Corporation, et al.*,
No. 2:11-cv-00277-PJG .................................................................................. 2, 3

*White v. NFL*,
822 F. Supp. 1389 (D. Minn. 1993), *aff'd*, 41 F.2d 402 (8th Cir. 1994) ................. 18

*Wong, et al. v. Bank of America Corp., et al.*,
No. 3:11-cv-00577-GPM-SCW .......................................................................... 2, 3

*Wren v. RGIS Inventory Specialists*,
No. C-06-05778 JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011)........................... 15

# TABLE OF AUTHORITIES
### (continued)

Page

### STATUTES

15 U.S.C. §§ 1601 *et seq.* .................................................................................. 3

28 U.S.C. § 1407 ............................................................................................... 2

### OTHER AUTHORITIES

Fed R. Civ. P.
  Rule 23(e)(2) ................................................................................................ 11

Fed. R. Civ. P.
  Rule 23(a) .................................................................................................... 20

Fed. R. Civ. P.
  Rule 23(b) .................................................................................................... 20

Fed. R. Civ. P.
  Rule 23(c)(2)(B) .......................................................................................... 18

Fed. R. Civ. P.
  Rule 42(a) ...................................................................................................... 3

Fed. R. Civ. P.
  Rule 23(e) .............................................................................................. 10, 11

Federal Rules of Civil Procedure
  Rule 23 ................................................................................................... 1, 20

### RULES

2 *Newberg on Class Actions* (3d ed. 1992)
  § 11.41 at 11-88 .......................................................................................... 12

4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* (4th ed. 2002)
  § 11.41 ........................................................................................................ 11

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

## I.   PRELIMINARY STATEMENT

Pursuant to both:  (1) Rule 23 of the Federal Rules of Civil Procedure and (2) this Court's July 23, 2012 Order Preliminarily Approving Settlement, Conditionally Certifying Class For Settlement Purposes, Approving Form and Manner of Class Notice, and Setting Dates for Final Approval of Settlement, Plaintiffs respectfully move this Court for final approval of the Settlement Agreement reached with Defendants Bank of America Corporation and FIA Card Services, N.A. (collectively, "Defendants").[1]

The proposed Settlement includes a $20 million common fund; practice changes in Defendants' administration of CPP during their wind-down of the product;[2] and multiple months of free service for CPP customers.  The Settlement resolves all the claims in this case and marks a substantial recovery for the Settlement Class[3] in light of the risks of ongoing litigation.  This Settlement is the product of extensive research and investigation, aggressive litigation, and arm's length settlement negotiations.  Moreover, the Settlement takes into account the significant risks of continued litigation, and it was negotiated by informed counsel (who had litigated and settled several other litigations concerning similar payment protection products) with a firm understanding of the strengths and weaknesses of their clients' respective claims and defenses.

In consideration of the foregoing, Plaintiffs and Plaintiffs' Counsel firmly believe that this Settlement is an outstanding result for the Settlement Class, clearly satisfies the standards for

---

[1] All capitalized terms in this memorandum shall have the meaning as specified in the Settlement Agreement and its attachments, filed simultaneously herewith, unless otherwise indicated.

[2] Defendants are terminating their CPP program.

[3] The "Settlement Class" includes:

> [A]ll people in the United States who were enrolled in CPP between January 1, 2006, and the date the Court preliminarily approves the Settlement Agreement. Excluded from the Settlement Class are:  (1) employees of Defendants and/or any entities in which Defendants have a controlling interest; (2) the Judge to whom this case is assigned and any member of the Judge's immediate family and any other judicial officer assigned to this case; (3) any attorneys representing the Settlement Class Representatives or the Settlement Class; and (4) all governmental entities. For clarification purposes only, the Settlement Class includes customers who originally enrolled in a Credit Protection program prior to January 1, 2006, but remained enrolled at any time on or after January 1, 2006.

Agreement § II.A.24.

1   approval set forth by courts in this district and the Ninth Circuit, and is unquestionably fair,

2   reasonable, and adequate.  Similarly, the Plan of Allocation provides for an equitable distribution

3   among Class Members, and is necessarily fair, reasonable, and adequate.  Furthermore, the

4   significant participation in the Settlement by Class Members, as well as the dearth of exclusions

5   and objections by Class Members, further demonstrates that the Settlement has the support of the

6   Settlement Class.  Accordingly, the Settlement is in the best interests of the Settlement Class, and

7   this Court should grant final approval of the Settlement in this Action.

8   **II.        FACTUAL AND PROCEDURAL BACKGROUND**

9           **A.        The MDL Transfer and Subsequent Consolidation**

10          The following class actions were filed against the Defendants:  *Arevalo, et al. v. Bank of*

11  *America Corporation, et al.,* No. 3:10-cv-04959-TEH; *Ross, et al. v. Bank of America*

12  *Corporation, et al.,* No. 3:10-cv-05829-RBL; *Walton, et al. v. Bank of America Corporation, et*

13  *al.,* No. 2:11-cv-00277-PJG; *Patrick, et al. v. Bank of America Corp.,* No. 3:11-cv-03483-TEH;

14  *Wong, et al.  v. Bank of America Corp.*, *et al.*, No. 3:11-cv-00577-GPM-SCW; *Stuart, et al. v.*

15  *Bank of America, N.A.*, *et al.,* No. 8:11-cv-01678-EAK-MAP; *Melendez v. Bank of America, N.A.*,

16  *et al.*, No. 1:11-cv-05467-PKC, and *Mattiello, Jr. ex rel. Mattiello, Sr. v. Bank of America*

17  *Corporation, et al.,* No. 2:11-05957-FSH-PS.

18          On June 3, 2011, Plaintiffs in the *Arevalo*, *Ross*, and *Walton* class actions filed a Motion

19  for Transfer and Coordination and/or Consolidation of Actions to the Northern District of

20  California Pursuant to 28 U.S.C. § 1407.  On August 16, 2011, the Judicial Panel on Multidistrict

21  Litigation ("JPML") issued a Transfer Order, finding that the related actions shared "common

22  factual questions arising from the marketing, enrollment, sale, operation and/or administration of

23  Bank of America's credit protection plan."  *In re Bank of America Credit Prot. Mktg. and Sales*

24  *Practices Litig.*, MDL 2269 (J.P.M.L. Aug. 16, 2011) (Dkt. No. 32).

25          On August 18, 2011, the JPML issued a Conditional Transfer Order ("CTO") (Dkt.

26  No. 33) conditionally transferring the *Wong*, *Stuart*, and *Melendez* cases to this Court.  The Court

27  accepted transfer of the *Ross*, *Walton*, *Stuart*, *Patrick*, *Melendez*, *Mattiello*, and *Wong* cases for

28  consolidation and/or coordination with the *Arevalo* case.  The District Court consolidated the

1   Actions pursuant to Fed. R. Civ. P. 42(a) for all pretrial purposes.  Case No. 3:11-md-02269-

2   TEH.  (Dkt. Nos. 11, 30).

3         Plaintiffs filed a Consolidated Complaint on December 13, 2011 (Dkt. No. 33). Plaintiffs

4   brought nationwide class claims to recover damages and/or refunds from Defendants for their

5   violations of: (1) the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.*, (2) Delaware

6   (and/or various states') consumer protection laws, (3) Delaware breach of contract, (4) Delaware

7   breach of the covenant of good faith and fair dealing, (5) Delaware unjust enrichment, (6) the

8   Delaware Fraud Act, for (7) injunctive relief and (8) a declaratory judgment.

9         **B.      The Parties Engaged in Substantial Motion Practice and Negotiation**

10        Prior to the consolidation of this case, on November 2, 2010, Plaintiffs Juan Arevalo and

11  Mitchell Sandow filed the first of the consolidated Bank of America Credit Protection cases in the

12  Northern District of California, alleging violations of California's consumer protection laws and

13  consumer fraud.  *Arevalo, et al. v. Bank of America Corp., et al.*, Case No. 3:10-cv-04959-TEH.

14        Bank of America brought a motion to dismiss on December 29, 2010.  (Dkt. No. 9).  Bank

15  of America argued that it was not a proper party, that Plaintiffs' claims were preempted, and that

16  Plaintiffs had failed to state a claim for various causes of action.  The Court heard oral argument

17  on March 7, 2011.  On March 29, 2011, this Court granted in part and denied in part the motion,

18  denying Defendants' motion to dismiss based on preemption and motion to dismiss all claims

19  against Bank of America  (among other rulings), but dismissing certain claims.  *Arevalo v. Bank*

20  *of Am. Corp.*, 850 F. Supp. 2d 1008, 1028-29 (N.D. Cal. 2011).

21        The Arevalo Plaintiffs filed a Second Amended Complaint on April 29, 2011.  (Dkt.

22  No. 40).  Defendants answered that Complaint on May 27, 2011.  (Dkt. No. 44).  While Bank of

23  America filed motions to dismiss in the *Ross* and *Walton* actions, and those motions were fully

24  briefed prior to transfer, no transferor court ruled on the motion to dismiss prior to transfer. Bank

25  of America also filed a motion to dismiss in the *Wong* action, but the *Wong* plaintiffs had not yet

26  responded to that motion at the time of transfer.

27        On January 13, 2012, following the MDL transfers, Plaintiffs filed their consolidated

28  amended complaint.  Defendants moved to dismiss in part Plaintiffs' unjust enrichment, breach of

contract, and breach of covenant of good faith and fair dealing claims. (Dkt. No. 37).  The parties

briefed the motion extensively, including a second-round of supplemental briefing ordered by the

Court relating to choice of law.  (Dkt. Nos. 52, 54).  On March 13, 2012, the Court held a hearing,

focusing on particular questions the Court ordered the parties to address in a prior order.  (Dkt.

No. 57).

On April 3, 2012, the Court granted in part and denied in part Defendants' partial motion

to dismiss.  (Dkt. No. 58).  The Court dismissed without prejudice the Involuntary Enrollment

Plaintiffs' breach of contract claims and the unjust enrichment claim asserted by all Plaintiffs.  *Id.*

The Court upheld the breach of good faith and fair dealing claims.  *Id.*

At the same time Defendants filed their partial motion to dismiss, Defendants filed an

answer addressing all other claims.  (Dkt. No. 38).  Following several meet-and-confers and

pursuant to stipulation (Dkt. Nos. 47 & 48), Defendants filed an Amended Answer and

Affirmative Defenses on February 24, 2012 (Dkt. No. 51), which added additional factual

allegations to certain affirmative defenses.

Plaintiffs filed a First Consolidated and Amended Class Action Complaint ("Complaint")

on April 25, 2012, adding Plaintiff Jason Chan and additional allegations about Defendants'

choice-of-law provisions, and otherwise responding to the Court's April 3, 2012 Order.  (Dkt.

No. 62).  Defendants answered the operative complaint on May 23, 2012.  (Dkt. No. 63).

C.      **The Parties Were Engaged in Formal Discovery When They Commenced Mediation Efforts**

The *Arevalo* Plaintiffs had engaged in initial formal discovery at the time of the MDL

transfer.

On January 20, 2012, the MDL Plaintiffs served their First Set of Requests for Production

of Documents.  *See* Dkt. No. 56.  On February 27, 2012, Defendants served responses and

objections, and subsequently produced two productions totaling 3,091 pages containing

documents related to the named plaintiffs, relevant policies and procedures, disclosures, and

training documents.  *Id.*  Following Defendants' responses, the parties engaged in a series of

meet-and-confers about Defendants' responses relating to, among other topics, Electronically-

1   Stored Information ("ESI"), and areas of disputed discovery relating to internal complaints and

2   documents subject to alleged privileges.  The parties presented some of these contested issues to

3   the Court in the context of addressing case status issues.  *See, e.g.*, Dkt. No. 59.

4         On February 1, 2012, Plaintiffs served a Notice of Deposition pursuant to Federal Rules of

5   Civil Procedure 30(b)(6), seeking testimony regarding topics related to Defendants' documents

6   and ESI.  *See* Dkt. No. 56.

7         On March 1, 2012, Defendants served separate requests for production and interrogatories

8   on each of the MDL Plaintiffs.  *See* Dkt. No. 56.

9         On April 17, 2012, the parties informed the Court in a case management conference

10  statement that they had agreed to conduct mediation.  Dkt. No. 59.

11        **D.**       **<u>The Parties Entered into Settlement Negotiations and Reached an Agreement</u>**

12        The parties agreed to attempt to resolve their litigation through mediation.  In advance of

13  the mediation, Defendants provided Plaintiffs' Counsel with extensive and detailed non-public

14  data regarding CPP enrollments and new enrollments, benefit approval/denial history and

15  revenues as well as enrollment channel information, tenure in the products, average waiting

16  times, and other product information.  Joint Declaration of Class Counsel in Support of Motion

17  for Final Approval ("Joint Decl."), ¶ 19.  To adequately prepare for mediation, Plaintiffs

18  interviewed Defendants' designee to ensure they understood the data's meaning and scope prior

19  to the first mediation. Joint Decl., ¶ 20.  This exchange, coupled with the extensive investigation

20  and research already conducted by Plaintiffs' Counsel, as well as their experience from litigating

21  other payment protection cases against other banks, allowed Plaintiffs' Counsel to fully assess the

22  strengths and weaknesses of both Plaintiffs' claims and the potential defenses available to

23  Defendants prior to the mediation.  Joint Decl., ¶ 21.

24        On May 2, 2012 and May 24, 2012, following the submission of mediation statements, the

25  parties engaged in full day mediation sessions facilitated by a reputable and skilled mediator,

26  Jonathan B. Marks.  Declaration of Jonathan B. Marks ("Marks Decl."), ¶ 14; Joint Decl., ¶ 22.

27  Against this background, and with the aid of mediator Marks, the parties were able to effectively

28  engage in informed, arm's length negotiations.  Marks Decl., ¶¶ 6-23; Joint Decl., ¶ 23.  The

1    negotiations were hard-fought and adversarial.  The negotiations involved experienced counsel on

2    both sides who vigorously represented their respective parties' position.  Marks Decl., ¶¶ 18-23;

3    Joint Decl., ¶ 23.  At the end of the mediation session on May 24, 2012, the parties reached an

4    agreement in principle to settle the case and began work on a proposed settlement term sheet

5    ("Settlement Term Sheet").  Joint Decl., ¶ 24.  Subsequently, the parties exchanged drafts of the

6    Settlement Term Sheet and later met in New York City on June 15, 2012 where the parties

7    continued to negotiate the Settlement Term Sheet and further discussed practice changes to be

8    adopted by the Defendants.  Joint Decl., ¶ 25.  On June 25, 2012, the parties executed a

9    Memorandum of Understanding outlining the terms of the Settlement Term Sheet.  Joint Decl.,

10   ¶ 26.  The Court was informed of the parties' resolution of the case by way of Stipulation on

11   July 5, 2012.  Dkt. No. 70.

12          To confirm the reasonableness of the settlement, Plaintiffs' engaged in confirmatory

13   discovery involving the review of data and interviews with three executives of Bank of America

14   who were personally involved with the CPP at issue in this class action litigation.  Joint Decl.,

15   ¶ 27.  First, as discussed above, Plaintiffs conducted a pre-mediation interview with Jody Morris,

16   Senior Vice President of Technology Operations for Credit Protection at Bank of America, about

17   the settlement class data to ensure that Plaintiffs could conduct an informed mediation.  Joint

18   Decl., ¶ 28.  Second, Plaintiffs held a full-day, in-person interview of three of Defendants'

19   representatives:  (1) Sanjeev Arjungi, Senior Vice President and Customer Analytics Executive at

20   Bank of America, (2) Jody Morris, and (3) Jim Baker, Privacy Products Protection Executive for

21   Bank of America, with responsibility for managing the Outbound Telemarketing Channel.  Joint

22   Decl., ¶ 29.  Third, Plaintiffs held a follow-up telephonic interview with Mr. Arjungi on July 6,

23   2012, that addressed the specific value of the practice changes to the administration of CPP

24   negotiated as part of the settlement.  Joint Decl., ¶ 30.

25          **E.      The Settlement is Preliminarily Approved**

26          On July 12, 2012, Plaintiffs' Counsel filed a motion for preliminary approval of the

27   Settlement and on July 17, 2012, the Court held a hearing to consider the motion.  On July 23,

28   2012, this Court entered an order preliminarily approving the Settlement ("Preliminary Approval

1   Order"). Subsequently, a claims administrator was selected through a competitive bidding

2   process and Defendants and the Claims Administrator thereafter issued notice to Class Members,

3   as detailed below.

4   **III.    TERMS OF THE SETTLEMENT**

5          The Settlement's details are contained in the Agreement signed by the parties, a copy of

6   which is attached as Exhibit 1 to this memorandum. The following summarizes the Agreement's

7   terms relevant to Final Approval.

8          **A.    Monetary Relief for the Class Members**

9          The Settlement requires Defendants to create the $20 million Fund, out of which eligible

10   Class Members who file a qualified claim will receive a Monetary Award. Agreement § IV.A.

11          Class Members will be eligible for monetary benefits depending upon the information

12   they provide. First, Class Members who assert that they were enrolled in CPP without their

13   consent or received a CPP product that was not as it was advertised may submit a claim for an

14   estimated $50.00 Monetary Award. Agreement § IV.B.2. Second, Class Members who assert

15   that they were improperly denied CPP benefits or that they were denied benefits contrary to their

16   expectations are eligible for an estimated $100 Monetary Award. Agreement § IV.B.3. The

17   amount of each Class Member's Monetary Award will be based on a *pro rata* distribution,

18   depending on the number of valid and timely claims. Agreement § IV.B.4. Thus, the Monetary

19   Awards actually received may be greater or less than the $50 and $100 estimates depending upon

20   balance remaining in the Settlement Fund after deduction of claim notice and settlement

21   administration costs and taxes, and any attorneys' fees and costs, and/or service award ordered by

22   the Court.

23          In order to exercise the right to obtain the relief outlined above, Class Members need only

24   complete a simple, one-page claim form and provide it to the Claims Administrator. Agreement

25   § IV.B.1. & Exh. A. Class Members must submit the claim form, including their name, address,

26   date of birth, claim identification number or last four digits of their social security number,

27   indicate which Monetary Award they elect, and their signature. Agreement, Exh. A. Unless the

28   Court orders otherwise, Class Members must submit their claim forms to the Settlement

1  Administrator by no later than February 26, 2013.  Agreement § IV.B.7.

2  **B.      Prospective Practice Changes and Other Benefits**

3          Pursuant to the Agreement and for the benefit of Class Members, Defendants must also

4  institute prospective practice changes in product administration and provide additional benefits.

5  Agreement § IV.C.  Specifically, Defendants have agreed to remove certain of the alleged

6  impediments to CPP benefits raised by Plaintiffs throughout this litigation.  During the remaining

7  period Defendants are continuing to provide CPP, Defendants will waive or eliminate:  (1) any

8  waiting period for involuntary unemployment and disability benefit requests; (2) the employer

9  verification requirements for involuntary unemployment and disability benefit requests; (3) the

10  requirement to register with a job service for involuntary unemployment benefit requests; and (4)

11  will allow independent contractors to claim involuntary unemployment benefits upon furnishing

12  evidence of the termination of the business relationship with the company or entity that formed

13  the basis of their employment.  Agreement § IV.C.2.(b)-(e).

14          For Class Members currently enrolled in CPP, Defendants will provide two additional

15  months of CPP at no cost.  Agreement § IV.C.2.(a).

16          Lastly, Defendants will enhance settlement communications to remind customers about

17  benefits and reporting period requirements for unemployment and disability benefits.  Agreement

18  § IV.C.2.(f).

19          While Defendants have chosen to wind down and terminate CPP for independent business

20  reasons, these changes will remain in effect while customers remain eligible for benefit payments.

21  **C.      *Cy Pres* Relief for the Class Members**

22          If any amounts remain in the Settlement Fund following deductions of claim notice and

23  settlement administration costs and taxes, any attorneys' fees and costs, and/or service award

24  awarded by the Court, and the *pro rata* distribution to all eligible Class Members with timely and

25  valid claims, the remaining amounts shall be distributed to a *cy pres* recipient, the Center for

26  Responsible Lending. Agreement § IV.B.5.

27  **D.      Class Release**

28          In exchange for the benefits allowed under the Settlement, Class Members who do not opt

1    out will provide a release tailored to the practices at issue in this case.  Specifically, they will

2    release any claim, right, demand, charge, complaint, action, cause of action, obligation, or

3    liability as of the date of Final Approval, that arises out of, relates to, or is in connection with:

4    "(i) any Settlement Class Member's enrollment in, (ii) Defendants' marketing and administration

5    of, and (iii) Defendants' termination of, CPP" or (iv) "the administration of the Settlement."

6    Agreement § V.A.1.

7          **E.     Class Representative Service Awards**

8          The Agreement provides $3,000 service awards for Settlement Class Representatives in

9    recognition of their service to and efforts on behalf of the Class.  Agreement § IV.D.1.  These

10   service awards are in addition to the relief the Settlement Class Representatives will be entitled to

11   under the terms of the Settlement.  These awards will compensate the Representatives for their

12   time and effort and for the risk they undertook in prosecuting the cases against Defendants.  All

13   Representatives were kept informed of the litigation as it developed, and all approved the

14   proposed Settlement.  Further, they committed to participating in the litigation in whatever

15   capacity they are needed should settlement not be reached.

16         **F.     Attorneys' Fees and Costs**

17         The Settlement provides that Defendants will not contest Plaintiffs' Counsel's application

18   to this Court for payment of attorneys' fees and expenses so long as they seek no more than

19   $6,600,000, which is 33 percent (33%) of the Fund.  Agreement § IV.D.1.  Plaintiffs' Counsel's

20   memorandum in support of an award of attorneys' fees and reimbursement of expenses (seeking

21   the benchmark amount of 25% of the common fund) is being submitted contemporaneously with

22   this motion.

23         **G.     Administration and Notice**

24         As set forth in the Agreement, the costs of notice and claims administration will be paid

25   from the Fund, except for notice to current customers which will be paid by Defendants.

26   Gilardi & Co, LLC ("Gilardi"), the claims administrator appointed by this Court:

27

28

1.     mailed 4,206,409 direct, short-form notice forms to Class Members; *See* Declaration of Markham Sherwood in Support of Motion for Final Approval of Settlement ("Sherwood Decl."), ¶8.

2.     published notice of the Settlement in the national edition of USA TODAY on October 29, 2012 (*Id*. at ¶11); and

3.     established the website www.creditprotectionsettlement.com on or before October 3, 2012. *Id*. at ¶12. The settlement website provides generalized information, including the Agreement, the Claim Form, all forms of Class Notice (Long-Form Notice, Short-Form Notice, and Publication Notice), and the Preliminary Approval Order. *Id*. The website also provides for online submission of claims. *Id*. The website shall be maintained until the Settlement Fund has been exhausted.

Furthermore, between October 15 and 23, 2012, Defendants sent 3,719,939 direct, short-form notice forms U.S. mail to Class Members. Declaration of Mary Ellen Beck ("Beck Decl."), ¶¶ 3-6.

As explained in the notices described above, Class Members will have until February 26, 2013 to submit their claim forms. Preliminary Approval Order, ¶20. Any Class Member who submits an incomplete, inaccurate, and/or incorrect claim form shall be permitted within a reasonable time to cure any defects. Agreement § IV.B.6. The Settlement Administrator will calculate the proportionate recoveries of qualified claimants and issue checks to those individuals by no later than thirty (30) days after Final Approval or May 27, 2013, whichever comes later. Agreement § IV.B.4. Class Members will have until December 13, 2012 to submit a written request to be excluded from or opt out of the Class. Preliminary Approval Order, ¶18. As of November 28, 2012, 144 Class Members have sought to be excluded from the Settlement, and only one Class Members has objected to the Settlement. Sherwood Decl., ¶15 & Exh. C.

## IV.     **FINAL APPROVAL OF THE SETTLEMENT IS WARRANTED**

### A.     **Class Action Settlement Procedure**

Under Federal Rule of Civil Procedure 23(e), "claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). In cases where the

1  settlement "would bind class members, the court may approve [the settlement] only after a

2  hearing and finding that it is fair, reasonable, and adequate." Fed R. Civ. P. 23(e)(2).  As a matter

3  of "express public policy," federal courts strongly favor and encourage settlements, particularly in

4  class actions and other complex matters, where the inherent costs, delays, and risks of continued

5  litigation might otherwise overwhelm any potential benefit the class could hope to obtain.  *Class*

6  *Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong judicial

7  policy that favors class action settlements"); *Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566,

8  576 (9th Cir. 2004) (same); *San Francisco NAACP v. San Francisco Unified Sch. Dist.*, 59 F.

9  Supp. 2d 1021, 1029 (N.D. Cal. 1999) (same); 4 Herbert B. Newberg & Alba Conte, *Newberg on*

10 *Class Actions* ("*Newberg*") § 11.41 (4th ed. 2002) (citing cases).  The proposed Settlement in this

11 case is the best vehicle for Class Members to receive the relief to which they are entitled in a

12 prompt and efficient manner.

13        **B.      The Settlement Satisfies the Criteria for Final Approval**

14        Rule 23(e) requires court approval of any voluntary compromise of a class action and

15 requires notice regarding the proposed settlement be provided to all class members.  A proposed

16 settlement may be approved by the trial court if it is determined to be "fundamentally fair,

17 adequate and reasonable."  *City of Seattle*, 955 F.2d at 1276 (quoting *Officers for Justice v. Civil*

18 *Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)); *Rodriguez v. West Publ'g Corp.*, 563 F.3d

19 948, 963 (9th Cir. 2009).  The issue is not whether the settlement could be "better," but whether it

20 is "fair, adequate and free from collusion."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th

21 Cir. 1998).  In evaluating the fairness of a settlement at the final approval stage, the district court

22 may consider factors that include the following:

23            (1) the strength of the plaintiffs' case; (2) the risk, expense,
             complexity, and likely duration of further litigation; (3) the risk of
24            maintaining class action status throughout the trial; (4) the amount
             offered in settlement; (5) the extent of discovery completed and the
25            stage of the proceedings; (6) the experience and views of counsel;
             (7) the presence of a governmental participant; and (8) the reaction
26            of class members to the proposed settlement.

27 *Churchill Village*, 361 F.3d at 575 (citing *Hanlon*, 150 F.3d at 1026).  Each of these elements is

28 addressed in detail below.

1      Courts also frequently consider the procedure by which the parties arrived at the

2   settlement when assessing the settlement's fairness.  *See, e.g.*, *Chun–Hoon v. McKee Foods*

3   *Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (concluding that "arms-length negotiations,

4   including a day-long mediation . . . indicate that the settlement was reached in a procedurally

5   sound manner").  The Court's role is to ensure that "the agreement is not the product of fraud or

6   overreaching by, or collusion between, the negotiating parties."  *Hanlon*, 150 F.3d at 1027

7   (internal quotations and citations omitted); *see also Pelletz v. Weyerhaeuser Co.*, 255 F.R.D. 537,

8   542 (W.D. Wash. 2009) (approving settlement "reached after good faith, arms-length

9   negotiations"). As an initial matter, courts recognize an initial presumption that a proposed

10  settlement is fair and reasonable when it is the result of arm's-length negotiations. *See* 2 *Newberg*

11  *on Class Actions*, § 11.41 at 11-88 (3d ed. 1992). As detailed above, the proposed Settlement is

12  the result of two full days of arm's-length mediation and negotiations with experienced mediator

13  Jonathan B. Marks.  The mediation was preceded and followed by extensive information

14  exchange, and negotiations between experienced attorneys on both sides who are familiar with

15  class action litigation, and with the legal and factual issues of this case.  Thus, there is no doubt

16  that the Settlement was negotiated at arm's-length.

17          1.      **The Strength of Plaintiffs' Claims Balanced Against the Risk, Expense,**
                    **Complexity, and Likely Duration of Further Litigation Favors**
18                  **Approval of the Settlement**

19      The first two elements described above, (1) the strength of the plaintiffs' case; and (2) the

20  risk, expense, complexity, and likely duration of further litigation, are intertwined and both favor

21  approval of the Settlement.  Plaintiffs' Counsel have conducted an extensive investigation relating

22  to the claims and the underlying events and transactions alleged in the Complaint.  As described

23  above in Section II, Plaintiffs' Counsel have analyzed evidence adduced during their investigation

24  and thorough discovery, have briefed and obtained Court rulings in response to Defendants'

25  motions to dismiss, and have researched the applicable law with respect to the claims and

26  potential defenses in the case. Entering into mediation, Plaintiffs and Plaintiffs' Counsel were

27  confident in the strength of their case, but also pragmatic in their awareness of the risks inherent

28  to litigation.  For example, Plaintiffs have already faced the dismissal of certain of their claims.

1     While this Court denied Defendants' preemption motion in the *Arevalo* case based solely

2   on the pleadings, Defendants have argued that the Court's holding was limited to involuntary

3   enrollment claims and that the Court would rule differently on a substantive motion based on the

4   evidence – a position creating, at minimum, an element of risk for Plaintiffs.  *Arevalo*, 850 F.

5   Supp. 2d at 1021-23.

6     Were the case to continue, Plaintiffs would have the burden of proving, *inter alia*, that

7   Defendants engaged in a deceptive act or unfair practice that proximately caused injury to the

8   members of the Class. In this regard, Plaintiffs would certainly face challenges that they have not

9   met their burden. For instance, Defendants would likely argue that Defendants' disclosures

10   provided all key terms, conditions, and eligibility requirements for its CPP. While Plaintiffs'

11   Counsel firmly believe – based on their investigation and discovery – that Plaintiffs' claims

12   against Defendants have considerable merit and that Plaintiffs would ultimately prevail in any

13   trial against Defendants, Plaintiffs' Counsel recognize that establishing liability at trial would by

14   no means be guaranteed and that an adverse decision on any of these arguments could have

15   materially impacted the Class's recovery.  *See* Marks Decl., ¶ 23 ("[T]he settlement reached by

16   the Parties is consistent with the judgments I reached about the strengths and weaknesses of the

17   Parties' cases.").

18     Additionally, establishing and proving actual damages on a class-wide basis was far from

19   assured, given Defendants' arguments that it did not enroll class members into CPP without

20   authorization and that it fully disclosed material terms in marketing materials and telephone calls.

21   In this regard, Plaintiffs' Counsel recognize that substantial disagreement in the form of expert

22   testimony would likely exist at trial.  This could have evolved into a "battle of the experts" that

23   could have been won by either side.

24     Collectively, these factors could certainly lead to dismissal of all or part of Plaintiffs'

25   claims on a motion to dismiss, a motion for summary judgment, or even lead a jury to render a

26   defense verdict at trial. Moreover, and assuming Plaintiffs prevailed at trial, it is a real possibility

27   that any judgment recovered, even an exceptionally large judgment after lengthy litigation and

28

trial, could be completely lost on appeal or as a result of judgment notwithstanding the verdict.[4]

The Settlement avoids the risks above, and provides substantial relief to Class Members without further delay.  Thus, this factor weighs in favor of final approval of the Settlement.

### 2.    The Risk of Maintaining Class Action

At class certification, Plaintiffs would have additional hurdles.  As in most complex, multi-district litigations, Defendants would likely argue that the potential application of multiple states' laws would preclude certification, and Defendants have also raised what they consider to be meaningful factual arguments against certification. Finally, it is by no means certain that Plaintiffs could expect a verdict in their favor on the claims remaining following the Court's orders on Defendants' motions to dismiss.  Plaintiffs would have faced Defendants' arguments that numerous courts have dismissed similar state law challenges based on the principles of express, field, and conflict preemption.[5]  The Settlement eliminates the risks and expenses inherent in litigating the issue of class certification. Thus, this factor weighs in favor of final approval of the Settlement.

### 3.    The Settlement Provides Substantial Relief for Class Members

The Settlement's $20 million Fund, when viewed by itself, provides substantial relief to the Class.  The significant nonmonetary relief provides further relief to the Class. For example, Defendants agreed to (1) waive eliminate any waiting period for involuntary unemployment and disability benefit requests, the employer verification requirements for involuntary unemployment

---

[4] *See Kurz v. Philadelphia Elec. Co.*, 96 F.3d 1544 (3d Cir. 1996) (in ERISA class action, Third Circuit reversed judgment for plaintiffs in bench trial and entered judgment for all defendants on all counts); *see also Robbins v. Koger Properties, Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing $81.3 million jury verdict for plaintiff after 7 years of litigation); *Scottish Heritable Trust, PLC v. Peat Marwick Main & Co.*, 81 F.3d 606 (5th Cir. 1996) (reversing verdict for plaintiffs on negligent misrepresentation claim against defendant auditor and dismissing claim), *cert. denied* 519 U.S. 869 (1996); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning, on the basis of 1994 Supreme Court opinion, jury verdict rendered at trial in 1988 for case filed in 1973); *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (multi-million dollar judgment for plaintiffs reversed on appeal after 11 years of litigation).

[5] *See, e.g.*, *Spinelli v. Capital One Bank*, 265 F.R.D. 598, 605 (M.D. Fla. 2009); *Thomas v. Bank of Am. Corp.*, 711 S.E.2d 371 (Ga. Ct. App. 2011); *Rose v. Bank of Am. Corp.*, No. CV 10-5067-VBF (JC), 2010 WL 8435397 (C.D. Cal. Nov. 5, 2010); *Decohen v. Abbasi, LLC*, Civil No. WDQ-10-3157, 2011 WL 3438625 (D. Md. July 26, 2011); *Denton v. Dep't Stores Nat'l Bank*, No. C10-5830RBL, 2011 WL 3298890 (W.D. Wash. Aug. 1, 2011).

1  and disability benefit requests, and the requirement to register with a job service for involuntary

2  unemployment benefit requests; and (2) allow independent contractors to claim involuntary

3  unemployment benefits upon furnishing evidence of the termination of the business relationship

4  with the company or entity that formed the basis of their employment; (3) for Class Members

5  currently enrolled in CPP, provide two additional months of CPP at no cost, and (4) enhance

6  settlement communications to remind customers about benefits and reporting period requirements

7  for unemployment and disability benefits.  These business practice changes provide tangible

8  benefits to the Class.

9       All Class Members who submit valid claims will be eligible for recovery.  This

10  distribution is fair, adequate, and reasonable.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454,

11  459 (9th Cir. 2000) (noting that settlement amounting to only a fraction of potential recovery may

12  still be fair); *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *8

13  (N.D. Cal. Apr. 1, 2011).

14       This Settlement Fund created by the Settlement is within the range of other settlement

15  funds in similar settled payment protection litigations.  *See Kardonick, et al., v. JP Morgan Chase*

16  *& Co, et al.,* No. 1:10-cv-23235-WMH, S.D. Fla. (Miami), ($20 million settlement fund where

17  over 15 million notices were distributed); *Walker, et al., v. Discover Financial Services, Inc., et*

18  *al.,* No. 1:10-cv-06994, N.D. Ill., ($10.5 million settlement fund where over 10 million notices

19  were distributed); *Esslinger v. HSBC Bank Inc., et al*., No. 10-cv-3213 BMS, E.D. Pa., ($23.5

20  million settlement fund where over 16 million notices were distributed); Joint Decl., ¶ 31.

21       Thus, this factor weighs in favor of final approval of the Settlement.

22       **4.      The Stage of Proceedings and Discovery Thus Far Has Enabled
                    Sufficient Evaluation of the Merits of the Claims**

23       In this case, Plaintiffs' Counsel are able to evaluate the strengths and weaknesses of

24  Plaintiffs' claims, particularly given the motion practice, formal discovery, and data analysis that

25  have occurred.  *Cf.  In re TD Ameritrade Account Holder Litig.*, Nos. C07-2852 SBA, C074903

26  SBA, 2011 WL 4079226, at *6 (N.D. Cal. Sept. 13, 2011) (approving settlement after the filing of

27

28

1  a motion to dismiss and prior to significant discovery).[6]

2       Here, the record has been developed through formal and informal discovery (including a

3  pre-mediation interview concerning settlement class data, and post-settlement interviews with

4  three executives to confirm the reasonableness of the Settlement) and motion practice sufficient

5  for the parties to evaluate the merits of the claims.  Thus, this factor weighs in favor of final

6  approval of the Settlement.

7         **5.**       **Counsel Are Experienced in Litigation of Class Cases and of Cases Involving Credit Card Protection Products**

8

9       Counsel for the parties are experienced in the litigation, certification, trial, and settlement

10 of nationwide consumer class action cases.  Joint Decl., ¶¶ 57-60.  Counsel's opinion is often

   accorded significant weight.  *See Carter v. Anderson Merch., L.P.*, No. EDCV 08-0025-VAP
11
   (OPx), 2010 WL 1946784, at *8 (C.D. Cal. May 11, 2010) ("Counsel's opinion is accorded
12
   considerable weight."); *Riker v. Gibbons*, No. 3:08-cv-00115-LRH-VPC, 2010 WL 4366012, at
13
   *4 (D. Nev. Oct. 28, 2010) ("The recommendation of experienced counsel in favor of settlement
14
   carries a 'great deal of weight' in a court's determination of the reasonableness of a settlement.").
15
        Plaintiffs' Counsel are particularly well-positioned to evaluate the strengths and
16
   weaknesses of Plaintiffs' case, as well as the appropriate basis upon which to settle it, given that
17
   they have successfully litigated and resolved other cases involving banks' debt suspension and
18
   debt cancellion products.[7]  These other litigations provided Plaintiffs' Counsel with significant
19
   insight into the payment protection products offered by credit card companies, which was
20
   instrumental in fashioning an effective litigation strategy and case valuation model. Thus, through
21
   their substantial efforts to date, Plaintiffs and Plaintiffs' Counsel have obtained a sufficient
22

23 _____

24 [6] Courts regularly approve settlements reached relatively early in litigation.  *See Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *15 (N.D. Cal. Jan. 26, 2007)
   ("Class counsel achieved an excellent result for the class members by settling the instant action
25 promptly."), *aff'd*, 331 F. App'x. 452, 457 (9th Cir. 2009).
   [7] *See Spinelli, et al., v. Capital One Bank (USA) N.A., et al.,* No. 8:08-cv-00132-VCM-EAJ, M.D.
26 Fla., Dkt. # 147 and 231 (class certification followed by a settlement); *Kardonick, et al., v. JP
   Morgan Chase & Co, et al.,* No. 1:10-cv-23235-WMH, S.D. Fla. (Miami), Dkt. # 23, 24, 384
27 (final approval granted); *Walker, et al., v. Discover Financial Services, Inc., et al.,* No. 1:10-cv-
   06994, N.D. Ill., Dkt. # 177 (final approval granted); *Esslinger v. HSBC Bank Inc., et al*., No. 10-
28 cv-3213 BMS, E.D. Pa., Dkt. # 140 (final approval granted); Joint Decl., ¶ 58.

1  understanding of the merits of their claims against Defendants and the defenses available to

2  Defendants to effectuate a fair settlement.  Thus, this factor weighs in favor of final approval of

3  the Settlement.

### 6.   The Presence of a Governmental Participant

5  This factor is not at issue as there is no governmental participant involved in the litigation.

### 7.   The Reaction of the Class to the Proposed Settlement

7  "It is established that the absence of a large number of objections to a proposed class

8  action settlement raises a strong presumption that the terms of a proposed class settlement action

9  are favorable to the class members."  *In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1043

10  (N.D. Cal. 2008).

11  Class Members have had a very favorable reaction to the Settlement.  As of November 28,

12  2012, notice has been disseminated by either U.S. Mail to over 4 million Class Members.

13  Sherwood Decl., ¶ 8.  At the same time, only 144 Class Members have sought to exclude

14  themselves from the Settlement; thus under 0.000036% of the Settlement Class sought exclusion.

15  Furthermore, only one Class Member has objected to the Settlement.  The lack of objections and

16  minimal exclusions further demonstrates the fairness of the Settlement.  *Churchill Village LLC,*

17  361 F.3d at 577 (upholding approval of settlement where there were 45 objectors and 500 opt-

18  outs out of a notification pool of 900,000); *Chun-Hoon,* 716 F. Supp. 2d at 852 (16 opt-outs in a

19  329 member class supported settlement).[8]

20  Thus, this factor weighs in favor of final approval of the Settlement.

### V.   THE NOTICE TO THE CLASS SATISFIES DUE PROCESS

22  Rule 23 requires that the Settlement Class receive "the best notice that is practicable under

---

[8] In a letter that did not comply with the procedures required by the Court, a single Class Member objected to the amount of the Settlement and to any attorneys' fees being awarded to Plaintiffs' counsel.  *See* Sherwood Decl., ¶15 & Exh. C.  As Class Counsel may discuss further in the reply brief, the objector's position fails to acknowledge that the "best possible" recovery must be tempered by the risks of further litigation.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion").  The objector's request that Bank of America pay all attorneys' fees misunderstands that, under the common fund approach, Bank of America will pay any fees awarded by the Court.

1  the circumstances, including individual notice to all members who can be identified through

2  reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); accord *Eisen v. Carlisle & Jacquelin*, 417 U.S.

3  156, 173 (1974). "Neither Rule 23 nor due process require 'receipt of actual notice by all class

4  members;' rather, 'notice should be mailed to the last known addresses of those who can be

5  identified and publication used to notify the others.'" *Mangone v. First USA Bank*, 206 F.R.D.

6  222, 231 (S.D. Ill. 2001) (internal citations omitted).

7      The Notice, the form of which has already been approved by this Court, was mailed

8  directly to almost eight million recipients informing potential class members. Sherwood Decl., ¶

9  8; Beck Decl., ¶¶ 3-6. As explained in ¶¶ 40-45 of the Joint Declaration, the Notice provided to

10  the class members was sufficient to satisfy the requirements of due process because it described

11  "the substantive claims . . . [and] contain[s] information reasonably necessary to make a decision

12  to remain a class member and be bound by the final judgment." *In re Nissan Motor Corp.*

13  *Antitrust Litig.*, 552 F.2d 1088, 1104-05 (5th Cir. 1977).

14       As ordered by the Court, the Settlement Administrator mailed the Notice to each Class

15  Member whose interests would be affected by the proposed settlement, and who was identified

16  from the records maintained by Defendants. *See* Sherwood Dec., ¶7. In addition, Defendants

17  also provided notice forms to current customers by U.S. mail. Beck Decl., ¶¶ 3-6. The Notice

18  program also included Internet placement and publication of Notice in the October 29, 2012

19  edition of USA Today. *See* Sherwood Dec., ¶11.

20  **VI.    THE PLAN OF ADMINISTRATION AND DISTRIBUTION IS FAIR AND**
    **REASONABLE AND SHOULD BE APPROVED**

21

22      Approval of a plan of allocation of settlement proceeds in a class action under Rule 23 is

23  "governed by the same standards of review applicable to approval of the settlement as a whole:

    the plan must be fair, reasonable and adequate." *In re Oracle Sec. Litig.*, No. C-90-0931-VRW,

24
    1994 WL 502054, at *1 (N.D. Cal. Jun. 18, 1994); *City of Seattle*, 955 F.2d at 1284-85. An

25
    allocation formula need only have a reasonable, rational basis, particularly if recommended by

26
    "experienced and competent" class counsel. *White v. NFL*, 822 F. Supp. 1389, 1420-24 (D.

27
    Minn. 1993), *aff'd*, 41 F.2d 402 (8th Cir. 1994); *see also In re Oracle*, 1994 WL 502054, at *1

28

1    ("A plan of allocation that reimburses class members based on the extent of their injuries is

2    generally reasonable.").

3         The plan of allocation, referred to as the Plan of Administration and Distribution, *see*

4    Settlement Agreement at 10 - 14, was formulated by counsel, in consultation with their respective

5    advisors, ensuring its fairness and reliability.

6         Furthermore, this Plan of Allocation provides substantial benefits to and addresses the

7    claims of two categories of Class Members.  Class Members who assert that they were enrolled in

8    CPP without their consent or received a CPP product that was not as it was advertised may submit

9    a claim for an estimated $50.00 Monetary Award, and Class Members who assert that they were

10   improperly denied CPP benefits or that they were denied benefits contrary to their expectations

11   are eligible for an estimated $100 Monetary Award.  These awards compare favorably to other

12   settlements involving payment protection products.  *Kardonick, et al., v. JP Morgan Chase & Co,*

13   *et al.*, No. 1:10-cv-23235-WMH, S.D. Fla. (Miami) ($60 to class members who believed their

14   claims were improperly denied, $30 to class members who believed they were enrolled without

15   their consent or were ineligible for the product, $15 for class members who were not satisfied

16   with the product); *Walker, et al., v. Discover Financial Services, Inc., et al.*, No. 1:10-cv-06994,

17   N.D. Ill., (same); *Esslinger v. HSBC Bank Inc., et al.*, No. 10-cv-3213 BMS, E.D. Pa. (same);

18   *Spinelli, et al., v. Capital One Bank (USA) N.A., et al.*, No. 8:08-cv-00132-VCM-EAJ ($15-63 to

19   class members whose claims were improperly denied, $15-28 to class members who never

20   attempted to activate benefits, $15-20 to class members who received benefits).  Joint Decl., ¶ 31.

21        Thus, because Plaintiffs' Counsel acted fairly in developing the Plan of Administration

22   and Distribution, Plaintiffs' Counsel respectfully submits that the proposed Plan of

23   Administration and Distribution is fair and reasonable and should be approved by the Court.

24   **VII.    THE *CY PRES* DISTRIBUTION OF UNCLAIMED FUNDS IS APPROPRIATE**

25        If any amounts remain in the Settlement Fund following deductions of claim notice and

26   settlement administration costs and taxes, any attorneys' fees and costs, and/or service award

27   awarded by the Court, and the *pro rata* distribution to all eligible Class Members with timely and

28   valid claims, the remaining amounts shall be distributed to a *cy pres* recipient, the Center for

1   Responsible Lending ("CRL").  Agreement § IV.B.5.  The CRL is a proper recipient of the *cy*

2   *pres* distribution.

3   "A *cy pres* award must be 'guided by (1) the objectives underlying statute(s) and (2) the

4   interests of silent class members' . . . and must not benefit a group 'too remote from the plaintiff

5   class'." *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012) (*citing Nachshin v. AOL, LLC*,

6   663 F.3d 1034, 1038-39 (9th Cir. 2011); *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904

7   F.2d 1301, 1308 (9th Cir. 1990)).  As a nonprofit, non-partisan organization that works to protect

8   consumers by fighting predatory lending practices, the CRL meets these standards.  As detailed

9   on its website, the CRL protects consumers through:  (1) research and consumer information-

10  sharing, (2) financial tips to consumers; (3) impact consumer litigation; and (4) and partnerships

11  with consumer groups, civil rights organizations, organized labor, faith-based communities, and

12  other community advocates.[9]

13  The CRL meets the Ninth Circuit standard for *cy pres* awards.  The CRL provides

14  consumer education about financial literacy issues involving credit cards, among other financial

15  products.  Its general mission includes a commitment to protecting consumers against all forms of

16  predatory lending.  Consumers and borrowers who benefit from CRL's education and advocacy

17  efforts are in situations similar to those in the Settlement Class, if not Class Members themselves.

18  Accordingly, a *cy pres* distribution of remaining funds (if any exist) to the CRL is appropriate.

19  **VIII.   CERTIFICATION OF THE CLASS IS APPROPRIATE**

20  A court may certify a settlement class if a plaintiff demonstrates that all of the

21  prerequisites of Federal Rule of Civil Procedure 23(a) have been met, and that at least one of the

22  requirements of Rule 23(b) have been met. *See* Fed. R. Civ. P. 23; *Hanlon*, 150 F.3d 1011; *see*

23  *also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 848-49 (1999). "In assessing Rule 23 requirements

24  in the settlement context, a court need not inquire whether the case, if tried, would present

25  intractable management problems[,] for the proposal is that there be no trial." *Browning v.*

26  *Yahoo! Inc.*, No. C04-01463 HRL, 2007 WL 4105971, at *8 (N.D. Cal. Nov. 16, 2007) (internal

27  quotations and alterations omitted); *see also, e.g.*, *Thieriot v. Celtic Ins. Co.*, No. C 10-04462 LB,

28  [9] *See* http://www.responsiblelending.org/about-us/ (last checked on November 26, 2012).

1  2011 WL 1522385 (N.D. Cal. Apr. 21, 2011) (certifying settlement class).

2       Plaintiff respectfully submit that for the same reasons put forth in the Motion for

3  Preliminary Approval of Class Settlement and Related Relief and Memorandum of Law in

4  Support, filed with the court on July 12, 2012 [Dkt. No. 72], which are incorporated herein, the

5  Court certify the Class, as stipulated by the parties, for settlement purposes. Settlement

6  Agreement ¶ VII.A.

7  **IX.    <u>CONCLUSION</u>**

8       Based on the foregoing, Plaintiffs respectfully request that the Court (1) certify the

9  Settlement Class, and (2) give final approval to the Settlement and the related relief requested

10  herein.

11

12  Dated: November 28, 2012          Respectfully submitted,

                                     LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
13

14                                   By: /s/ Rachel Geman
                                         Rachel Geman

15                                   Elizabeth Cabraser (State Bar No. 083151)
                                     Michael W. Sobol (State Bar No. 194857)
16                                   Daniel M. Hutchinson (State Bar No. 239458)
                                     LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
17                                   275 Battery Street, 29th Floor
                                     San Francisco, CA 94111-3339
18                                   Telephone: (415) 956-1000
                                     Facsimile: (415) 956-1008
19                                   ecabraser@lchb.com
                                     msobol@lchb.com
20                                   dhutchinson@lchb.com

21                                   Wendy R. Fleishman
                                     Rachel Geman (admitted pro hac vice)
22                                   LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                                     250 Hudson Street, 8th Floor
23                                   New York, NY 10013-1413
                                     Telephone: (212) 355-9500
24                                   Facsimile: (212) 355-9592
                                     wfleishman@lchb.com
25                                   rgeman@lchb.com

26

27

28

1                    Marc L. Godino
GLANCY BINKOW & GOLDBERG LLP
2                    1801 Avenue of the Stars, Suite 311
Los Angeles, CA 90067
3                    Telephone: (310) 201-9150
Facsimile: (310) 201-9160
4                    mgodino@glancylaw.com

5                    John J. Carey
Francis J. "Casey" Flynn, Jr.
6                    Tiffany M. Yiatras
CAREY DANIS & LOWE
7                    8235 Forsyth Blvd., Suite 1100
St. Louis, MO 63105
8                    Telephone: (800) 721-2519
Facsimile: (314) 721-0905
9                    jcarey@careydanis.com
casey@jefflowepc.com
10                 tyiatras@caseydanis.com

11                 *Class Counsel*

12                 Richard Golomb
Ruben Honik
13                 GOLOMB & HONIK PC
1515 Market Street, Suite 1100
14                 Philadelphia, PA 19102
Telephone: (215) 985-9177
15                 Facsimile: (215) 985-4169
rhonik@golombhonik.com
16                 rgolomb@golombhonik.com

17                 J. Allen Carney
Randall K. Pulliam
18                 CARNEY WILLIAMS BATES PULLIAM &
BOWMAN PLLC
19                 11311 Arcade Drive, Suite 200
Little Rock, AK 72212
20                 Telephone: (501) 312-8500
Facsimile: (501) 312-8505
21                 acarney@carneywilliams.com
rpulliam@carneywilliams.com
22

23                 Brett Cebulash
Kevin S. Landau
24                 TAUS, CEBULASH & LANDAU, LLP
80 Maiden Lane, Suite 1204
25                 New York, NY 10038
Telephone: (212) 931-0704
26                 bcebulash@tcllaw.com
klandau@tcllaw.com

27

28

1068542.1                 - 22 -                 FINAL APPROVAL OF CLASS SETTLEMENT
MD No. 3:11-md-02269 TEH

Steve Owings
OWINGS LAW FIRM
1400 Brookwood
Little Rock, AR 72202
Telephone: (501) 661-9999
Facsimile: (501) 661-8393
sowings@owingslawfirm.com

David S. Paris
Ross Schmierer
PARIS ACKERMAN & SCHMIERER LLP
101 Eisenhower Parkway
Roseland, NJ 07068
Telephone: (973) 228-6667
Facsimile: (973) 629-1246
david@paslawfirm.com
ross@paslawfirm.com

Bruce Nagel
Jay Rice
Diane Sammons
NAGEL RICE, LLP
103 Eisenhower Parkway
Roseland, NJ 07068
Telephone: (973) 618-0400
Facsimile (973) 618-9194
bnagel@nagelrice.com
jrice@nagelrice.com
dsammons@nagelrice.com

*Attorneys for Plaintiffs and Additional Counsel for the Class*

## CERTIFICATE OF SERVICE

I hereby certify that, on November 28, 2012, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send notification of such filing to all attorneys of record.

_____/s/_____