UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN RE: BANK OF AMERICA CREDIT
PROTECTION MARKETING AND
SALES PRACTICES LITIGATION

MD No. 3:11-md-02269 TEH

MDL Docket No. 2269

## DECLARATION OF JONATHAN B. MARKS

1. I am Jonathan B. Marks, a Mediator and Arbitrator at MARKSADR, LLC, in Bethesda, Maryland.

2. I received my B.A. *Cum Laude* from Harvard College in 1966 and my J.D. *Cum Laude* from Harvard Law School in 1972. At Harvard Law School, I was an editor and then President of the Harvard Law Review.

3. I began my legal career as an Assistant United States Attorney for the District of Columbia. Following this, I was an Associate and Partner at Munger, Tolles & Olson in Los Angeles. My practice primarily involved corporate and commercial litigation. I left private practice in 1979 to serve as Counsel and Associate Director for Planning and Evaluation for the Peace Corps, and then as General Counsel of the United States International Development Cooperation Agency.

4. In 1981, I co-founded and served as Chairman of Endispute, which provided mediation, arbitration and other dispute resolution services. In August, 1994, Endispute merged with Judicial Arbitration and Mediation Services to form J·A·M·S/Endispute. I served as Vice-Chairman of the Board of Directors of J·A·M·S/Endispute and Chairman of the firm's Executive

1

Committee, which oversaw professional practice issues, until September 1999, when I formed MARKSADR, LLC. I devote all my professional time to serving as a mediator and arbitrator.

5. I have extensive experience in mediation, arbitration and other dispute resolution assistance in litigation or pre-litigation disputes arising out of, for example, disputes involving the sale and acquisition of businesses; commercial activities; all aspects of construction; professional malpractice; securities disputes; consumer class actions; ERISA-related disputes; claims against officers and directors of financial institutions and other corporations; insurance coverage; environmental claims; government contract claims; and high stakes personal injury and product liability claims and lawsuits.

6. The Parties retained me in April, 2012, to mediate the above-referenced case.

7. The mediation process was confidential, but both Parties have authorized me to inform the Court of the matters presented in this declaration. I make this declaration based on personal knowledge and am competent to testify to the matters set out herein.

8. The purpose of the mediation was to work with the Parties to explore whether they could reach a settlement of this matter, based on a joint and separate evaluation of the risks and costs each side faced in continued litigation.

9. On April 13, 2012, I had a joint telephone conference with counsel in order to understand the nature and status of the case. Based on these discussions, I proposed, and the Parties agreed to, a mediation process aimed at allowing me and each Party to better understand the strengths and weaknesses of each side's case and the risks attendant to trial and appeal, as well as to explore appropriate monetary and non-monetary relief.

10. On April 16, 2012, the Parties provided me with pre-existing materials relating to the ongoing litigation. On April 26, 2012, the Parties provided me with additional pre-existing materials.

11.     On April 27, 2012, the Parties provided me with their mediation submissions, including exhibits and case law.

12.     On April 30, 2012, I conducted *ex parte* pre-mediation telephone conferences with each side.

13.     Before and after these *ex parte* discussions, I spent a considerable amount of time reviewing the substantive materials that each of the Parties had provided me, in preparation for a scheduled mediation session.

14.     I convened a mediation session in Washington, D.C. on May 2, 2012, had further joint and separate post-mediation-session telephone conversations with each side, and convened an additional mediation session, also in Washington, D.C., on May 24, 2012. In attendance at each of the two mediation sessions were class counsel, Bank of America outside and inside counsel, and a Bank of America business representative.

15.     During the mediation sessions, we focused on key issues that each side contended would be relevant to the likely outcome of the case if settlement were not reached.

16.     During multiple *ex parte* and joint meetings, proposals and counter-proposals for settlement were exchanged and discussed, touching both on monetary relief and on specific issues relating to charged off accounts, current account holders, notice and confirmatory discovery. At the end of the May 2nd mediation session, there was a substantial gap between Plaintiffs' monetary settlement demand and the Bank of American offer. This gap was narrowed somewhat during telephonic interactions after May 2nd.

17.     During the May 24th mediation session, there were further detailed discussions about the reasons why each side believed further monetary concessions from the other side were justified, based on each side's view of the strengths and weaknesses of both sides' cases. Based on these discussions, each side made additional monetary concessions. Ultimately, with the

Parties' agreement, I presented a Mediator's Proposal with regard to the monetary amount of the settlement to each side. Both Parties accepted my proposal, subject to working out additional settlement terms. They then negotiated and reached agreement on key elements of a draft Term Sheet. Thereafter, the Parties worked together without my assistance to prepare appropriate papers to begin the process of seeking court approval.

18. Throughout the entire mediation process, it was clear to me that each of the Parties is represented by experienced and competent counsel, willing, if necessary, to litigate the matter to conclusion.

19. The settlement effort at the mediation session included extensive exchanges of views on the merits and arms-length negotiations, in which each side worked to persuade the other to modify positions based on reevaluation of risks faced if the case did not settle.

20. In my view, counsel for each Party were effective advocates for their clients and effective participants in the effort to reach a settlement that fairly valued the risks and opportunities of each Party in the litigation.

21. I observed nothing that suggested any collusion or other untoward behavior on the part of counsel for any Party. In fact, it was apparent that this was not the case.

22. The ultimate terms of the settlement represented a compromise of the Parties' initial positions, but in my view these compromises were the product of the Parties' assessment of the perceived relative strengths and weaknesses of their positions, and the risks inherent in continued litigation.

23. Based on my extensive review of case exhibits, the Parties' mediation submissions, and the Parties' merits-related dialogue at the mediation, the settlement reached by the Parties is consistent with the judgments I reached about the strengths and weaknesses of the Parties' cases.

Dated: November 26, 2012

_____
JONATHAN B. MARKS

State of __Maryland__ }
} SS
County of __Montgomery__ }

On this the 26th day of November, 2012, before me, Maureen R. Hamilton, the undersigned Notary Public, personally appeared Jonathan B. Marks, personally known to me to be the person whose name is subscribed to the within instrument, and acknowledged to me that he executed the same for the purposes therein stated.

WITNESS my hand and official seal.

_____
Signature of Notary Public

MAUREEN R. HAMILTON
Notary Public
Montgomery County
Maryland
My Commission Expires Mar 15, 2014

5