Rachel Geman (admitted *pro hac vice*)
rgeman@lchb.com
LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

Elizabeth Cabraser (State Bar No. 083151)
Michael W. Sobol (State Bar No. 194857)
Daniel M. Hutchinson (State Bar No. 239458)
LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
ecabraser@lchb.com
msobol@lchb.com
dhutchinson@lchb.com

Marc Godino
GLANCY BINKOW & GOLDBERG LLP
1801 Avenue of the Stars, Suite 311
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
mgodino@glancylaw.com

John J. Carey
Francis J. "Casey" Flynn, Jr.
Tiffany M. Yiatras
CAREY DANIS & LOWE
8235 Forsyth Blvd., Suite 1100
St. Louis, MO 63105
Telephone: (800) 721-2519
Facsimile: (314) 721-0905
jcarey@careydanis.com
casey@jefflowepc.com
tyiatras@caseydanis.com

*Class Counsel*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: BANK OF AMERICA CREDIT PROTECTION MARKETING AND SALES PRACTICES LITIGATION<br><br>THIS DOCUMENT RELATES TO ALL ACTIONS | MD No. 3:11-md-02269 TEH<br><br>MDL Docket No. 2269<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARDS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date: January 14, 2013<br>Time: 10:00 a.m.<br>Location: Courtroom 2, 17th Floor<br>The Honorable Thelton E. Henderson |

1

**TABLE OF CONTENTS**

2

**Page**

3 NOTICE OF MOTION AND MOTION ................................................................. 1

4 STATEMENT OF ISSUES TO BE DECIDED (CIVIL L.R. 7-4(A)(3)) .................... 1

 MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 2

5 INTRODUCTION ........................................................................................... 2

6      I.      RELEVANT FACTUAL AND PROCEDURAL BACKGROUND .................... 3

7           A.     Background ............................................................................. 3

           B.     The Arevalo Action ................................................................ 3

8           C.     The MDL Proceedings ............................................................ 4

9           D.     Confirmatory Discovery ......................................................... 6

           E.     The Settlement ...................................................................... 7

10

      II.     CLASS COUNSEL'S REQUEST FOR 25% OF THE COMMON FUND

11           IS WELL SUPPORTED. ................................................................... 7

12           A.     Application of the Percentage-of-the-Fund Method Is Appropriate. .......... 8

13           B.     The Percentage-of-the-Fund Analysis Supports Class Counsel's Fee
                Request. ................................................................................ 9

14                1.     Class Counsel Have Obtained An Excellent Result for the
                     Class. ......................................................................... 10

15                2.     The Risk Involved with the Litigation Supports the Fee
                       Request. ...................................................................... 11

16                3.     The Skill Required and Quality of Counsel's Work Supports
17                     the Fee Request. ........................................................... 13

18                 4.     Class Counsel's Willingness to Work on Contingency
                     Supports the Fee Request. ............................................... 13

19                5.     The Requested Fee Comports With, or Is Less Than, Fees in
                     Similar Actions. ........................................................... 14

20            C.     A Lodestar-Multiplier Cross-Check Confirms the Reasonableness
                of the Requested Fee. ............................................................. 15

21                1.     Plaintiffs' Counsel's Lodestar is Reasonable. ...................... 16

22                2.     A Multiplier is Warranted. ............................................ 17

23      III.     THE PAYMENT OF COSTS IS FAIR AND REASONABLE. ...................... 18

      IV.     THE REQUESTED SERVICE AWARDS FOR PLAINTIFFS ARE
24           REASONABLE. ........................................................................... 19

25      V.      CONCLUSION .............................................................................. 20

26

27

28

1067375.2                 - i -            NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES,
                                              REIMBURSEMENT OF EXPENSES, SERVICE AWARDS
                                                MD NO. 3:11-MD-02269 TEH

# TABLE OF AUTHORITIES

**Page**

## CASES

*Allapattah Servs., Inc. v. Exxon Corp.*,
454 F. Supp. 2d 1185 (S.D. Fla. 2006) ................................................................. 14

*Antonopulos v. N. Am. Thoroughbreds, Inc.*,
1991 WL 427893 (S.D. Cal. May 6, 1991) ............................................................ 14

*Arevalo v. Bank of Am. Corp.*,
No. C10-4959 TEH, 2011 U.S. Dist. LEXIS 34151 (N.D. Cal. Mar. 29, 2011) ............. 4, 5, 12

*Blum v. Stenson*,
465 U.S. 886 (1994) ........................................................................................ 17

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) .......................................................................................... 8

*Chavez v. WIS Holding Corp.*,
2010 U.S. Dist. LEXIS 56138 (S.D. Cal. 2010) ..................................................... 19

*Cook v. Tiffany & Co.*,
2011 U.S. Dist. LEXIS 106230 (S.D. Cal. 2011) .................................................... 19

*Craft v. County of San Bernardino*,
624 F. Supp. 2d 1113 (C.D. Cal. 2008) .......................................................... 16, 18

*Decohen v. Abbassi, LLC*,
Civil No. WDQ-10-3157, 2011 WL 3438625 (D. Md. July 26, 2011)....................... 12

*Denton v. Dep't Stores Nat'l Bank*,
Case No. C10-5830 RBL, 2011 U.S. Dist. LEXIS 84024 (W.D. Wash. Aug. 1, 2011).......... 12

*Esslinger v. HSBC Bank Inc., et al.*,
No. 10-cv-3213 BMS, E.D. Pa..................................................................... 15, 19

*Glass v. UBS Fin. Servs.*,
2007 U.S. Dist. LEXIS 8476 (N.D. Cal. Jan. 26, 2007) ........................................ 16

*Hanlon v. Chrysler Group*,
150 F.3d 1011 (9th Cir. 1998).................................................................. 7, 9, 16, 17

*Hartless v. Clorox Co.*,
273 F.R.D. 630 (S.D. Cal. 2011)......................................................................... 19

*HCL Partners Ltd. P'ship v. Leap Wireless Int'l, Inc.*,
2010 U.S. Dist. LEXIS 109829 (S.D. Cal. Oct. 15, 2010) ...................................... 16

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ......................................................................................... 10

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Activision Sec. Litig.*,
   723 F. Supp. 1373 (N.D. Cal. 1989) ................................................................ 8, 9

*In re Bank of America Credit Prot. Mktg. and Sales Practices Litig.*,
   MDL 2269 (J.P.M.L. Aug. 16, 2011) ................................................................ 4

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011)................................................................ passim

*In re Broadcom Corp. Sec. Litig.*,
   2005 U.S. Dist. LEXIS 41993 (C.D. Cal. Sept. 12, 2005)....................................... 12

*In re Charles Schwab Corp. Secs. Litig.*,
   2011 U.S. Dist. LEXIS 44547 (N.D. Cal. April 19, 2011) ....................................... 10

*In re Corel Corp. Inc. Sec. Litig.*,
   293 F. Supp. 2d 484 (E.D. Pa. 2003) ................................................................ 14

*In re CV Therapeutics, Inc. Securities Litig.*,
   2007 WL 1033478 (N.D. Cal. April 4, 2007) ................................................................ 15

*In re Ferrero Litig.*,
   2012 U.S. Dist. LEXIS 94900 (S.D. Cal. 2012) ....................................... 19

*In re Gen. Instruments Sec. Litig.*,
   209 F. Supp. 2d 423 (E.D. Pa. 2001) ................................................................ 14

*In re Heritage Bond Litig.*,
   2005 WL 1594403 (C.D. Cal. Jun. 10, 2005) ................................................................ 14

*In re HPL Techs., Inc., Sec. Litig.*,
   366 F. Supp. 2d 912 (N.D. Cal. 2005) ................................................................ 13

*In re Linerboard Antitrust Litig.*,
   2004 U.S. Dist. LEXIS 10532 (E.D. Pa. Jun. 2, 2004) ........................................... 14

*In re M.D.C. Holdings Sec. Litig.*,
   1990 WL 454747 (S.D. Cal. Aug. 30, 1990) ................................................................ 14

*In re Media Vision Tech. Sec. Litig.*,
   913 F. Supp. 1362 (N.D. Cal. 1995) ................................................................ 18, 19

*In re Medical X-Ray Film Antitrust Litig.*,
   1998 U.S. Dist. LEXIS 14888 (E.D.N.Y. Aug. 7, 1998)....................................... 14

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000)................................................................ 9, 14

*In re Mercury Interactive Corp.*,
   618 F.3d 988 (9th Cir. 2010)................................................................ 7

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ........................................................................... passim

*In re Public Serv. Co. of New Mexico*,
   1992 WL 278452 (S.D. Cal. July 28, 1992) ........................................................................... 14

*In re Relafen Antitrust Litig.*,
   2004 U.S. Dist. LEXIS 28801 (D. Mass. Apr. 9, 2004) ........................................................ 15

*In re Rite Aid Corp. Sec. Litig.*,
   396 F.3d 294 (3d Cir. 2005) .................................................................................................... 15

*In re Safety Components, Inc. Sec. Litig.*,
   166 F. Supp. 2d 72 (D N.J. 2001) ........................................................................................... 18

*In re Sumitomo Copper Litig.*,
   74 F. Supp. 2d 393 (S.D.N.Y. 1999) ....................................................................................... 15

*In re Visa Check/Mastermoney Antitrust Litig.*,
   297 F. Supp. 2d 503 (E.D.N.Y 2003) ...................................................................................... 11

*In re Wash. Pub. Power Supply Sys. Sec Litig.*,
   19 F.3d 1291 (9th Cir. 1994) ................................................................................................... 17

*In re Washington Public Power Supply System Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) ................................................................................................... 13

*Jacobs v. Cal. State Auto. Ass'n Inter-Insurance Bureau*,
   2009 U.S. Dist. LEXIS 101586 (N.D. Cal. Oct. 27, 2009) ..................................................... 16

*Kerr v. Screen Extras Guild, Inc.*,
   526 F.2d 67 (9th Cir. 1975) ..................................................................................................... 16

*Knight v. Red Door Salons, Inc.*,
   2009 U.S. Dist. LEXIS 11149 (N.D. Cal. Feb. 2, 2009) .................................................... 8, 14

*Kurzweil v. Philip Morris Cos.*,
   1999 U.S. Dist. LEXIS 18378 (S.D.N.Y. Nov. 30, 1999) ...................................................... 15

*Linney v. Cellular Alaska P'ship*,
   1997 U.S. Dist. LEXIS 24300 (N.D. Cal. July 18, 1997) ....................................................... 11

*Mattiello, Jr. ex rel. Mattiello, Sr. v. Bank of America Corporation, et al.*,
   No. 2:11-05957-FSH-PS ........................................................................................................... 4

*Meijer v. Abbott Laboratories*,
   C-07-05985 (N.D. Cal. Aug. 11, 2011) .................................................................................. 15

*Melendez v. Bank of America, N.A., et al.*,
   No. 1:11-cv-05467-PKC .............................................................................................................. 4

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Mills v. Electric Auto-Lite Co.*,
   396 U.S. 375 (1970) ................................................................................. 18

4

*Patrick, et al. v. Bank of America Corp.*,
   No. 3:11-cv-03483-TEH .......................................................................... 4

5

6

*Paul, Johnson, Alston & Hunt v. Graulty*,
   886 F.2d 268 (9th Cir. 1989).................................................................... 8

7

*Rodriguez v. West Publishing Corp.*,
   563 F.3d 948 (9th Cir. 2009).................................................................. 19

8

9

*Rose v. Bank of Am. Corp.*,
   No. 2:10-CV-5067-VBF-JC, 2010 U.S. Dist. LEXIS 143516 (C.D. Cal. Nov. 5, 2010)........ 12

10

*Ross v. US Bank Nat. Ass'n*,
   2010 U.S. Dist. LEXIS 107857 (N.D. Cal. Sept. 29, 2010) .................................... 19

11

12

*Ross, et al. v. Bank of America Corporation, et al.*,
   No. 3:10-cv-05829-RBL ........................................................................ 4

13

*Six Mexican Workers v. Ariz. Citrus Growers*,
   904 F.2d 1301 (9th Cir. 1990)................................................................... 9

14

15

*Spinelli v. Capital One Bank*,
   265 F.R.D. 598 (M.D. Fla. Sept. 18, 2009).............................................. 12

16

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir 2003)............................................................... 7, 11

17

18

*Steiner v. Am. Broad. Co.*,
   248 Fed. Appx. 780 (9th Cir. 2007)........................................................ 18

19

*Stuart, et al. v. Bank of America, N.A., et al.*,
   No. 8:11-cv-01678-EAK-MAP ............................................................. 4

20

21

*Thomas v. Bank of Am. Corp.*,
   711 S.E.2d 371 (Ga. Ct. App. 2011) ..................................................... 12

22

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993)................................................................ 9, 13

23

24

*Van Vranken v. Atlantic Richfield Co.*,
   901 F. Supp. 294 (N.D. Cal. 1995) ...................................................... 18

25

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002)........................................................ passim

26

27

*Walker, et al., v. Discover Financial Services, Inc., et al.*,
   No. 1:10-cv-06994, N.D. Ill., .............................................................. 15

28

**TABLE OF AUTHORITIES**
(continued)

Page

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
  396 F.3d 96 (2d Cir. 2005)................................................................................. 18

*Walton, et al. v. Bank of America Corporation, et al.,*
  No. 2:11-cv-00277-PJG ..................................................................................... 4

*Wong, et al. v. Bank of America Corp., et al.,*
  No. 3:11-cv-00577-GPM-SCW .......................................................................... 4

**STATUTES**

U.S.C. §§ 1601 *et seq.*................................................................................................ 5

**RULES**

Federal Rules of Civil Procedure
  Rule 23(e)....................................................................................................... 1, 7
  Rule 42(a)........................................................................................................... 4

**TREATISES**

3 *Newberg on Class Actions*
  § 14.03............................................................................................................ 18

Federal Judicial Center, *Manual for Complex Litigation* (4th ed. 2004)
  14.122............................................................................................................. 17
  § 27.71............................................................................................................ 10

**OTHER AUTHORITIES**

Theodore Eisenberg & Geoffrey P. Miller, *Attorneys' Fees and Expenses in Class Action
  Settlements: 1993-2008*, 7 Journal of Empirical Legal Studies 248 (2010) ............................. 9

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that, pursuant to the Court's Order Preliminarily Approving Settlement, Conditionally Certifying Class for Settlement Purposes, Approving Form and Manner of Class Notice, and Setting Date for Final Approval of Settlement (Dkt. No. 74) ("Preliminary Approval Order"), on January 14, 2013, at 10:00 a.m., before the Honorable Thelton E. Henderson of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, Named Plaintiffs Juan Arevalo, Mitchell Sandow, Jason Chan, Blanche Melendez, Dominick Mattiello, Jr., as Executor of the Estate of Dominick M. Mattiello, Rose Rowley, Wilfred Somers, Vivian Somers, Cheryl Ross, Maryellen Richmond, Frederick Richmond, Maude Stewart, Marion Walton, and Angela Zeleny (collectively, "Named Plaintiffs" or "Plaintiffs") will and hereby do move the Court for an order, pursuant to Fed. R. Civ. P. 23(e) granting the instant Motion for Attorneys' Fees, Reimbursement of Expenses, and Service Awards.

This Motion is based on this Notice of Motion; the Memorandum of Points and Authorities in support thereof; the Joint Declaration of Class Counsel in Support of Plaintiffs' Motion for Final Approval of Class Settlement and Motion for Attorneys' Fees, Reimbursement of Expenses, and Service Awards; all pleadings and papers filed herein; arguments of counsel; and any other matters properly before the Court.

**STATEMENT OF ISSUES TO BE DECIDED (CIVIL L.R. 7-4(A)(3))**

1.      Whether the requested attorneys' fees of 25% of the Settlement Fund should be approved.

2.      Whether the requested reimbursement of expenses in the amount of $93,352 should be approved.

3.      Whether the requested Service Awards in the amount of $3,000 for twelve Plaintiffs should be approved.

### MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Counsel for plaintiffs Juan Arevalo, Mitchell Sandow, Jason Chan, Blanche Melendez, Dominick Mattiello, Jr., as Executor of the Estate of Dominick M. Mattiello, Rose Rowley, Wilfred Somers, Vivian Somers, Cheryl Ross, Maryellen Richmond, Frederick Richmond, Maude Stewart, Marion Walton, and Angela Zeleny (collectively, "Named Plaintiffs" or "Plaintiffs") respectfully move this Court for: (a) an award of attorneys' fees in the amount of $5,000,000 for distribution to Plaintiffs' Counsel, which is 25% of the common fund created for the Class; (b) reimbursement from the Settlement Fund[1] of Plaintiffs' Counsel's reasonable out-of-pocket expenses of $93,352 necessarily incurred in the prosecution of the case; and (c) Service Awards to twelve Plaintiffs of $3,000 each.

Class Counsel seek fees under the percentage-of-the-fund method. Taking into account the value of the prospective practice changes — an additional core Settlement benefit for which the Ninth Circuit enhances the value of settlements for purposes of fee analyses – Class Counsel's request is conservative and entirely consistent with the Ninth Circuit's 25% benchmark in such cases. *See, e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1049 (9th Cir. 2002). Class Counsel's request is also supported by a lodestar-multiplier cross-check. Class Counsel seek a lodestar enhanced by a multiplier of 1.6, well within the range for such multipliers established by the Ninth Circuit. *Id.* at 1051 & n.6.

The Settlement Agreement – providing for: (1) a Settlement Fund of $20,000,000, (2) practice changes in Defendants' administration of CPP; (3) and multiple months of free service for CPP customers – reflects the expertise, skill, and efficient and effective case management of Class Counsel, as well as other the Plaintiffs' Counsel who comprised the Court-appointed Plaintiffs' Executive Committee. The contingency fee lawsuit involved risky, complex, and multi-state MDL litigation regarding Defendants' "Credit Protection Plus" products. The Settlement provides this nationwide Class of consumers with tens of millions of dollars,

---

[1] Unless otherwise indicated, the capitalized terms in this memorandum shall have the same meaning as specified in the Settlement Agreement.

1    significant prospective practice changes, and other benefits.  In light of this strong result, and for

2    the reasons discussed below, Class Counsel respectfully submit that the requested fees, expenses,

3    and Service Awards are well-supported and should be granted.

4    I.        **RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

5              A.        **Background**

6              This litigation arose from Defendants' imposition, marketing, sales, and/or administration

7    of products associated with their credit cards and certain lines of credit known as "Credit

8    Protection Plus" and other names (collectively "CPP").  Plaintiffs allege that consumers pay

9    monthly payments, but get nothing meaningful in return.  During the class period, Defendants

10   allegedly charged customers for CPP without the customers' permission ("slamming"), enrolled

11   customers in CPP through deceptive marketing based on misrepresentations and material

12   omissions, administered benefits contrary to the expectations of the Class, and/or improperly

13   denied benefits.

14            Before and after the contested MDL petition coordinated proceedings in this Court,

15   Plaintiffs' Counsel briefed and obtained rulings on Defendants' motions to dismiss, and engaged

16   in both formal and informal discovery.  After two full-day mediation sessions with the assistance

17   of an experienced mediator, Jonathan Marks, and after many hours of hard-fought negotiations,

18   Plaintiffs reached a settlement with Defendants.

19            Plaintiffs' Counsel engaged in confirmatory discovery to confirm and analyze key data,

20   including data related to the value of the practice changes achieved as a result of the settlement,

21   including interviews with three executives of Bank of America who were personally involved

22   with the Credit Protection products at issue in this class action litigation.  Under the Settlement

23   Agreement, Defendants are required to pay $20 million, institute practice changes in their

24   administration of CPP, and provide multiple months of free service for CPP customers.

25            B.        **The Arevalo Action**

26            On November 2, 2010, prior to the consolidation of this case, Plaintiffs Juan Arevalo and

27   Mitchell Sandow filed the first of the consolidated Bank of America Credit Protection cases in the

28   Northern District of California, alleging violations of California's consumer protection laws and

NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES,
REIMBURSEMENT OF EXPENSES, SERVICE AWARDS
MD NO. 3:11-MD-02269 TEH

1    consumer fraud.  *Arevalo, et al. v. Bank of America Corp., et al.*, Case No. 3:10-cv-04959-TEH.

2         Bank of America brought a motion to dismiss on December 29, 2010.  (Dkt. No. 9).  Bank

3    of America argued that it was not a proper party, that Plaintiffs' claims were preempted, and that

4    Plaintiffs had failed to state a claim for various causes of action.  The Court heard oral argument

5    on March 7, 2011.  On March 29, 2011, the Court granted in part and denied in part the motion,

6    denying Defendants' motion to dismiss based on preemption and motion to dismiss all claims

7    against Bank of America  (among other rulings), but dismissing certain claims.  *Arevalo v. Bank*

8    *of Am. Corp.*, No. C10-4959 TEH, 2011 U.S. Dist. LEXIS 34151, *40-42 (N.D. Cal. Mar. 29,

9    2011).

10        The *Arevalo* Plaintiffs filed a Second Amended Complaint on April 29, 2011, Dkt. No. 40,

11   which Defendants answered on May 27, 2011.  (Dkt. No. 44).  The Arevalo Plaintiffs had

12   therefore engaged in formal discovery at the time of the MDL transfer.

13       **C.    The MDL Proceedings**

14        Plaintiffs filed eight separate class actions against Defendants.[2]  Following a motion by

15   the *Arevalo*, *Ross*, and *Walton* Plaintiffs, the Judicial Panel on Multidistrict Litigation ("JPML")

16   issued two transfer orders, finding that the related actions shared "common factual questions

17   arising from the marketing, enrollment, sale, operation and/or administration of Bank of

18   America's credit protection plan," and conditionally transferring the *Wong*, *Stuart*, and *Melendez*

19   cases to this Court.  *In re Bank of America Credit Prot. Mktg. and Sales Practices Litig.*, MDL

20   2269 (J.P.M.L. Aug. 16, 2011) (Dkt. No. 32); Conditional Transfer Order ("CTO") (Dkt. No. 33)

21   conditionally transferring the Wong, Stuart, and Melendez cases to this Court.  The District Court

22   consolidated the Actions pursuant to Fed. R. Civ. P. 42(a) for all pretrial purposes.  Case No.

23   3:11-md-02269-TEH.  (Dkt. Nos. 11, 30).

24        Following the formation of a nine-firm Plaintiffs' Executive Committee, Plaintiffs'

25   _____
     [2] *Arevalo, et al. v. Bank of America Corporation, et al.*, No. 3:10-cv-04959-TEH; *Ross, et al. v.
     Bank of America Corporation, et al.*, No. 3:10-cv-05829-RBL; *Walton, et al. v. Bank of America*
26   *Corporation, et al.*, No. 2:11-cv-00277-PJG; *Patrick, et al. v. Bank of America Corp.,* No. 3:11-
     cv-03483-TEH; *Wong, et al. v. Bank of America Corp., et al.*, No. 3:11-cv-00577-GPM-SCW;
27   *Stuart, et al. v. Bank of America, N.A., et al.*, No. 8:11-cv-01678-EAK-MAP; *Melendez v. Bank of*
     *America, N.A., et al.*, No. 1:11-cv-05467-PKC, and *Mattiello, Jr. ex rel. Mattiello, Sr. v. Bank of*
28   *America Corporation, et al.*, No. 2:11-05957-FSH-PS.

1    Counsel worked quickly and efficiently to coordinate their efforts.  Joint Declaration of Class

2    Counsel in Support of Motion for Final Approval ("Joint Decl."), ¶¶ 12-17.  Plaintiffs' efforts

3    were assisted greatly by information obtained prior to the MDL transfer, including the formal

4    discovery from *Arevalo* action, their knowledge about the industry from many informal

5    interviews with Class Members across the country, and their prior experience in related consumer

6    actions against other companies and, in particular, in other cases challenging similar so-called

7    payment protection products.  *See id.*  Plaintiffs filed a Consolidated Complaint on December 13,

8    2011 (Dkt. No. 33). Plaintiffs brought nationwide class claims to recover damages and/or refunds

9    from Defendants for their violations of: (1) the Truth in Lending Act ("TILA"), 15 U.S.C.

10   §§ 1601 *et seq.*, (2) Delaware (and/or various states') consumer protection laws, (3) Delaware

11   breach of contract, (4) Delaware breach of the covenant of good faith and fair dealing, (5)

12   Delaware unjust enrichment, (6) the Delaware Fraud Act, for (7) injunctive relief and (8)

13   declaratory judgment.

14        On January 13, 2012, Defendants moved to dismiss in part Plaintiffs' unjust enrichment,

15   breach of contract, and breach of covenant of good faith and fair dealing claims. (Dkt. No. 37).

16   The parties briefed the motion extensively, including a second-round of supplemental briefing

17   ordered by the Court relating to choice of law.  (Dkt. Nos. 52, 54).  On March 13, 2012, the Court

18   held a hearing, focusing on particular questions the Court ordered the parties to address in a prior

19   order.  (Dkt. No. 57).  On April 3, 2012, the Court granted in part and denied in part Defendants'

20   partial motion to dismiss.  (Dkt. No. 58).  The Court dismissed without prejudice the Involuntary

21   Enrollment Plaintiffs' breach of contract claims and the unjust enrichment claim asserted by all

22   Plaintiffs.  *Id.* The Court upheld the breach of good faith and fair dealing claims.  *Id.*

23        While the parties briefed the motion to dismiss, Plaintiffs' Counsel conducted discovery.

24   Defendants responded to Plaintiffs' discovery requests and produced two productions containing

25   documents related to the named plaintiffs, relevant policies and procedures, disclosures, and

26   training documents.  Joint Decl., ¶¶ 13.  The parties engaged in a series of meet-and-confers about

27   Defendants' responses relating to, among other topics, Electronically-Stored Information ("ESI"),

28   and areas of disputed discovery relating to internal complaints and documents subject to alleged

1  privileges.  Joint Decl., ¶¶ 14.  The parties presented some of these contested issues, including

2  issues relating to ESI, to the Court in the context of addressing case status issues.  *See, e.g.*, Dkt.

3  No. 59.

4        On May 2, 2012 and May 24, 2012, following the submission of mediation statements, the

5  parties engaged in full day mediation sessions facilitated by a reputable and skilled mediator,

6  Jonathan B. Marks.  Declaration of Jonathan B. Marks ("Marks Decl."), ¶ 14; Joint Decl., ¶ 22.

7  The parties executed a Term Sheet on May 24, 2012, and, after a period of negotiation, executed a

8  Memorandum of Understanding on June 25, 2012.  Joint Decl., ¶¶ 24-26.

9        **D.**    **Confirmatory Discovery**

10        In preparation for the parties' mediation, Defendants provided Plaintiffs' Counsel with

11  extensive and detailed non-public data regarding Credit Protection enrollments and new

12  enrollments, benefit approval/denial history and revenues as well as enrollment channel

13  information, tenure in the products, average waiting times, and other product information, and

14  access to Defendants' data designee for questioning.  Joint Decl., ¶ 19.

15        After the mediation, the Plaintiffs engaged in further confirmatory discovery involving the

16  review of data and interviews with three executives of Bank of America who were personally

17  involved with the Credit Protection products at issue in this class action litigation.  Joint Decl., ¶

18  27.  First, as discussed above, Plaintiffs conducted a pre-mediation interview with Jody Morris,

19  Senior Vice President of Technology Operations for Credit Protection at Bank of America, about

20  the settlement class data to ensure that Plaintiffs could conduct an informed mediation.  Joint

21  Decl., ¶ 28.  Second, Plaintiffs held a full-day, in-person interview of three of Defendants'

22  representatives:  (1) Sanjeev Arjungi, Senior Vice President and Customer Analytics Executive at

23  Bank of America, (2) Mr. Morris, and (3) Jim Baker, Privacy Products Protection Executive for

24  Bank of America, with responsibility for managing the Outbound Telemarketing Channel.  Joint

25  Decl., ¶ 29.  Third, Plaintiffs held a follow-up telephonic interview with Mr. Arjungi on July 6,

26  2012, that addressed the specific value of the practice changes to the administration of CPP

27  negotiated as part of the settlement.  Joint Decl., ¶ 30.

28

1

     **E.**    **The Settlement**

2

     The Settlement provides for Defendants' payment of $20,000,000 into a Settlement Fund

3

for the benefit of the Class, practice changes in Defendants' administration of CPP, and multiple

4

months of free service for CPP customers.  This Court preliminarily approved the Settlement on

5

July 23, 2012 and ordered the dissemination of Notice to the Class.  Dkt. No. 74.  Among other

6

information, the Notice informed the Class of Class Counsel's intention to apply for an award of

7

attorneys' fees and expenses to Plaintiffs' Counsel amounting to not more than 33% of the

8

Settlement Fund – more than the 25% fee request made here.  Notice ¶ 41.  As of the present date,

9

no Class Member has properly objected to the attorneys' fees and costs request.[3]

10

**II.**    **CLASS COUNSEL'S REQUEST FOR 25% OF THE COMMON FUND IS WELL SUPPORTED.**

11

12

     Class Counsel seeks an award of attorneys' fees of $5,000,000, or 25% of the Settlement

13

Fund of $20 million (without accounting for the value of Settlement's practice changes) plus

14

requested expenses.

15

     "Attorneys' fees provisions included in proposed class action settlement agreements are,

16

like every other aspect of such agreements, subject to the determination whether the settlement is

17

'fundamentally fair, adequate, and reasonable.'"  *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir

18

2003) (quoting Fed. R. Civ. P. 23(e)).  Where counsel for a class seek fees from a common fund,

19

courts within the Ninth Circuit have discretion to use one of two methods to determine whether

20

the request is reasonable: "percentage-of-the-fund" or "lodestar/multiplier."  *Id.* at 963-64; *see*

21

*also In re Mercury Interactive Corp.*, 618 F.3d 988, 992 (9th Cir. 2010); *Vizcaino*, 290 F.3d at

22

1048–49 (9th Cir. 2002); *Hanlon v. Chrysler Group*, 150 F.3d 1011, 1029 (9th Cir. 1998).

23

"Though courts have discretion to choose which calculation method they use, their discretion

24

must be exercised so as to achieve a reasonable result."  *In re Bluetooth Headset Prods. Liab.*

25

---

[3] In a letter that was not properly filed, a single Class Member objected to attorneys' fees being awarded to Plaintiffs' Counsel on the basis that the objector felt that Bank of American should

26

pay the fees.  Declaration of Markham Sherwood in Support of Motion for Final Approval of Settlement ("Sherwood Decl."), ¶15 & Exh. C.  The objector's request misunderstands that, under

27

the common fund approach, Bank of America will pay any fees awarded by the Court.  The deadline for Class Members to file objections is December 13, 2012.  Plaintiffs will address the

28

substance of any additional objections relating to fees, if any, in the reply briefing.

*Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). Class Counsel's request for fees is reasonable under—and warrants application of—the percentage-of-the-fund analysis, a conclusion confirmed by the lodestar-multiplier cross-check that courts in the Ninth Circuit typically perform.

### A.    Application of the Percentage-of-the-Fund Method Is Appropriate.

The common fund doctrine rests on the understanding that attorneys should normally be paid by their clients. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (the United States Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund . . . is entitled to a reasonable attorney's fee from the fund as a whole"); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989) ("[I]t is well settled that the lawyer who creates a common fund is allowed an extra reward, beyond that which he has arranged with his client, so that he might share the wealth of those upon whom he has conferred a benefit."); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (considering attorneys' fees in securities settlement and noting that the common fund doctrine is "designed to prevent unjust enrichment by distributing the costs of litigation among those who benefit from the efforts of the litigants and their counsel").

Unsurprisingly, given this equitable principle, courts prefer a percentage-of-the-fund model over a lodestar-multiplier approach in cases where it is possible to ascertain the value of the settlement through the existence of a common fund and/or quantifiable practice changes. *See In re Bluetooth*, 654 F.3d at 942 ("Because the benefit to the class is easily quantified in common-fund settlements, we have allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar."); *In re Omnivision*, 559 F. Supp. 2d at 1046 ("[U]se of the percentage method in common fund cases appears to be dominant."); *Knight v. Red Door Salons, Inc.*, 2009 U.S. Dist. LEXIS 11149, *13 (N.D. Cal. Feb. 2, 2009) (same); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1374-78 (N.D. Cal. 1989) (discussing advantages of percentage of recovery method in common fund cases).

Further confirming courts' preference for awarding attorneys' fees in class cases on a percentage-of-the-fund-basis, an empirical study based on eighteen years of published opinions on settlements in 689 common fund class action and shareholder derivative settlements in both

- 8 -

state and federal courts found that: (1) 83% of cases employed the percentage-of-the-recovery
method, and (2) the number of courts employing the lodestar method has declined over time, from
13.6 percent from 1993-2002 to 9.6% from 2003 to 2008.  *See* Theodore Eisenberg & Geoffrey P.
Miller, *Attorneys' Fees and Expenses in Class Action Settlements: 1993-2008*, 7 Journal of
Empirical Legal Studies 248, 267-69 (2010) (attached as Exhibit T to the Joint Decl.).

By contrast, courts rely on the lodestar method under circumstances not applicable here,
*i.e.*, when "there is no way to gauge the net value of the settlement or of any percentage thereof."
*Hanlon*, 150 F.3d at 1029; *In re Bluetooth*, 654 F.3d at 941 (lodestar appropriate "where the relief
sought—and obtained—is often primarily injunctive in nature and thus not easily monetized").
This limited use of the lodestar method relates in part to its potential deterrent effect: "[I]t is
widely recognized that the lodestar method creates incentives for counsel to expend more hours
than may be necessary on litigating a case so as to recover a reasonable fee, since the lodestar
method does not reward early settlement."  *Vizcaino*, 290 F.3d at 1050 n.5; *see also In re
Activision*, 723 F. Supp. at 1378 (observing that application of the lodestar method may
encourage "abuses such as unjustified work" and therefore "does not achieve the stated purposes
of proportionality, predictability and protection of the class").

For these reasons, Class Counsel submit that the Court should use the standard
percentage-of-the-fund approach to determining the award of attorneys' fees in this action.

**B.     The Percentage-of-the-Fund Analysis Supports Class Counsel's Fee Request.**

Class Counsel's request for $5,000,000 in attorneys' fees—25% of the common—is fair
and reasonable under the circumstances of this case.  Twenty-five percent of the common fund is
the benchmark for an attorneys' fee award in the Ninth Circuit.  *See In re Bluetooth*, 654 F.3d at
942; *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993); *Six Mexican Workers
v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Paul, Johnson*, 886 F.2d at 272.
Indeed, even an award in excess of the benchmark may be proper under certain circumstances.
*Vizcaino*, 290 F.3d at 1048-1050.  Courts in the Ninth Circuit frequently award fees greater than
the benchmark.  *See, e.g.*, *Vizcaino*, 290 F.3d at 1048-1050; *In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454, 463 (9th Cir. 2000); *Omnivision*, 559 F. Supp. 2d at 1047 ("[I]n most common

1   fund cases, the award exceeds th[e] benchmark.").[4]  Based on this authority, and particularly

2   given the existence of injunctive relief in the settlement, Class Counsel's request for only the

3   benchmark is conservative.

4           Specifically, Class Counsel's request is supported by the five factors that federal courts in

5   the Ninth Circuit use to determine the reasonableness of fees when determining what percentage

6   of the fund to award in common fund cases:  (1) the results achieved; (2) the risk involved with

7   the litigation; (3) the skill required and quality of work by counsel; (4) the contingent nature of

8   the fee; and (5) awards made in similar cases.  *See, e.g.*, *Vizcaino*, 290 F.3d at 1048; *In re Charles

9   Schwab Corp. Secs. Litig.*, 2011 U.S. Dist. LEXIS 44547, *26 (N.D. Cal. April 19, 2011).

10  ### 1.      Class Counsel Have Obtained An Excellent Result for the Class.

11          The significant and prompt settlement that Class Counsel negotiated for the Class supports

12  the fee request.  The Supreme Court has held that in determining the amount of attorney's fees to

13  award, a court should examine "the degree of success obtained."  *Hensley v. Eckerhart*, 461 U.S.

14  424, 436 (1983); Federal Judicial Center, *Manual for Complex Litigation*, § 27.71, p.336 (4th ed.

15  2004) (the "fundamental focus is on the result actually achieved for class members").  "The

16  overall result and benefit to the class from the litigation is the most critical factor in granting a fee

17  award."  *In re Omnivision*, 559 F. Supp. 2d at 1046.

18          **Monetary Relief**:  Class Counsel have secured a $20 million common fund settlement,

19  out of which eligible Class Members who file a qualified claim will receive a Monetary Award.

20  Agreement § IV.A.  The amount of each Class Member's Monetary Award will be based on a *pro

21  rata* distribution, depending on the number of valid and timely claims.  Agreement § IV.B.4.  The

22  outstanding monetary relief that Class Counsel achieved here in the form of the Settlement Fund,

23  alone, justifies the requested fee award.

24          **Equitable Relief**:  The Ninth Circuit and other courts have repeatedly held that where, as

25  [4] *See also, e*.g., *Knight v. Red Door Salons, Inc.*, 2009 U.S. Dist. LEXIS 11149, at *17 (N.D. Cal.
    Feb. 2, 2009) (30%); *In re Public Serv. Co. of New Mexico*, 1992 U.S. Dist. LEXIS 14888, at *21

26  (S.D. Cal. July 28, 1992) (one-third); *Antonopulos v. N. Am. Thoroughbreds, Inc.*, 1991 U.S. Dist.
    LEXIS 12579, at *2 (S.D. Cal. May 6, 1991) (one-third); *In re M.D.C. Holdings Sec. Litig.*, 1990

27  U.S. Dist. LEXIS 15488, at *31-32 (S.D. Cal. Aug. 30, 1990) (30% plus expenses); *Garner v.
    State Farm*, 2010 U.S. Dist. LEXIS 49482, at *5-6 (N.D. Cal. Apr. 22, 2010) (30% plus

28  expenses).

here, class counsel achieves significant benefits that are not accounted for in the dollar value of

the common settlement fund, the court "should consider the value of [such] relief as a relevant

circumstance in determining what percentage of the common fund class counsel should receive as

attorneys' fees." *Staton*, 327 F.3d at 974; *see also Vizcaino*, 290 F.3d at 1049 (affirming

enhanced fee award where "the court found that counsel's performance generated benefits beyond

the cash settlement fund"); *Linney v. Cellular Alaska P'ship*, 1997 U.S. Dist. LEXIS 24300, *20

(N.D. Cal. July 18, 1997) (granting fee award of 1/3 of common fund where settlement provided

additional non-monetary relief); *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d

503, 525 (E.D.N.Y 2003) ("I agree that the substantial injunctive relief here should inform [the

court's] decision on awarding fees, and it has."). The valuable additional benefits achieved here

further support the requested fee award.

Here, the prospective practice changes include removal of certain of the alleged

impediments to CPP benefits claims raised by Plaintiffs throughout this litigation – waiver or

elimination of: (1) any waiting period for involuntary unemployment and disability benefit

requests; (2) the employer verification requirements for involuntary unemployment and disability

benefit requests; (3) the requirement to register with a job service for involuntary unemployment

benefit requests; and (4) any prohibition on independent contractors claiming involuntary

unemployment benefits upon furnishing evidence of the termination of the business relationship

with the company or entity that formed the basis of their employment. Agreement § IV.C.2.(b)-

(e). Class Members currently enrolled in CPP receive two additional months of CPP at no cost.

Agreement § IV.C.2.(a). And, Defendants must enhance settlement communications to remind

customers about benefits and reporting period requirements for unemployment and disability

benefits. Agreement § IV.C.2.(f). These changes will remain in effect while customers remain

eligible for benefit payments.

These additional benefits further support Plaintiffs' fee request.

### 2.     The Risk Involved with the Litigation Supports the Fee Request.

"The risk that further litigation might result in Plaintiffs not recovering at all, particularly

a case involving complicated legal issues, is a significant factor in the award of fees." *In re*

1   *Omnivision*, 559 F. Supp. 2d at 1046-47; *see also Vizcaino*, 290 F.3d at 1048 (risk of dismissal or

2   loss on class certification is relevant to evaluation of a requested fee).

3         To prevail in any ongoing litigation of this case, Plaintiffs would be required to

4   successfully litigate a number of complex legal issues at the center of their claims, including

5   unsettled and evolving preemption issues. As in most complex, muliti-district litigation,

6   Defendants would likely argue that the potential application of multiple states' laws would

7   preclude certification, and Defendants have also raised what they consider to be meaningful

8   factual arguments against certification. Finally, it is by no means certain that Plaintiffs could

9   expect a verdict in the favor on the claims remaining following the Court's orders on Defendants'

10  motions to dismiss. Plaintiffs would have faced Defendants' arguments that numerous courts

11  have dismissed similar state law challenges based on the principles of express, field, and conflict

12  preemption. *See, e.g., Spinelli v. Capital One Bank*, 265 F.R.D. 598, 605 (M.D. Fla. Sept. 18,

13  2009); *Thomas v. Bank of Am. Corp.*, 711 S.E.2d 371 (Ga. Ct. App. 2011); *Rose v. Bank of Am.*

14  *Corp.*, No. 2:10-CV-5067-VBF-JC, 2010 U.S. Dist. LEXIS 143516 (C.D. Cal. Nov. 5, 2010);

15  *Decohen v. Abbassi, LLC*, Civil No. WDQ-10-3157, 2011 WL 3438625 (D. Md. July 26, 2011);

16  *Denton v. Dep't Stores Nat'l Bank*, Case No. C10-5830 RBL, 2011 U.S. Dist. LEXIS 84024

17  (W.D. Wash. Aug. 1, 2011). While this Court denied Defendants' preemption motion in the

18  *Arevalo* case based solely on the pleadings, Defendants have argued that the Court's holding was

19  limited to involuntary enrollment claims and that the Court would rule differently on a

20  substantive motion based on the evidence – a position creating, at minimum, an element of risk.

21  *Arevalo*, 2011 U.S. Dist. LEXIS 34151, at *7-17. As courts recognize, significant risks of non-

22  recovery are inherent to any trial of complex financial claims. *See In re Omnivision*, 559 F. Supp.

23  2d at 1047 (noting low rate of success for plaintiffs litigating securities class actions to verdict).

24        A fee award of 25% of the Settlement is appropriate when considered against the risks of

25  the case. *See, e.g., In re Broadcom Corp. Sec. Litig.*, 2005 U.S. Dist. LEXIS 41993, *19 (C.D.

26  Cal. Sept. 12, 2005) (25% fee award appropriate where case involved complex factual and legal

27  disputes where "[m]uch of the law governing the parties' claims and defenses is sparse, unsettled

28  and still evolving").

3.   **The Skill Required and Quality of Counsel's Work Supports the Fee Request.**

The prosecution and management of a complex class action requires advanced legal skills and abilities that are to be considered when evaluating fees.  *See In re Omnivision*, 559 F. Supp. 2d at 1047.  "A common fund fee award serves to reward counsel for creativity and skill in enlarging a settlement fund beyond what was thought possible or likely at the inception of the case."  *In re HPL Techs., Inc., Sec. Litig.*, 366 F. Supp. 2d 912, 919 (N.D. Cal. 2005).

Class Counsel are experienced class action litigators who have successfully prosecuted complex consumer cases.  *See* Joint Decl. ¶¶ 57-60.  Class Counsel briefed a number of complex issues in evolving areas of the law, performed key data analysis, and efficiently and vigorously negotiated a $20 million Settlement with additional practice changes in Defendants' administration of CPP.  Counsel's skill and expertise, reflected in the prompt and significant Settlement, support the fee request.  *See also* Marks Decl., ¶ 57-60 ("[C]ounsel for each Party were effective advocates for their clients.").

4.   **Class Counsel's Willingness to Work on Contingency Supports the Fee Request.**

The requested fee is also justified by the financial risks undertaken by Class Counsel in representing the Class on a contingency basis.  *See Vizcaino*, 290 F.3d at 1050 (class counsel's representation of the class on a contingency basis is relevant to the assessment of the fee); *Torrisi*, 8 F.3d at 1377 (affirming 25% fee as reward to counsel "for carrying the financial burden of the case, effectively prosecuting it and, by reason of their expert handling of the case, achieving a just settlement for the class").  The public interest is served by rewarding attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk they might be paid nothing at all for their work.  *In re Washington Public Power Supply System Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994).

In spite of the risks in this case outlined, Class Counsel have devoted substantial resources to the prosecution of this case on behalf of the Class with no guarantee that they would be compensated for their time or reimbursed for their expenses.  Class Counsel, among other things,

1   opposed Defendants' extensive motions to dismiss, obtained discovery for litigation and

2   mediation, performed data analysis, and extensively prepared for and conducted mediation-

3   negotiated settlement discussions.  There was a substantial risk of nonpayment, particularly in

4   light of the litigation risks outlined above.  In spite of these risks, Class Counsel zealously

5   represented the interests of the Class.

6           **5.      The Requested Fee Comports With, or Is Less Than, Fees in Similar**
                       **Actions.**
7

8           Courts may refer to awards made in other settlements of comparable size when

9   determining whether an award is reasonable.  *See Vizcaino*, 290 F.3d at 1050 n.4.

10          The requested fee is consistent with or lower than the fees and costs awarded in cases

11  involving similar consumer claims and/or similarly sized settlements.  *See, e.g., In re Omnivision*,

12  559 F. Supp. 2d at 1047 ("in most common fund cases, the award exceeds that [25%]

13  benchmark."); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457, 460 (9th Cir. 2000)

14  (affirming fee award of one third of common fund); *Knight*, 2009 U.S. Dist. LEXIS 11149 at *18-

15  *19 (awarding 30% fee); *In re Heritage Bond Litig.*, 2005 WL 1594403, at *19 (C.D. Cal. Jun.

16  10, 2005) (awarding one third fee); *In re Public Serv. Co. of New Mexico*, 1992 WL 278452, at

17  *12 (S.D. Cal. July 28, 1992) (same); *Antonopulos v. N. Am. Thoroughbreds, Inc.*, 1991 WL

18  427893, at *4 (S.D. Cal. May 6, 1991) (same); *In re M.D.C. Holdings Sec. Litig.,* 1990 WL

19  454747, at *10 (S.D. Cal. Aug. 30, 1990) (awarding 30% in fees, plus expenses).[5]

20          The requested fee is also well within the range commonly awarded in cases where the

21  settlement fund is much larger than the $20 million fund here.  *See Vizcaino*, 290 F.3d at 1052,

22  n.9 (survey of awards in cases with class settlements between $50-200 million); *Allapattah*

23  *Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1210 (S.D. Fla. 2006) (31.3% fee for

24  settlement fund of over $1 billion); *In re Linerboard Antitrust Litig.*, 2004 U.S. Dist. LEXIS

25  10532 (E.D. Pa. Jun. 2, 2004) (30% fee; $202 million fund); *In re Relafen Antitrust Litig.*, 2004

26  _____

27  [5] *See also In re Corel Corp. Inc. Sec. Litig.*, 293 F. Supp. 2d 484, 489-490, 498 (E.D. Pa. 2003)
    (1/3 fee); *In re Gen. Instruments Sec. Litig.*, 209 F. Supp. 2d 423, 431, 434 (E.D. Pa. 2001) (1/3
    fee); *In re Medical X-Ray Film Antitrust Litig.*, 1998 U.S. Dist. LEXIS 14888, at *15, 20
28  (E.D.N.Y. Aug. 7, 1998) (1/3 fee).

U.S. Dist. LEXIS 28801 (D. Mass. Apr. 9, 2004) (1/3 fee; $175 million fund); *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393 (S.D.N.Y. 1999) (28.3% fee; $132 million fund); *Kurzweil v. Philip Morris Cos.*, 1999 U.S. Dist. LEXIS 18378 (S.D.N.Y. Nov. 30, 1999) (30% fee; $123 million fund); *see also In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 303 (3d Cir. 2005) (citing study finding that fee awards in the 25-30% range were "fairly standard" in class action settlements between $100-200 million).

The requested fee is also consistent with recent cases in the Northern District of California that have applied the percentage of the fund approach.  *See, e.g.*, *Meijer v. Abbott Laboratories*, C-07-05985 (N.D. Cal. Aug. 11, 2011) (Wilken, J.) (33⅓%); *In re CV Therapeutics, Inc. Securities Litig.*, 2007 WL 1033478 (N.D. Cal. April 4, 2007) (30%) (Illston, J.).

In short, Class Counsel's fee request is reasonable under the "percentage of the fund" method.

Finally, and notably, this fee request is lower than the fee awards in other recently-settled cases involving payment protection products, even though this case was further along procedurally than some of them because initial dispositive motions had been ruled upon and discovery was actively ongoing.  *See, e.g.*, *Walker, et al., v. Discover Financial Services, Inc., et al.*, No. 1:10-cv-06994, N.D. Ill., (awarding 30.9% of the common fund); *Esslinger v. HSBC Bank Inc., et al.*, No. 10-cv-3213 BMS, E.D. Pa., (awarding 30% of the common fund); Joint Decl., ¶ 58.

## C.   A Lodestar-Multiplier Cross-Check Confirms the Reasonableness of the Requested Fee.

The Ninth Circuit has encouraged, but not required, that courts conduct a lodestar cross-check when assessing the reasonableness of a percentage fee award.  *See In re Bluetooth*, 654 F.3d at 944 (stating "we have also encouraged courts to guard against an unreasonable result by cross-checking their calculations against a second method" of determining fees); *Vizcaino*, 290 F.3d at 1050 ("Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award.").  Courts in the Ninth Circuit "typically use the lodestar method to cross-check the reasonableness of the

1  percentage to be awarded." *Jacobs v. Cal. State Auto. Ass'n Inter-Insurance Bureau*, 2009 U.S.

2  Dist. LEXIS 101586, *8 (N.D. Cal. Oct. 27, 2009).[6]

3       The lodestar-multiplier cross check confirms the propriety of the requested fee here.  The

4  first step in the lodestar method is to multiply the number of hours counsel reasonably expended

5  on the litigation by a reasonable hourly rate.  *See Hanlon*, 150 F.3d at 1029.  At that point,

6  according to recent Ninth Circuit authority, "the resulting figure may be adjusted upward or

7  downward to account for several factors including the quality of representation, the benefit

8  obtained for the class, the complexity and novelty of the issues presented, and the risk of

9  nonpayment." *Id.*  (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)); *see*

10  *also In re Bluetooth*, 654 F.3d at 942.

11            **1.    Plaintiffs' Counsel's Lodestar is Reasonable.**

12       Plaintiffs' Counsel have incurred $3,121,211 in lodestar.  Joint Decl., ¶ 62 and Exs. A

13  through S.  In all, Plaintiffs' Counsel have devoted 6,094.80 hours to the litigation, consisting of,

14  among other things, time spent investigating potential claims, analyzing legal issues, drafting the

15  complaints, consolidating the cases, opposing Defendants' motion to dismiss, conducting

16  discovery, analyzing data, engaging in settlement negotiations, creating the settlement documents,

17  settlement-related briefing, and speaking with Class Members.  Joint Decl., ¶ 62.

18       The time Plaintiffs' Counsel, under the direction of the Plaintiffs' Executive Committee,

19  have devoted to this case is more than reasonable.  Plaintiffs' Counsel have prosecuted the claims

20  at issue efficiently and effectively, making every effort to prevent the duplication of work that

21  might have resulted from having multiple firms working on this case.[7]  Joint Decl. ¶¶ 48-55.

22

23  [6] Despite the typical practice, some courts have opted not to perform a lodestar cross-check where
   counsel have achieved exceptional results for the class through an early settlement.  *See, e.g.,*
24  *Glass v. UBS Fin. Servs.*, 2007 U.S. Dist. LEXIS 8476, *49 (N.D. Cal. Jan. 26, 2007) ("where the
   early settlement resulted in a significant benefit to the class, the Court finds no need to conduct a
25  lodestar cross-check"); *HCL Partners Ltd. P'ship v. Leap Wireless Int'l, Inc.*, 2010 U.S. Dist.
   LEXIS 109829 (S.D. Cal. Oct. 15, 2010) (awarding 25% fee in securities settlement prior to
26  decision on second motion to dismiss); *see also Craft v. County of San Bernardino*, 624 F. Supp.
   2d 1113, 1122 (C.D. Cal. 2008) ("A lodestar cross-check is not required in this circuit, and in
27  some cases is not a useful reference point.").

28  [7] In fact, some of Plaintiffs' Counsel, despite a JMPL ruling that had earlier declined to
   *Footnote continued on next page*

Counsel estimate they will spend at least 100 more hours to see this case through its final resolution, including the drafting of reply briefs in support of final approval and this motion, discussing the Settlement and claims process with Class Members, and attending the final approval hearing.  Joint Decl., ¶ 56.

Plaintiffs' Counsel's hourly rates are also reasonable.  Joint Decl. ¶¶ 74-76.[8]  In assessing the reasonableness of an attorney's hourly rate, courts consider whether the claimed rate is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1994). As discussed above, Plaintiffs' Counsel here are experienced, highly regarded members of the bar with extensive expertise in the area of class actions and complex litigation involving consumer claims like those at issue here.  *See* Joint Decl. ¶¶ 57-60.  Plaintiffs' Counsel's customary rates used in calculating the lodestar here have been approved by courts in this District and other courts.  Joint Decl., ¶ 75.

### 2.     A Multiplier is Warranted.

The fee requested by Class Counsel reflects a multiplier of 1.6 of Plaintiffs' Counsel's combined lodestar.  Courts in the Ninth Circuit use similar factors in determining the reasonableness of a percentage-of-the-fund-award as they do in determining an adjustment of lodestar when conducting a lodestar-multiplier cross check, namely: results achieved, risks stemming from the complexity of the case, and the risk of nonpayment.  *See Hanlon*, 150 F.3d at 1029*; see MCL 4th* § 14.122, at 261.  Class Counsel refer the Court to the above discussion of those factors.

By way of summary, the multiplier here is reasonable given the outstanding result Class Counsel have achieved for the Class in the creation of a $20 million Settlement Fund; the risks involved in this contingent litigation; the complex issues involved in prosecuting these multi-state

---

*Footnote continued from previous page*

coordinate all the payment protection against multiple companies, took the initiative to coordinate the Bank of America Credit Protection cases, which resulted in a much more streamlined process.

[8] Courts apply each biller's current rates for all hours of work performed, regardless of when the work was performed, as a means of compensating for the delay in payment.  *In re Wash. Pub. Power Supply Sys. Sec Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994).

1   consumer claims; and the high-quality representation by experienced and skilled Class Counsel.

2   *See Hanlon*, 150 F.3d at 1029; *In re Bluetooth*, 654 F.3d at 942.

3         Further, the multiplier is consistent with the multipliers that other courts in and out of the

4   Ninth Circuit have accepted, which further supports its reasonableness.  In *Vizcaino*, the Ninth

5   Circuit noted that multipliers have ranged from 0.6 to 19.6, and upheld an award with a 3.65

6   multiplier.  290 F.3d at 1050-51 and n.6.[9]  *See generally Steiner v. Am. Broad. Co.*, 248 Fed.

7   Appx. 780, 783 (9th Cir. 2007) (25% fee reasonable where multiplier was 6.85);  *Craft v. County*

8   *of San Bernardino,* 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (approving 25% fee award

9   yielding a multiplier of 5.2 and stating that "there is ample authority for such awards resulting in

10  multipliers in this range or higher"); *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294,

11  298-99 (N.D. Cal. 1995) (multiplier of 3.6 was "well within the acceptable range for fee awards

12  in complicated class action litigation" and stating that "[m]ultipliers in the 3-4 range are

13  common"); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 123 (2d Cir. 2005) (approving

14  multiplier of 3.5); *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 104 (D N.J.

15  2001) (approving multiplier of 2.81 and citing cases approving multipliers from 2.04 to 3.6); *see*

16  *also* 3 *Newberg on Class Actions* § 14.03 (multipliers "ranging from one to four are frequently

17  awarded in common fund cases where the lodestar method is applied").

18        The multiplier of 1.6 is thus on the lower end of the spectrum identified by the Ninth

19  Circuit in *Vizcaino*, above, and is in line with the multipliers awarded in other courts within the

20  Ninth Circuit.  The lodestar-multiplier cross check supports the fee request here.

21  **III.    THE PAYMENT OF COSTS IS FAIR AND REASONABLE.**

22        "Reasonable costs and expenses incurred by an attorney who creates or preserves a

23  common fund are reimbursed proportionately by those class members who benefit from the

24  settlement."  *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1995)

25  _____

[9] *Vizcaino* involved a case with protracted litigation, a factor which –in that case – supported a
26  multiplier of the already large lodestar.  However, the Ninth Circuit also clarified that multipliers
    may be particularly appropriate when cases settle early: "it may be a relevant circumstance that
27  counsel achieved a timely result for class members in need of immediate relief."  290 F.3d at
    1050 & n.5; s*ee also Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19, 52-53 (2000)
28  ("counsel should be rewarded" for obtaining a prompt settlement).

1   (citing *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-392 (1970)).  Plaintiffs' Counsel have

2   incurred out-of-pocket costs to date totaling $93,352, including costs for mediation fees, travel,

3   and research and investigation.  Thus, Class Counsel seek reimbursement of these costs on behalf

4   of themselves and Plaintiffs' Counsel.  Joint Decl. ¶¶ 77-79.  These out-of-pocket costs were

5   necessary to secure the resolution of this litigation, and should be recouped.  *See In re Media*

6   *Vision*, 913 F. Supp. at 1367-72 (costs related to retention of experts, photocopy costs, travel

7   expenses, postage, telephone costs, computerized legal research fees, and filing fees may be

8   reimbursed).

9   **IV.   THE REQUESTED SERVICE AWARDS FOR PLAINTIFFS ARE REASONABLE.**

10          Class Counsel ask the Court to award service payments to twelve Plaintiffs in the amount

11   of $3,000 each.  Modest enhancement payments compensate named plaintiffs for work done on

12   behalf of the class attempt to account for financial or reputational risks associated with the

13   litigation, and promote the public policy of encouraging individual plaintiffs to undertake the

14   responsibility of representative lawsuits.  *See Rodriguez v. West Publishing Corp.*, 563 F.3d 948,

15   958-959 (9th Cir. 2009); *Hartless v. Clorox Co.*, 273 F.R.D. 630, 646-47 (S.D. Cal. 2011)

16   ("Incentive awards are fairly typical in class actions.").  The Plaintiffs came forward to serve as

17   plaintiffs in the underlying litigations, kept abreast of the litigation, furnished Plaintiffs' Counsel

18   with documents, and approved the terms of the Settlement Agreement after review and

19   consultation with counsel.  Joint Decl., ¶ 80.  A $3,000 service award to each of the Plaintiffs is

20   appropriate and consistent with awards approved by federal courts in this District.  *See, e.g., Ross*

21   *v. US Bank Nat. Ass'n*, 2010 U.S. Dist. LEXIS 107857, at *6 (N.D. Cal. Sept. 29, 2010)

22   (approving $20,000 service award); *In re Ferrero Litig.,* 2012 U.S. Dist. LEXIS 94900, at *11

23   (S.D. Cal. 2012) (awarding service awards of $7,500 and $10,000); *Cook v. Tiffany & Co.*, 2011

24   U.S. Dist. LEXIS 106230, at *10 (S.D. Cal. 2011) (awarding service awards of $7,500); *Chavez*

25   *v. WIS Holding Corp.*, 2010 U.S. Dist. LEXIS 56138, at *8 (S.D. Cal. 2010) (same).  *See also*,

26   *e.g., Esslinger v. HSBC Bank Inc., et al.*, No. 10-cv-3213 BMS, E.D. Pa. (awarding $3,500 per

27   plaintiff); Joint Decl., ¶ 31.

28

1    V.      **CONCLUSION**

2          Based on the foregoing, Plaintiffs respectfully request that the Court grant Class Counsel's

3    Motion for Attorneys' Fees, Reimbursement of Expenses, and Service Awards.

4    Dated: November 28, 2012                Respectfully submitted,

5                                            LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

6                                            By: */s/ Rachel Geman*
                                                    Rachel Geman
7
                                            Rachel Geman (admitted pro hac vice)
8                                            LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                                            250 Hudson Street, 8th Floor
9                                            New York, NY  10013-1413
                                            Telephone:    (212) 355-9500
10                                           Facsimile:    (212) 355-9592
                                            rgeman@lchb.com
11
                                            Elizabeth Cabraser (State Bar No. 083151)
12                                           Michael W. Sobol (State Bar No. 194857)
                                            Daniel M. Hutchinson (State Bar No. 239458)
13                                           LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                                            275 Battery Street, 29th Floor
14                                           San Francisco, CA  94111-3339
                                            Telephone:    (415) 956-1000
15                                           Facsimile:    (415) 956-1008
                                            ecabraser@lchb.com
16                                           msobol@lchb.com
                                            dhutchinson@lchb.com
17
                                            Marc Godino
18                                           GLANCY BINKOW & GOLDBERG LLP
                                            1801 Avenue of the Stars, Suite 311
19                                           Los Angeles, CA  90067
                                            Telephone:    (310) 201-9150
20                                           Facsimile:    (310) 201-9160
                                            mgodino@glancylaw.com
21
                                            John J. Carey
22                                           Francis J. "Casey" Flynn, Jr.
                                            Tiffany M. Yiatras
23                                           CAREY DANIS & LOWE
                                            8235 Forsyth Blvd., Suite 1100
24                                           St. Louis, MO  63105
                                            Telephone:    (800) 721-2519
25                                           Facsimile:    (314) 721-0905
                                            jcarey@careydanis.com
26                                           casey@jefflowepc.com
                                            tyiatras@caseydanis.com
27
                                            *Class Counsel*
28

Richard Golomb
Ruben Honik
GOLOMB & HONIK PC
1515 Market Street, Suite 1100
Philadelphia, PA  19102
Telephone:    (215) 985-9177
Facsimile:    (215) 985-4169
rhonik@golombhonik.com
rgolomb@golombhonik.com

J. Allen Carney
Randall K. Pulliam
CARNEY WILLIAMS BATES PULLIAM &
BOWMAN PLLC
11311 Arcade Drive, Suite 200
Little Rock, AK  72212
Telephone:    (501) 312-8500
Facsimile:    (501) 312-8505
acarney@carneywilliams.com
rpulliam@carneywilliams.com

Brett Cebulash
Kevin S. Landau
TAUS, CEBULASH & LANDAU, LLP
80 Maiden Lane, Suite 1204
New York, NY  10038
Telephone:    (212) 931-0704
bcebulash@tcllaw.com
klandau@tcllaw.com

Steve Owings
OWINGS LAW FIRM
1400 Brookwood
Little Rock, AR  72202
Telephone:    (501) 661-9999
Facsimile:    (501) 661-8393
sowings@owingslawfirm.com

David S. Paris
Ross Schmierer
PARIS ACKERMAN & SCHMIERER LLP
101 Eisenhower Parkway
Roseland, NJ  07068
Telephone:    (973) 228-6667
Facsimile:    (973) 629-1246
david@paslawfirm.com
ross@paslawfirm.com

NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES,
REIMBURSEMENT OF EXPENSES, SERVICE AWARDS
MD NO. 3:11-MD-02269 TEH

1

Bruce Nagel
Jay Rice
2

Diane Sammons
NAGEL RICE, LLP
3

103 Eisenhower Parkway
Roseland, NJ  07068
4

Telephone:      (973) 618-0400
Facsimile       (973) 618-9194
5

bnagel@nagelrice.com
jrice@nagelrice.com
6

dsammons@nagelrice.com
7

*Attorneys for Plaintiffs and Additional Counsel for the Class*
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28