Rachel Geman (admitted *pro hac vice*)
rgeman@lchb.com
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone:   (212) 355-9500
Facsimile:   (212) 355-9592

Francis J. "Casey" Flynn, Jr. (admitted *pro hac vice*)
casey@jefflowepc.com
CAREY, DANIS & LOWE
8235 Forsyth Boulevard, Suite 1100
Saint Louis, Missouri 63105-1643
Telephone:   (314) 725-7700
Facsimile:   (314) 721-0905

Marc L. Godino
mgodino@glancylaw.com
GLANCY BINKOW & GOLDBERG LLP
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone:   (310) 201-9150
Facsimile:   (310) 201-9160
mgodino@glancylaw.com

*Class Counsel for Plaintiffs*

*[Additional Counsel listed on signature page]*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: BANK OF AMERICA CREDIT PROTECTION MARKETING AND SALES PRACTICES LITIGATION<br><br>THIS DOCUMENT RELATES TO ALL ACTIONS | MD No. 3:11-md-02269 TEH<br><br>MDL Docket No. 2269<br><br>**PLAINTIFFS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS FOR FINAL APPROVAL OF CLASS SETTLEMENT AND RELATED RELIEF AND FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARDS**<br><br>Date: Monday, January 14, 2013<br>Judge: Hon. Thelton E. Henderson<br>Time: 10:00a.m.<br>Location: Courtroom 2, 7th Floor |

**TABLE OF CONTENTS**

Page

I. THE CLASS HAS OVERWHELMINGLY SUPPORTED THE CLASS ACTION SETTLEMENT. ................................................................................ 2

II. THE OBJECTIONS SHOULD BE OVERRULED. ............................................. 3

   A. The Majority of the Objectors Make Only a General Complaint About the Size of Their Recovery. ............................................................... 3

   B. Untimely and Invalid Objections Need Not Be Considered. ...................... 4

   C. The Objections from the Professional Objectors Are Without Merit. ........ 4

      1. Background ...................................................................................... 4

      2. The *Cy Pres* Distribution to the Center for Responsible Lending is Appropriate. ................................................................... 6

   D. The Requested Award of Attorneys' Fees and Expenses Is Appropriate. ................................................................................................... 8

   E. The Claims Amount Is Reasonably Certain. ............................................... 9

   F. There Is No Need For Sub-Classes. ........................................................... 10

   G. Other Objections. ....................................................................................... 12

III. CONCLUSION .................................................................................................... 13

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Alleyne v. Time Moving & Storage Inc.*,
264 F.R.D. 41 (E.D.N.Y. 2010) .................................................................................. 11

*Californians for Disability Rights, Inc. v. Cal. DOT*,
2010 U.S. Dist. LEXIS 62837 (N.D. Cal. June 2, 2010) ............................................ 4

*Churchill Vill., L.L.C. v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004) ...................................................................................... 2

*City of Roseville Empls. Ret. Sys. v. Orloff*,
2012 U.S. App. LEXIS 11512 (9th Cir. June 7, 2012) ............................................... 6

*Conroy v. 3M Corp.*,
2006 U.S. Dist. LEXIS 96169 (N.D. Cal. Aug. 10, 2006) .......................................... 6

*Dennis v. Kellogg Co.*,
687 F.3d 1149 (9th Cir. 2012) ................................................................................ 6, 7

*Devlin v. Scardaletti*,
536 U.S. 1 (2001) ........................................................................................................ 5

*Friedman v. 24 Hour Fitness USA, Inc.*,
2010 U.S. Dist. LEXIS 143816 (C.D. Cal. July 12, 2010) ......................................... 4

*Gemelas v. Dannon Co.*,
2010 U.S. Dist. LEXIS 99503 (N.D. Ohio Aug. 31, 2010) ........................................ 5

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ....................................................................... 1, 2, 4, 11

*In re Cathode Ray Tube Antitrust Litig.*,
2012 WL 1319881 (N.D. Cal. Apr. 16, 2012) ............................................................ 6

*In re Heritage Bond Litig. v. U.S. Trust Co. of Tex., N.A.*,
2005 U.S. Dist. LEXIS 13627 (C.D. Cal. June 10, 2005) ...................................... 2, 4

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) ...................................................................................... 2

*In re Omnivision Techs. Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2007) ...................................................................... 2

*In re Wal-Mart Wage and Hour Emp't Practices Litig.*,
2010 U.S. Dist. LEXIS 21466 (D. Nev. Mar. 8, 2010) ............................................... 6

*Int'l Union, United Auto., Aerospace & Agr. Implement Workers v. GMC*,
497 F.3d 615 (6th Cir. 2007) .................................................................................... 11

# TABLE OF AUTHORITIES
(continued)

**Page**

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012) .......................................................................................... 11

*Paul, Johnson, Alston & Hunt v. Graulty*,
    886 F.2d 268 (9th Cir. 1989) ............................................................................................ 9

*Petersen v. Lowe's Hiw, Inc.*,
    2012 U.S. Dist. LEXIS 123018 (N.D. Cal. Aug. 24, 2012) ............................................. 8

*Powers v. Eichen*,
    229 F.3d 1249 (9th Cir. 2000) .......................................................................................... 9

*Shaffer v. Continental Cas. Co.*,
    362 Fed. Appx. 627 (9th Cir. 2010) ............................................................................... 11

*Six (6) Mexican Workers v. Arizona Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990) ..................................................................................... 7, 8

*Sullivan v. DB Inv., Inc.*,
    667 F.3d 273 (3d Cir. 2011) ........................................................................................... 11

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) .............................................................................................. 9

*White v. Experian Info. Solutions, Inc.*,
    803 F. Supp. 2d 1086 (C.D. Cal. 2011) ......................................................................... 11

**RULES**

Fed. R. Civ. P. 23(e)(2) ............................................................................................................ 1

**TREATISES**

Alba Conte & Herbert B. Newberg, 4 Newberg On Class Actions § 11.58 (4th ed. 2002) ............. 2

Alba Conte & Herbert B. Newberg, 5 Newberg On Class Actions § 15:37 (4th ed. 2002) ............ 5

Barbara J. Rothstein & Thomas E. Willging, Managing Class Action Litigation: A Pocket Guide
    for Judges, Federal Judicial Center (2005) ...................................................................... 5

In deciding whether to approve the proposed Settlement, the ultimate question for the Court is whether the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

After more than two years of hard-fought litigation, as detailed more fully in Plaintiffs' Motion for Final Approval of Class Action Settlement and Related Relief and Motion for Attorneys' Fees, Reimbursement of Expenses, and Services Awards, Class Counsel negotiated a Settlement with Defendants Bank of America Corporation and FIA Card Services, N.A. (collectively, "Defendants"),[1] under which Defendants agreed to (1) set up a $20 million common fund; (2) institute consumer-friendly practice changes in the administration of CPP during the wind-down of the product; and (3) provide two months of service CPP customers at no cost.

The Settlement resolves all the claims in this case and marks substantial recovery for the Settlement Class in light of the risks of ongoing litigation. This Settlement is the product of extensive research and investigation, aggressive litigation, discovery, and arm's length settlement negotiations informed by substantial mediation-related discovery. The Settlement, and Plaintiffs' fee request (25% of the common fund, the benchmark in this Court, and not factoring in other forms of relief), should be approved.

December 13, 2012 was the last date for Class Members to file opt-outs or objections. The vast majority have elected to remain in the class, and the class of millions has also resulted in only 13 objections (5 of which were untimely and/or otherwise procedurally improper). Of those, most note only generally that the settlement is not large enough to fully repay them for all their Credit Protection fees. As shown below, these objectors misunderstand the inherent compromise that is part of any settlement. In addition, the boilerplate objections of two professional objectors, who regularly file similar boilerplate objections in this Court regardless of the actual details of the lawsuit or settlement, are completely without merit. None of the objectors offered reasonable (or

---

[1] All capitalized terms in this memorandum shall have the meaning as specified in the Settlement Agreement and its attachments, filed simultaneously herewith, unless otherwise indicated.

any) alternatives to address any alleged weaknesses in the Settlement. "General objections without factual or legal substantiation carry little weight." Alba Conte & Herbert B. Newberg, 4 Newberg On Class Actions § 11.58 (4th ed. 2002). For these and the specific reasons below, the Settlement should be given final approval despite the presence of a small number of objectors and opt-outs.

## I. THE CLASS HAS OVERWHELMINGLY SUPPORTED THE CLASS ACTION SETTLEMENT.

Class members' reaction to a settlement is an important factor to an assessment of a settlement's fairness, in addition to the bases for approval set forth in the Final Approval Motion. *See Hanlon*, 150 F.3d at 1026. One important indicator of class members' reaction to a settlement is the number of class members who object. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision Techs. Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007) (internal quotation marks omitted) (approving class settlement where there were three objections); *see also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (affirming settlement approval where 45 of 90,000 class members objected); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (affirming settlement approval where only a handful of objectors appeared at the fairness hearing). Similarly, courts consider the presence or absence of objections when evaluating a request for attorneys' fees. *In re Omnivision*, 559 F. Supp. 2d at 1048 (approving fee application where "none of the objectors raised any concern about the amount of the fee"); *In re Heritage Bond Litig. v. U.S. Trust Co. of Tex., N.A.*, 2005 U.S. Dist. LEXIS 13627 (C.D. Cal. June 10, 2005), at *50 (concluding that "the lack of significant objections to the requested fees justifies an award of one-third of the Settlement Fund"). In addition, courts also consider a low number of opt outs to be indicative of class members' approval of a settlement. *See Hanlon*, 150 F.3d at 1027 ("[T]he fact that the overwhelming majority of the class . . . stayed in the class presents at least some objective positive commentary as to its fairness.").

In this case, Class Members had the opportunity to review the Stipulation of Settlement,

the Motion for Preliminary Approval and Related Relief, and the Order thereon, and Plaintiffs' Motion for Final Approval and Application for Attorneys' Fees and Expenses. After having a full opportunity to consider all aspects of the Settlement, the fact that there were only 13 objections and 435 opt-outs out of a class of approximately 8 million indicates overwhelming support for the Settlement.[2]

Collectively, the number of objections is negligible and the opt-outs represent only a few hundredths of one percent of the class (0.005%). The Settlement enjoys the overwhelming approval of the Settlement Class.

## II. THE OBJECTIONS SHOULD BE OVERRULED.

### A. The Majority of the Objectors Make Only a General Complaint About the Size of Their Recovery.

All the objectors believe they are not getting enough money. Many express this sentiment as a request for full reimbursement of Credit Protection fees under the Settlement or for amount equal to payment of full benefits under the plan, others request specific amounts specific to their own circumstances, and one just assert a right to a percent of the entire settlement. These objectors include Anthony Robinson, Mary Jenkins POA for Margaret Jenkins (Dkt. No. 84), Ronna Burton (Dkt. No. 75-3 at 17),[3] Sean J. Randall, Robert D. Gurney (Dkt. No. 86); Tamara A. Coleman (Dkt. No. 77) (proposing $1000 as a fair fee), Kevin Knowles (Dkt. No. 81) (demanding 4% of the entire Settlement), Carlos Padilla-Noriega (Dkt. No. 87), Tammy L. Griffin-Duckworth (Dkt. No. 82), Zhawantae Griffin (Dkt. No. 85), Adina Wasserman, and the professional objectors, discussed below.

"Settlement is the offspring of compromise." *Hanlon*, 150 F. 3d at 1027. As set out more

---

[2] The Joint Declaration of Class Counsel attaches the list of opt-outs and the three objections that, to Class Counsel's knowledge, have not been filed with the Court. Exs. A and B.

[3] Ms. Burton also objects to attorneys' fees being deducted from her settlement. However, as discussed in Plaintiffs' fee request, payment out of a common fund is the preferred method in this Court, and serves to align the interests of the Class and its Counsel. To the extent Ms. Burton believes there will be further offsets from her claim amount for additional fees, this is incorrect. Other misapprehensions by objectors include Mr. Randall's mistaken (unexplained) belief that the Settlement has a reverter clause (it does not), and Mr. Lochridge's belief that objectors need to appear in-person at final approval (they do not).

1072714.1 - 3 - PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. MD NO. 3:11-MD-02269 THE

1  fully in Plaintiffs' Motion for Final Approval of Class Action Settlement at 14, these objectors
2  cannot and do not dispute that Defendants had arguments on the merits and affirmative defenses
3  that made it no guarantee that Plaintiffs, or any Class Member, would have won a verdict in their
4  favor on their claims against Defendants.  Plaintiffs and Class Members would have as well faced
5  Defendants' arguments that numerous courts have dismissed similar state law challenges based
6  on the principles of express, field, and conflict preemption.  Furthermore, at class certification,
7  Plaintiffs would have additional hurdles in trying to certify a nationwide class action involving
8  the potential application of multiple states' laws.
9  Considering the relative strengths of Defendants' various arguments, the parties entered
10 into an arm's length Settlement (that created a common fund, as well as practices changes and
11 free months of service) that both sides, and a well-respected mediator, considered a fair
12 compromise.  Indeed, the reaction of the Class confirmed the fairness of the settlement.
13 Accordingly, the above-mentioned objections should be overruled.

14 **B.   Untimely and Invalid Objections Need Not Be Considered.**

15 The following Class Members' objections were addressed above.  In the alternative, they
16 need not and should not be considered because they were not timely and/or properly filed with the
17 court: Zhawantae Griffin, not filed until 12/17; Carlos Padilla-Noriega, not filed until 12/20;
18 Sean J. Randall (never filed); Anthony Robinson (never filed).  Furthermore, Ronna Burton never
19 filed her objection with the Court, but it was attached to Markham Sherwood's Claims
20 Administrator Declaration as an Exhibit.  Courts in the Ninth Circuit do not consider objections
21 that are not timely and properly filed with the court.  *See, e.g.*, *In re Heritage Bond Litig.*, 2005
22 U.S. Dist. LEXIS 13555, at *34-35 (C.D. Cal. June 10, 2005) (the court would not consider
23 untimely objections); *Friedman v. 24 Hour Fitness USA, Inc.*, 2010 U.S. Dist. LEXIS 143816, at
24 *3 (C.D. Cal. July 12, 2010) (same); *Californians for Disability Rights, Inc. v. Cal. DOT*, 2010
25 U.S. Dist. LEXIS 62837, at *26, *28 (N.D. Cal. June 2, 2010) (same).

26 **C.   The Objections from the Professional Objectors Are Without Merit.**
27    **1.   Background**
28 Plaintiffs address the substance of the remaining objections below, but provide some

1072714.1      - 4 -      PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT CASE NO. MD NO. 3:11-MD-02269 THE

1 initial context about the particular professional objectors who have appeared in this litigation.
2 The Federal Judicial Center has warned courts to "[w]atch out . . . 'for canned objections filed by
3 professional objectors who seek out class actions to simply extract a fee for lodging generic,
4 unhelpful protests.'" Barbara J. Rothstein & Thomas E. Willging, Managing Class Action
5 Litigation: A Pocket Guide for Judges, Federal Judicial Center, at 11 (2005). Courts are
6 furthered cautioned to be "wary of self-interested professional objectors who often present rote
7 objections to class counsel's fee requests and add little or nothing to the fee proceedings." *Id.* at
8 24.

9 Objections lacking merit hurt the class. As stated by Alba Conte & Herbert B. Newberg,
10 5 Newberg On Class Actions § 15:37 (4th ed. 2002): "meritless objections tend to delay
11 providing benefits to bona fide and deserving class members inasmuch as settlements commonly
12 do not provide for payment of any benefits until the judgment entered approving a settlement is
13 final and not subject to further appeal." *See also Devlin v. Scardaletti*, 536 U.S. 1, 23 n.5 (2001)
14 (Scalia, J., dissenting) (observing that professional objectors' penchant for filing "canned" briefs
15 and baseless objections often lead to baseless appeals in the quest for a fee).

16 Joseph Darrell Palmer, who represents objectors Paul Bien and Khoi Truong, is a
17 professional objector whose boilerplate objections have been described by courts in very
18 unflattering terms. *See, e.g.*, *Arthur v. Sallie Mae, Inc.*, 2:10-cv-00198-JLR, Tr. of Hrg., (W.D.
19 Wash. Sept. 14, 2012), at 8 (Attached as Exhibit C to the Joint Declaration of Lead Counsel.)[4]; *In
20 re Dell Sec. Litig.*, No. A-06-CV-726-SS, Dkt. No. 342 (W.D. Tex. Jan. 11, 2011) (calling Mr.
21 Palmer's argument that he improved a settlement "absurd"); *see also Gemelas v. Dannon Co.*,
22 2010 U.S. Dist. LEXIS 99503, at *5 (N.D. Ohio Aug. 31, 2010) (describing Mr. Palmer as a
23 "serial objector"); *see also City of Roseville Empls. Ret. Sys. v. Orloff*, 2012 U.S. App. LEXIS
24 11512, at *7-8 (9th Cir. June 7, 2012) (finding Mr. Palmer's appeal of an award of attorneys' fees
25 to be "meritless" and based on misapprehensions of the law).

26 Christopher Bandas, who represents objector Beau Lochridge, is also considered by

---

[4] As reflected in the *Sallie Mae* papers, Mr. Palmer (a convicted felon) was barred for a period of time from the State Bars of California, Arizona, and Colorado, and who has been reprimanded by several courts for intentionally omitted such facts in *pro hac vice* applications.

1072714.1 - 5 - PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. MD NO. 3:11-MD-02269 THE

1  Courts to be a professional objector.  This Court recently found that Mr. Bandas "routinely

2  represents objectors purporting to challenge class action settlements, and does not do so to

3  effectuate changes to settlements, but does so for his own personal financial gain; he has been

4  excoriated by Courts for this conduct." *In re Cathode Ray Tube Antitrust Litig.*, 2012 WL

5  1319881, at *1 (N.D. Cal. Apr. 16, 2012).  Likewise, another court found that Mr. Bandas had

6  submitted objections that were "not supported by law or the facts and are indeed meritless" and

7  that he had "a documented history of filing notices of appeal from orders approving other class

8  action settlements, and thereafter dismissing said appeals when they and their clients were

9  compensated by the settling class or counsel for the settling class." *In re Wal-Mart Wage and

10 Hour Emp't Practices Litig.*, 2010 U.S. Dist. LEXIS 21466, at *16-17 (D. Nev. Mar. 8, 2010).  In

11 yet another case, the court labeled his objections "unfounded" and "patently frivolous." *Conroy

12 v. 3M Corp.*, 2006 U.S. Dist. LEXIS 96169, at *11-12 (N.D. Cal. Aug. 10, 2006).

13         Mr. Bandas represented an objector in a similar debt suspension/debt cancellation case

14 called in *In re Discover Payment Prot. Plan Mktg. and Sales Practices Litig.*, Case No. 1:10-cv-

15 06994.  Despite Mr. Bandas' client's objection, the Court approved the settlement.  Mr. Bandas

16 subsequently filed an appeal, which he ultimately withdrew.

17         Based on their history, the Court should consider the objections of Mr. Palmer and

18 Mr. Bandas with extreme skepticism.  None of the objections they assert have any merit, and

19 cannot justify denying approval of the exceptional Settlement that the Parties have reached in this

20 case.

21              **2.      The *Cy Pres* Distribution to the Center for Responsible Lending is
                         Appropriate.**
22
   Objector Palmer claims that the *cy pres* award is improper, relying on the case of
23
*Dennis v. Kellogg Co.*, 687 F.3d 1149 (9th Cir. 2012) (Dkt. No. 79, Objections of Bien and
24
Truong at 2-3).
25
        As an initial point, Plaintiffs' counsel anticipates that the *cy pres* award to Center for
26
Responsible Lending will be *de minimis*.  The Class is getting money.  Those who do not cash
27
their checks, if any, despite having put in a claim form, will create a presumably tiny pool of
28

1072714.1                                  - 6 -          PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR
                                                          FINAL APPROVAL OF CLASS ACTION SETTLEMENT
                                                          CASE NO. MD NO. 3:11-MD-02269 THE

uncashed checks. Thus, for this and other reasons, this case is eminently distinguishable from *Dennis* because the lion's share of the class-action settlement fund is not going to a *cy pres* beneficiary. In *Dennis*, the class-action settlement set up a *cy pres* distribution of $5.5 million "worth" of specific Kellogg food items, while the claims made settlement fund was only $2.75 million with a reversion to the *cy pres* beneficiaries, and at oral argument class counsel represented that the claims submitted only totaled approximately $800,000. 687 F.3d at 1155 n. 1. The Ninth Circuit held that the settlement resulted "in vaporous benefit to the class members." *Id.* at 1161.

Here, the *cy pres* award is a *de minimus* part of the $20 million Settlement Fund. The *cy pres* provision of the Settlement provides that if any amounts remain in the Settlement Fund following deductions of claim notice and settlement administration costs and taxes; and any attorneys' fees and costs, and/or service award awarded by the Court; and of pro rata distribution to all eligible Class Members with timely and valid claims (*e.g.*, unclaimed Settlement checks or unanticipated tax refunds), the remaining amounts shall be distributed to a *cy pres* recipient, the Center for Responsible Lending Agreement. Agreement, § IV.B.5. Accordingly, unlike in *Dennis*, the *cy pres* award is not a significant part of the settlement fund.

Furthermore, the law for a *cy pres* award requires that such payments retain some connection to the plaintiff class and the underlying claims, and further, must be "the next best distribution" to giving funds to the class. *Dennis*, 697 F.3d at 865 (quoting *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1308 (9th Cir. 1990)). "A *cy pres* award must be 'guided by (1) the objectives underlying statute(s) and (2) the interests of silent class members' . . . and must not benefit a group 'too remote from the plaintiff class'." *Id.* (citations omitted). Applying this standard, the Ninth Circuit did not approve a class-action settlement for false advertising claims that "Frosted Mini Wheats" cereal improved cognitive function of children because, among other reasons, the *cy pres* award of $5.5 million "worth" of specific Kellogg food items to unnamed charities that feed the indigent did not (1) identify the ultimate recipients of the *cy pres* awards nor sets forth any limiting restriction on those recipients, other than characterizing them as charities that feed the indigent; and (2) the *cy pres* portions of the

1  settlement were not sufficiently related to the plaintiff class or to the class's underlying false
2  advertising claims.  687 F.3d at 1153-1154.
3  In contrast, in *Petersen v. Lowe's Hiw, Inc.*, 2012 U.S. Dist. LEXIS 123018, at *13 (N.D.
4  Cal. Aug. 24, 2012), regarding a class-action settlement for plaintiffs' claims that defendant
5  Lowe's illegally collected California consumers' zip codes in connection with credit card
6  transactions, this Court held that a *cy pres* award to Consumer Federation of California and the
7  Privacy Rights Clearinghouse met the *Dennis* standard because the *cy pres* recipients had a focus
8  on consumer privacy issues and, therefore, retained some connection to class claims.  *Id.*
9  Here, and as stated more fully in Motion for Final Approval of Class Action Settlement at
10 8, Plaintiffs not only identified the *cy pres* recipient, CRL, but chose a not-for-profit organization
11 that provides the type of consumer protection that the instant class-action attempted to remedy.
12 The CRL is an organization that protects consumers through:  (1) research and consumer
13 information sharing, (2) financial tips to consumers; (3) impact consumer litigation; and (4) and
14 partnerships with consumer groups, civil rights organizations, organized labor, faith-based
15 communities, and other community advocates.  Notably, the CRL educates the public on the
16 deceptive trade practices that credit card companies engage in.[5]  CRL is also a national
17 organization, which is appropriate because this is a nationwide class.  It is a suitable recipient of
18 *cy pres* funds (if any).

19 **D.  The Requested Award of Attorneys' Fees and Expenses Is Appropriate.**

20 Objectors Palmer and Bandas have objected to the 25% attorneys' fee plaintiffs request in
21 this case.  Objector Bandas further claims that the Ninth Circuit, in *Dennis*, 687 F.3d at 1161,
22 held that expenses were to be included with attorney's fees in determining the 25% benchmark
23 and objects that class counsel is receiving attorneys' fees and expenses beyond a 25% benchmark.
24 *Dennis* does not so hold. Rather, the Ninth Circuit has established twenty-five percent of
25 the recovery as a "benchmark" for attorneys' *fees* calculations under the percentage-of-recovery
26 approach.  *See Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) (citing *Torrisi v. Tucson*

---

27 [5] *See, e.g.*, http://www.responsiblelending.org/credit-cards/policy-legislation/congress/Highlights-of-the-New-Credit-Card-Rules-What-They-Do-and-Don-t-Do.html (explaining to the general
28 public the Credit Card Accountability, Responsibility, and Disclosure Act of 2009).

1 *Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993)); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). The case law clearly indicates attorneys' fees, and not attorneys' fees and expenses.

As stated more fully in Plaintiff's Motion for Attorneys' fees, Class Counsel's request for $5,000,000 in attorneys' fees—25% of the common fund—is fair and reasonable under the circumstances of this case. Counsel did significant work in investigating and bringing numerous lawsuits across the country, preparing for motions to dismiss (and, in the case of *Arevalo*, fully briefing and successfully arguing the motion to dismiss), engaging in discovery, getting the litigation (over Defendants' objections) coordinated pursuant to the JPML before this Court, briefing additional motions to dismiss and supplemental briefing, bringing amended complaints, engaging in initial formal discovery, conducting mediation interviews, engaging in further mediation-related discovery, and mediating and settling the lawsuit.

Accordingly, this objection should be overruled.

### E. The Claims Amount Is Reasonably Certain.

Mr. Bandas falsely claims the class notice is misleading because it promises Class Members they will receive 100 dollars or 50 dollars without acknowledging potential reductions.

Indeed, as the Court-approved Notice actually provides:

"Defendants have agreed to pay the total amount of twenty million dollars ($20,000,000) in settlement of the MDL Litigation to a Settlement Fund, which shall be inclusive of (i) all payments to Settlement Class Member; (ii) all attorneys' fees and costs; (iii) service awards to the Settlement Class Representatives; (iv) taxes; (v) the cost of notice to the class and (vi) the cost of settlement administration. After deduction of attorneys' fees and costs, taxes, service awards, and notice and settlement administration costs, this amount shall be allocated to each Settlement Class Member as follows:

**a. For Settlement Class Members who made a Credit Protection benefit request:** If you attempted to claim Credit Protection benefits but you believe you were denied improperly, and you submit a Claim Form confirming this, you will receive approximately $100.00.

**b. For Settlement Class Members who have not made a Credit Protection benefit**

1  **request:** If you were not denied benefits, but you believe that you were involuntary enrolled in

2  Credit Protection or that the benefits of Credit Protection were not as advertised, and you submit a

3  Claim Form confirming this, you will receive approximately $50.00.

4     ***The amounts above are estimates.*** If the total amounts claimed by the Settlement Class

5  Members exceed the balance remaining in the Settlement Fund (after deduction of attorneys' fees

6  and costs, service awards, and the costs of claim notice and settlement administration), then the

7  awards for each Settlement Class Member shall be reduced on a *pro rata* basis. If the total

8  amount of claims by Settlement Class Members is less than the balance remaining in the

9  Settlement Fund (after deduction of attorneys' fees and costs, service awards, and the costs of

10 claim notice and settlement administration), then the awards to each Settlement Class Member

11 shall be increased on a *pro rata* basis."

12    Dkt. No. 72-1 (boldface and emphasis in original).

13    The uses of estimates for class monetary awards are a necessary feature in a claims-made

14 common-fund settlement, and have been approved in other payment protection class-action

15 settlements (among many other cases). *See, e.g.*, *Kardonick, et al., v. JP Morgan Chase & Co, et

16 al.*, No. 1:10-cv-23235-WMH, S.D. Fla. (Miami), Dkt. Nos. 23, 24, 384 (final approval granted);

17 *Walker, et al., v. Discover Financial Services, Inc., et al.*, No. 1:10-cv-06994, N.D. Ill., Dkt.

18 No. 177 (final approval granted); *Esslinger v. HSBC Bank Inc., et al.*, No. 10-cv-3213 BMS, E.D.

19 Pa., Dkt. No. 67 (final approval granted).

20    Accordingly, this objection should be overruled.

21    **F.**  **<u>There Is No Need For Sub-Classes.</u>**

22    Mr. Bandas objects to the class settlement based on adequacy of counsel, Rule 23(a)(4),

23 because there is a supposed conflict between Class Members who requested benefits and those

24 who did not.

25    However, not every distinction among groups of class members gives rise the existence of

26 a subclass. *See Shaffer v. Continental Cas. Co.*, 362 Fed. Appx. 627, 630 (9th Cir. 2010)

27 (explaining that "the fact that it is possible to draw a line between categories of class members"

28 does not necessarily mean that subclasses exist for the purposes of an *Amchem* analysis). If

every non-material difference among class members "required a new subclass, class counsel would need to confine settlement terms to the simplest imaginable or risk fragmenting the class beyond repair." *White v. Experian Info. Solutions, Inc.*, 803 F. Supp. 2d 1086, 1109 (C.D. Cal. 2011) (citing *Int'l Union, United Auto., Aerospace & Agr. Implement Workers v. GMC*, 497 F.3d 615, 629 (6th Cir.2007); *see also Sullivan v. DB Inv., Inc.*, 667 F.3d 273, 326 (3d Cir. 2011) (en banc) (noting "the potential drawbacks of subclassing, including the potential Balkanization of the class action, and creation of a huge obstacle to settlement if each subclass has an incentive to hold out for more money") (internal citations omitted). Furthermore, "subclasses are less likely to be deemed necessary where class certification is sought pursuant to Rule 23(b)(3), because those aggrieved by the differentiation have the choice of opting out." *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 50 (E.D.N.Y. 2010).

Further, a settlement is not categorically unfair for certain class members simply because they might recover higher damages than other class members were they to prosecute their claims individually. *Lane v. Facebook, Inc.*, 696 F.3d 811, 824 (9th Cir. 2012). It is an inherent feature of the class-action device that individual class members will often claim differing amounts of damages—that is why due process requires that individual members of a class certified under Rule 23(b)(3) be given an opportunity to opt out of the settlement class to pursue their claims separately, as were the class members in this case. *Id.* at 824 (citing *Hanlon*, 150 F.3d at 1024). A class-action settlement necessarily reflects the parties' pre-trial assessment as to the potential recovery of the entire class, with all of its class members' varying claims.[6] *Id.*

Finally, varying monetary awards for different groups of class members are common in payment protection class action settlements that have been approved by federal district courts. *See, e.g.*, *Spinelli, et al., v. Capital One Bank (USA) N.A., et al.*, No. 8:08-cv-00132-VCM-EAJ, M.D. Fla., Dkt. Nos. 147 and 231 (class certification followed by a settlement); *Kardonick, et al.,*

---

[6] Here, all of the Class Members share the same legal claims, but differ with respect to how much they paid for Credit Protection (simply a function of their length of time in the program and how large their underlying bills are), and whether they made a claim for benefits. These individuals all belong in the same class and the higher payment to those with denied benefits reflects a factual difference but not a material one. Notably, the objectors do not attack the plan of allocation per se. And, if it were the law that different facts always required subclassing, then all of the caselaw about plans of allocations within a class would be meaningless.

*v. JP Morgan Chase & Co, et al.*, No. 1:10-cv-23235-WMH, S.D. Fla. (Miami), Dkt. Nos. 23, 24, 384 (final approval granted); *Walker, et al., v. Discover Financial Services, Inc.*, et al., No. 1:10-cv-06994, N.D. Ill., Dkt. No. 177 (final approval granted); *Esslinger v. HSBC Bank Inc., et al.*, No. 10-cv-3213 BMS, E.D. Pa., Dkt. No. 67 (final approval granted).  Dkt. No. 76-1 at 12.

Accordingly, this objection should be overruled.

### G. Other Objections.

Adina Wasserman[7] objects to (1) the settlement amount of $20 million as "a drop in the bucket," (2) the amount of the attorney's fees, and (3) the fact that (according to her assertion) discovery, including depositions, did not occur.  (Dkt. No. 83 at 2-3).  Plaintiffs have already responded to (1) and (2) *supra*.

As outlined in Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and Other Related Relief ("Motion for Preliminary Approval"), and summarized above, the *Arevalo* Plaintiffs had, in fact, engaged in initial formal discovery at the time of the MDL transfer, and the parties had engaged in initial discovery in the MDL.  At the time of and before the mediation, the parties had engaged in a series of meet and confers about Defendants' responses relating to, among other topics, Electronically-Stored Information ("ESI"), and areas of disputed discovery relating to internal complaints and documents subject to alleged privileges.  The parties presented some of these contested issues to the Court in the context of addressing case status issues.  *See, e.g.*, Dkt. No. 59.  Plaintiffs had also filed formal deposition notices, and depositions would have occurred upon production of initial discovery to make the depositions meaningful.

As further outlined in the Motion for Preliminary Approval, on February 1, 2012, Plaintiffs served a Notice of Deposition pursuant to Federal Rules of Civil Procedure 30(b)(6), seeking testimony regarding topics related to Defendants' documents and ESI.  *See* Dkt. No. 56.

On March 1, 2012, Defendants served separate requests for production and interrogatories on each of the MDL Plaintiffs.  *See* Dkt. No. 56.  On April 17, 2012, the parties informed the Court in a case management conference statement that they had agreed to conduct mediation.

---

[7] Adina Wasserman is also an objector in *Schlesinger v. Superior Court*, No. B224880 (Cal. App. 2d. Dist.) ("*Ticketmaster*" settlement).  It is unclear, but possible, that she is represented by counsel who have not disclosed their existence.

1072714.1 - 12 - PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. MD NO. 3:11-MD-02269 THE

1   Dkt. No. 59.

2   In advance of the mediation, Defendants provided Plaintiffs' Counsel with extensive and
3   detailed non-public data regarding Credit Protection enrollments and new enrollments, benefit
4   approval/denial history and revenues as well as enrollment channel information, tenure in the
5   products, average waiting times, and other product information.  To adequately prepare for
6   mediation, Plaintiffs interviewed Defendants' designee to ensure they understood the data's
7   meaning and scope prior to the first mediation. This exchange, coupled with the extensive
8   investigation and research already conducted by Plaintiffs' Counsel, as well as their experience
9   from litigating other payment protection cases against other banks, allowed Plaintiffs' Counsel to
10  fully assess the strengths and weaknesses of both Plaintiffs' claims and the potential defenses
11  available to Defendants prior to the mediation.

12  Furthermore, as previously outlined, Plaintiffs engaged in substantial confirmatory
13  discovery involving the review of data and interviews with Bank of America executives who
14  were personally involved with the Credit Protection products at issue in this class action
15  litigation. Plaintiffs conducted a pre-mediation interview with Jody Morris, Senior Vice President
16  of Technology Operations for Credit Protection at Bank of America, about the settlement class
17  data to ensure that Plaintiffs could conduct an informed mediation.  Plaintiffs also conducted in-
18  person interview of three of Defendants' representatives:  (1) Sanjeev Arjungi, Senior Vice
19  President and Customer Analytics Executive at Bank of America, (2) Mr. Morris, and (3) Jim
20  Baker, Privacy Products Protection Executive for Bank of America, with responsibility for
21  managing the Outbound Telemarketing Channel.  Plaintiffs held a follow-up telephonic interview
22  with Mr. Arjungi on July 6, 2012, that addressed the specific value of the practice changes to the
23  administration of CPP negotiated as part of the settlement.  For the reasons stated herein, the
24  foregoing objections should be overruled.

25  **III.   CONCLUSION**

26  For the foregoing reasons and the reasons set forth in Plaintiffs' Motion for Final
27  Settlement Approval and Motion for Attorneys' Fees, Reimbursement of Expenses, and Services
28  Awards, Plaintiffs respectfully request that the Court overrule the objections identified herein,

approve the Settlement, award Class Counsel the requested fee and expenses, and approve the Service Awards for the Class Representatives.

Dated: December 21, 2012

Respectfully submitted,

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

By:   /s/ Rachel Geman
          Rachel Geman

Rachel Geman (admitted *pro hac vice*)
Wendy R. Fleishman
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: (212) 355-9500
Facsimile: (212) 355-9592
wfleishman@lchb.com
rgeman@lchb.com

Elizabeth Cabraser (State Bar No. 083151)
Michael W. Sobol (State Bar No. 194857)
Daniel M. Hutchinson (State Bar No. 239458)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
ecabraser@lchb.com
msobol@lchb.com
dhutchinson@lchb.com

Marc L. Godino
GLANCY BINKOW & GOLDBERG LLP
1801 Avenue of the Stars, Suite 311
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
mgodino@glancylaw.com

| | |
|---|---|
| 1 | John J. Carey |
| | Francis J. "Casey" Flynn, Jr. |
| 2 | Tiffany M. Yiatras |
| | CAREY DANIS & LOWE |
| 3 | 8235 Forsyth Blvd., Suite 1100 |
| | St. Louis, MO 63105 |
| 4 | Telephone: (800) 721-2519 |
| | Facsimile: (314) 721-0905 |
| 5 | jcarey@careydanis.com |
| | casey@jefflowepc.com |
| 6 | tyiatras@caseydanis.com |
| 7 | **Class Counsel** |
| 8 | |
| | Richard Golomb |
| 9 | Ruben Honik |
| | GOLOMB & HONIK PC |
| 10 | 1515 Market Street, Suite 1100 |
| | Philadelphia, PA 19102 |
| 11 | Telephone: (215) 985-9177 |
| | Facsimile: (215) 985-4169 |
| 12 | rhonik@golombhonik.com |
| | rgolomb@golombhonik.com |
| 13 | |
| | J. Allen Carney |
| 14 | Randall K. Pulliam |
| | CARNEY WILLIAMS BATES PULLIAM & |
| 15 | BOWMAN PLLC |
| | 11311 Arcade Drive, Suite 200 |
| 16 | Little Rock, AK 72212 |
| | Telephone: (501) 312-8500 |
| 17 | Facsimile: (501) 312-8505 |
| | acarney@carneywilliams.com |
| 18 | rpulliam@carneywilliams.com |
| 19 | Brett Cebulash |
| | Kevin S. Landau |
| 20 | TAUS, CEBULASH & LANDAU, LLP |
| | 80 Maiden Lane, Suite 1204 |
| 21 | New York, NY 10038 |
| | Telephone: (212) 931-0704 |
| 22 | bcebulash@tcllaw.com |
| | klandau@tcllaw.com |
| 23 | |
| | Steve Owings |
| 24 | OWINGS LAW FIRM |
| | 1400 Brookwood |
| 25 | Little Rock, AR 72202 |
| | Telephone: (501) 661-9999 |
| 26 | Facsimile: (501) 661-8393 |
| | sowings@owingslawfirm.com |
| 27 | |
| 28 | |

|   |   |
|---|---|
| 1 | David S. Paris |
|   | Ross H. Schmierer |
| 2 | PARIS ACKERMAN & SCHMIERER LLP |
|   | 101 Eisenhower Parkway |
| 3 | Roseland, NJ 07068 |
|   | Telephone: (973) 228-6667 |
| 4 | Facsimile: (973) 629-1246 |
|   | david@paslawfirm.com |
| 5 | ross@paslawfirm.com |

David S. Paris
Ross H. Schmierer
PARIS ACKERMAN & SCHMIERER LLP
101 Eisenhower Parkway
Roseland, NJ 07068
Telephone: (973) 228-6667
Facsimile: (973) 629-1246
david@paslawfirm.com
ross@paslawfirm.com

Bruce Nagel
Jay Rice
Diane Sammons
NAGEL RICE, LLP
103 Eisenhower Parkway
Roseland, NJ 07068
Telephone: (973) 618-0400
Facsimile (973) 618-9194
bnagel@nagelrice.com
jrice@nagelrice.com
dsammons@nagelrice.com

**ATTORNEYS FOR PLAINTIFFS AND ADDITIONAL COUNSEL FOR THE CLASS**